**APPENDIX N**

## SUMMONS IN A CIVIL ACTION

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROY LANGBORD, JOAN LANGBORD, and DAVID LANGBORD,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY; the UNITED STATES MINT; HENRY M. PAULSON, Jr., Secretary of the United States Department of the Treasury; STEPHEN LARSON, Acting General Counsel of the United States Department of the Treasury; EDMUND C. MOY, Director of the United States Mint; DANIEL P. SHAVER, Chief Counsel, United States Mint; DAVID A. LEBRYK, Deputy Director of the United States Mint; "JOHN DOE" Nos. 1 to 10, "John Doe" being fictional first and last names; and the UNITED STATES OF AMERICA,<br><br>Defendants. | CIVIL ACTION NO.<br><br><br>TO: (NAME AND ADDRESS OF DEFENDANT)<br><br>Patrick L. Meehan, United States Attorney<br>United States Department of Justice<br>Attn: Civil Process Clerk<br>615 Chestnut Street<br>Suite 1250<br>Philadelphia, PA  19106-4476 |

**YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's Attorney (Name and Address)

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Walter M. Phillips, Jr.
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Barry H. Berke
Eric A. Tirschwell
1177 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiffs*

an answer to the complaint which is herewith served upon you, within sixty (60) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| | |
|---|---|
| Michael E. Kunz, Clerk of Court | Date: |
| (By) Deputy Clerk | |

AO 440  (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                Date                  *Signature of Server*

                          _____
                          *Address of Server*

_____

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Langbord, Roy; Langbord, David; Langbord, Joan | See attachment |

**(b)** County of Residence of First Listed Plaintiff   County of New York
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
See attachment

Attorneys (If Known)

## I. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## V. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander ☐ 368 Asbestos Personal Injury Product | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability ☐ 370 Other Fraud | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle ☐ 380 Other Personal Product Liability Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | Injury Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☒ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other ☐ 540 Mandamus & Other ☐ 550 Civil Rights | | | to Justice |
| | ☐ 440 Other Civil Rights ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
See attached schedule.

Brief description of cause: Action to recover ten 1933 Double Eagle gold coins illegally seized and confiscated by government in violation of Civil Asset Forfeiture Reform Act and other laws and constitutional provisions.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE
December 5, 2006

SIGNATURE OF ATTORNEY OF RECORD
_(signature)_

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**CIVIL COVER SHEET - ATTACHMENT**

**I. (a). DEFNDANTS:**

1. United States Department of the Treasury
2. United States Mint
3. United States Department of the Treasury, HENRY M. PAULSON, Jr., Secretary
4. United States Department of the Treasury, STEPHEN LARSON, Acting General Counsel
5. United States Mint, EDMUND C. MOY, Director
6. United States Mint, DANIEL P. SHAVER, Chief Counsel
7. United States Mint, DAVID A. LEBRYK, Deputy Director
8. "JOHN DOE" Nos. 1 to 10, "John Doe" being fictional first and last names;
9. United States of America

**I. (c) Attorney's (Firm Name, Address, and Telephone Number)**

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Walter M. Phillips, Jr.
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
(215) 665-3000

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Barry H. Berke
Eric A. Tirschwell
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

**VI. Cite the U.S. Civil Statute under which you are filing**

5 U.S.C. §§ 701 et seq.
28 U.S.C. § 2201
18 U.S.C. § 1361
28 U.S.C. §§ 2671 et seq.
18 U.S.C. §983

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Roy Langbord, David Langbord and Joan Langbord | : | CIVIL ACTION |
| v. | : | |
| United States Department of the Treasury, et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.          ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits          ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.          ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court.  (See reverse side of this form for a detailed explanation of special
　　management cases.)          ( )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.     ( x )

| December 5, 2006 | Walter M. Phillips, Jr. | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 665-3224 | (215) 665-3165 | walter.phillips@obermayer.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT                                                    **APPENDIX F**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _____ (see reverse side) _____

Address of Defendant: _____ (see reverse side) _____

Place of Accident, Incident or Transaction: ____ Philadelphia, Pennsylvania _____
                                        *(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))___                    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?                                          Yes☐  No☒
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated
   action in this court?                                                              Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously
   terminated action in this court?                                                     Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

| A. *Federal Question Cases:* | B. *Diversity Jurisdiction Cases:* |
|---|---|
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act-Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. ☐ Other Personal Injury (Please specify) |
| 7. ☐ Civil Rights | 7. ☐ Products Liability |
| 8. ☐ Habeas Corpus | 8. ☐ Products Liability — Asbestos |
| 9. ☐ Securities Act(s) Cases | 9. ☐ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) |
| 11. ☒ All other Federal Question Cases | |

   (Please specify)  Federal statutory and constitutional violations

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Walter M. Phillips, Jr. , counsel of record do hereby certify:

  ☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

  ☒ Relief other than monetary damages is sought.

DATE: 12/5/06 _____  _____*Walter M. Phillips*_____  _____22788_____
                     Attorney-at-Law                          Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/5/06 _____  _____*Walter M. Phillips*_____  _____22788_____
                     Attorney-at-Law                          Attorney I.D.#

CIV. 609 (4/03)

## ADDRESSES OF PLAINTIFFS

Roy Langbord
302 W. 77th Street
New York, NY 10024

David Langbord
1573 Bay Point Drive
Virginia Beach, VA 23454

Joan Langbord
2401 Pennsylvania Ave.
Apt. 11B-21
Philadelphia, PA 19130

## ADDRESSES OF DEFENDANTS

UNITED STATES DEPARTMENT OF
THE TREASURY
1500 Pennsylvania Avenue NW
Room 2134
Washington, D.C.  20220

UNITED STATES MINT
801 9th Street, NW
Washington, D.C.  20220

UNITED STATES MINT
151 North Independence Mall East
Philadelphia, PA  19106-1886

HENRY M. PAULSON, JR.
Secretary of the United States Department
of the Treasury
Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, D.C.  20220

EDMUND C. MOY
Director of the United States Mint
United States Mint
801 9th Street, NW
Washington, D.C. 20220

STEPHEN LARSON, ESQ.
Office of General Counsel
Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, D.C. 20220

DAVID A. LEBRYK
Deputy Director of the United States Mint
United States Mint
801 9th Street, NW
Washington, D.C. 20220

DAN P. SHAVER, ESQ.
Office of Chief Counsel
The United States Mint
801 9th Street, NW
Washington, D.C.  20220

UNITED STATES OF AMERICA
United States Department of Justice
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106-4476

## UNITED STATES DISTRICT COURT

**APPENDIX F**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _____ (see reverse side) _____

Address of Defendant: _____ (see reverse side) _____

Place of Accident, Incident or Transaction: _____ Philadelphia, Pennsylvania _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))___     Yes☐  No☒

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) Federal statutory and constitutional
violations

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

### ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Walter M. Phillips, Jr. , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 12/5/06        _____        22788
                      Attorney-at-Law         Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/5/06        _____        22788
                      Attorney-at-Law         Attorney I.D.#

CIV. 609 (4/03)

## ADDRESSES OF PLAINTIFFS

Roy Langbord
302 W. 77th Street
New York, NY 10024

David Langbord
1573 Bay Point Drive
Virginia Beach, VA 23454

Joan Langbord
2401 Pennsylvania Ave.
Apt. 11B-21
Philadelphia, PA 19130

## ADDRESSES OF DEFENDANTS

UNITED STATES DEPARTMENT OF
    THE TREASURY
1500 Pennsylvania Avenue NW
Room 2134
Washington, D.C.  20220

UNITED STATES MINT
801 9th Street, NW
Washington, D.C.  20220

UNITED STATES MINT
151 North Independence Mall East
Philadelphia, PA  19106-1886

HENRY M. PAULSON, JR.
Secretary of the United States Department
    of the Treasury
Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, D.C.  20220

EDMUND C. MOY
Director of the United States Mint
United States Mint
801 9th Street, NW
Washington, D.C. 20220

STEPHEN LARSON, ESQ.
Office of General Counsel
Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, D.C. 20220

DAVID A. LEBRYK
Deputy Director of the United States Mint
United States Mint
801 9th Street, NW
Washington, D.C. 20220

DAN P. SHAVER, ESQ.
Office of Chief Counsel
The United States Mint
801 9th Street, NW
Washington, D.C.  20220

UNITED STATES OF AMERICA
United States Department of Justice
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106-4476

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— x

ROY LANGBORD, DAVID LANGBORD, and
JOAN LANGBORD,

                      Plaintiffs,

               v.

UNITED STATES DEPARTMENT OF THE
TREASURY; UNITED STATES BUREAU OF
THE MINT; HENRY M. PAULSON, JR.,
Secretary of the United States Department of the
Treasury; STEPHEN LARSON, Acting General
Counsel of the United States Department of the
Treasury; EDMUND C. MOY, Director of the
United States Mint; DANIEL P. SHAVER, Chief
Counsel, United States Mint; DAVID A. LEBRYK,
Deputy Director of the United States Mint; "JOHN
DOE" Nos. 1 to 10, "John Doe" being fictional first
and last names; and the UNITED STATES OF
AMERICA,

                      Defendants.

———————————————————— x

No.

**COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiffs ROY LANGBORD, DAVID LANGBORD, and JOAN LANGBORD

(collectively, the "LANGBORD FAMILY" or the "LANGBORDS"), by their attorneys, Kramer

Levin Naftalis & Frankel LLP and Obermayer Rebmann Maxwell & Hippel LLP, allege as

follows:

### NATURE OF ACTION

      1.     This is an action to recover ten specimens of the most valuable coin in the world,

lawlessly confiscated by the government, and to vindicate one of the foundational principles of

American law: that the government may not unilaterally and permanently deprive its citizens of

their property and possessions without affording them the process due and required under our Constitution, statutes and common law.

2.    The coins that plaintiffs seek to recover are $20 gold pieces minted in 1933 and known among coin collectors as "1933 Double Eagles." According to defendant UNITED STATES BUREAU OF THE MINT ("MINT" or "UNITED STATES MINT"), the 1933 Double Eagle is "one of the most sought-after rarities in history" and has "been the center of international numismatic intrigue for more than seventy years."

3.    In a public auction in 2002, a single 1933 Double Eagle coin sold for more than $7.5 million, the highest price on record for the sale of any rare coin. Federal agents had initially seized this coin and attempted to forfeit it through a federal court proceeding; however, the government eventually dropped its legal claim and agreed to auction the coin and split the proceeds between the coin's owner, Stephen Fenton, and the United States.

4.    In 2003, the LANGBORD FAMILY discovered its ownership of ten 1933 Double Eagle gold coins (the "Coins") in a family safe deposit box, among property that had belonged to the parents of plaintiff JOAN LANGBORD and the grandparents of plaintiffs ROY and DAVID LANGBORD.

5.    Mindful of the prior litigation and settlement arising from the government's seizure and later auctioning of Mr. Fenton's Double Eagle, the LANGBORD FAMILY'S response to this extraordinary discovery was to voluntarily alert the UNITED STATES MINT to its possession of the Coins and attempt to reach an amicable resolution of any issues that might be raised by the MINT.

6.    The MINT'S response to the LANGBORDS' good-faith voluntary disclosure was to illegally confiscate the ten LANGBORD Coins without any process of law in direct violation of the federal asset forfeiture laws and the United States Constitution.

7.    More specifically, in response to the MINT's request to test the LANGBORD FAMILY'S Coins to confirm their authenticity, the LANGBORD FAMILY agreed to permit the MINT to take possession of the Coins solely to permit such testing of the Coins and to secure the Coins while the Family and the MINT discussed a possible resolution of any issues relating to the Coins.

8.    Ultimately, after a nearly year-long delay, the MINT'S representatives, including defendant Chief Counsel SHAVER, told the LANGBORD FAMILY that the MINT had determined that the Coins were authentic.  Defendant SHAVER then announced that the MINT had unilaterally decided it would seek to retain the Coins and deprive the LANGBORD FAMILY of its property.

9.    Following these events, the LANGBORD FAMILY made a formal written demand under the federal asset forfeiture laws for either the return of the Coins or the commencement of an appropriate legal proceeding.  The MINT waited until virtually the last statutory hour before responding to this demand and then advised the LANGBORDS that it had internally determined that the Coins had been stolen from the United States Government (over 70 years ago), that no legal process was required in connection with their seizure and confiscation, and that it would keep the Coins and do with them as it pleased.

10.    As set forth more fully below, the MINT'S decision to confiscate the LANGBORD FAMILY'S Coins violated, among other laws, Section 2 of the Civil Asset

Forfeiture Reform Act of 2000, 18 U.S.C. § 983 (hereinafter "CAFRA"), the Fourth and Fifth

Amendments to the United States Constitution, and the Federal Torts Claim Act.

11.     The MINT's claim – that, by merely *asserting* the Coins are and always have

been the property of the UNITED STATES, the government may unilaterally and without any

legal process deprive the LANGBORD FAMILY of its property – is entirely meritless, in direct

violation of United States law, and a tacit acknowledgment that the government simply cannot

establish, based on any reliable or admissible evidence, how the 1933 Double Eagles left the

Mint over 70 years ago or that the Coins are properly subject to forfeiture.

12.     Accordingly, the LANGBORD FAMILY brings this action to recover the Coins

and compel the government to comply with the long-established constitutionally and statutorily

mandated procedures that stand as bulwarks against the unilateral and permanent deprivation of

citizens' property and possessions.

13.     More particularly, the LANGBORD FAMILY seeks the immediate return of its

Coins under CAFRA.  CAFRA requires, among other things, that where – as here – the

government fails to file a timely complaint for forfeiture, it must "promptly release the property"

to the person(s) who filed a claim for return of the property.  *See* 18 U.S.C. § 983(a)(3)(A) &

(B).

14.     Alternatively, the LANGBORD FAMILY is at the very least entitled to have the

government promptly cause to be initiated a civil forfeiture proceeding wherein the MINT'S

claims challenging the LANGBORD FAMILY'S ownership of the Coins may be fully and fairly

litigated.

## JURISDICTION AND VENUE

15.     This action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus and Venue Act, 28 U.S.C. § 1361, for vindication of rights under CAFRA, as well as the Fourth and Fifth Amendments to the United States Constitution.

16.     This action is also brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*

17.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346(b), 1356, 1361 and 2201; under 5 U.S.C. § 702; and by virtue of its inherent equitable powers.

18.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania as a substantial portion of the events, and the acts complained of giving rise to this action, occurred within this district.

## PARTIES

19.     Plaintiff JOAN LANGBORD, 76, operates the Philadelphia, Pennsylvania jewelry shop founded by her late father, Israel Switt, a prominent jeweler and occasional purchaser and seller of rare coins in the 1930's.

20.     Plaintiffs ROY LANGBORD, 54, and DAVID LANGBORD, 51, are JOAN LANGBORD'S sons and reside in, respectively, New York, New York and Virginia Beach, Virginia.

21.     The LANGBORD FAMILY owns the ten 1933 Double Eagle $20 gold coins that are the subject of this action.

22.     Defendant UNITED STATES DEPARTMENT OF THE TREASURY ("DEPARTMENT OF THE TREASURY" or "TREASURY") is an executive department and

administrative agency of the UNITED STATES OF AMERICA that is charged with oversight of the nation's money and finance.

23.     Defendant UNITED STATES BUREAU OF THE MINT is a bureau of the DEPARTMENT OF THE TREASURY and an administrative agency responsible for coinage struck by the United States for use as currency and/or for commemorative or numismatic purposes.

24.     Defendant HENRY M. PAULSON, JR., is the Secretary of the DEPARTMENT OF THE TREASURY. In such capacity, he possesses authority to direct the action and operations of that department. He is sued in his official capacity.

25.     Defendant EDMUND C. MOY is the Director of the UNITED STATES MINT. In such capacity, he possesses authority to direct the action and operations of the MINT. He is sued in his official capacity.

26.     Defendant STEPHEN LARSON is the acting General Counsel of the DEPARTMENT OF THE TREASURY. In such capacity, he provides legal counsel to that department and acts on the department's behalf as attorney at law. He is sued in his official capacity.

27.     Defendant DANIEL P. SHAVER is Chief Counsel of the UNITED STATES MINT. In such capacity, he provides legal counsel to the MINT and acts on the MINT's behalf as attorney at law. He is sued in his official capacity.

28.     Defendant DAVID A. LEBRYK is Deputy Director of the UNITED STATES MINT. In such capacity, he possesses authority to direct certain actions and operations of the MINT. At certain times relevant to plaintiffs' claims, defendant LEBRYK was Acting Director of the UNITED STATES MINT. He is sued in his official capacity.

29.    Defendants "JOHN DOE" Nos. 1 to 10 are additional officers and representatives of defendants UNITED STATES, DEPARTMENT OF THE TREASURY, and UNITED STATES MINT responsible for the seizure and confiscation of the Coins in violation of the LANGBORDS' constitutional and statutory rights.  They are sued in their official capacities.

## STATEMENT OF FACTS

### *The 1933 Double Eagle $20 Gold Coin*

30.    The "Double Eagle" name refers to a series of $20 gold coins first struck in 1849 and newly minted almost every year thereafter until 1933.

31.    In or about 1905, President Theodore Roosevelt commissioned famed sculptor Augustus Saint-Gaudens to render a new design for the Double Eagle.  The Saint-Gaudens Double Eagle quickly joined the ranks of coins most prized by numismatists.

32.    The unique history of the 1933 Double Eagle reflects President Franklin D. Roosevelt's efforts, shortly after his inauguration on March 4, 1933, to promote economic recovery from the Great Depression by removing United States currency from the gold standard. To that end, President Roosevelt and his administration issued a series of proclamations, executive orders, and Treasury Department directives restricting the use of gold coin as currency, but exempting gold coins having a "recognized special value to collectors of rare and unusual coins."

33.    Notwithstanding the issuance of these proclamations, orders and directives, more than 445,000 new Double Eagle $20 gold pieces were created at the MINT's facility in Philadelphia between March and May of 1933.  Subsequently, the MINT ordered the melting of the gold coins in its possession.  As part of this process, most – but not all – of the 1933 Double Eagle gold coins were melted.

*Private Collectors' Interest in the 1933 Double Eagle*

34.    During the 1930's, as today, many coin collectors aspired to obtain uncirculated or newly minted coins, including Double Eagles.

35.    In response to this demand, officers and employees of defendants MINT and DEPARTMENT OF THE TREASURY distributed uncirculated gold coins through various channels prior to and throughout the early 1930's.  For example, the DEPARTMENT OF THE TREASURY made uncirculated coins available for purchase by mail in exchange for payment of their face value and a small surcharge for shipping and handling.  In addition, the Philadelphia Mint made newly minted coins available directly to collectors, dealers and other members of the public at its facility in exchange for payment of each coin's face value or an older coin of the same denomination or, in the case of gold coins, in exchange for gold of equal value.

36.    Over the decade following its creation, from 1933 through the early 1940's, a number of specimens of the 1933 Double Eagle were openly displayed and advertised.  The coins were exhibited at conventions of the American Numismatic Association, and notices of such exhibitions were printed in the association's publication, *The Numismatist.*

37.    In 1944, the government expressly authorized the private ownership of a 1933 Double Eagle and specifically recognized its special numismatic value.  In that year, the government issued a license allowing King Farouk of Egypt to own and export a 1933 Double Eagle, to be included in the King's noted collection.  In connection with the Egyptian monarch's application for this export license, the Director of the UNITED STATES MINT, Nellie Taylor Ross, dispatched an aide to bring King Farouk's 1933 Double Eagle to the Curator of History of the United States National Museum (the Smithsonian Institution), requesting a determination of: "(1) Whether [the coin] was of recognized special value to collectors of rare and unusual coin

immediately prior to the issuance of the Order of the Secretary of the Treasury of December 28, 1933, and has been of such special value at all times subsequent thereto; and (2) Whether it was of such special value immediately prior to the issuance of the Executive Order of April 5, 1933, and has been of such special value at all times since such date."

38.    In asking whether the coin was of "recognized special value" to collectors of rare and unusual coin, Ross's requests recited language of the referenced orders of December 28 and April 5, which expressly authorized the private ownership of gold coins that had numismatic value.

39.    The museum's Curator of History examined the coin that same day, answered both questions in the affirmative after determining that the 1933 Double Eagle had special value to coin collectors, and returned the coin to the DEPARTMENT OF THE TREASURY.

40.    As a result, on or about February 29, 1944, the DEPARTMENT OF THE TREASURY issued License No. TGL-11-1709 authorizing the export and private ownership of the 1933 Double Eagle.

41.    On or about March 6, 1944, the Associate Director of the Smithsonian Institution documented the curator's findings in a letter to Director Ross:

> Reference is made to the call at the office of the Division of History on February 26 by Mrs. W.D. Fales of your Bureau who submitted for examination a twenty-dollar United States gold coin which the Royal Legation of Egypt desires to export.
>
> In response to your inquiry as to the numismatic status of the coin, Mr. T. T. Belote, Curator of History, advises me that it was of recognized special value to collectors of rare and unusual coin immediately prior to December 28, 1933 and also immediately prior to April 5, 1933 and has been of such recognized special value at all times since the dates mentioned.

42.    On or about March 11, 1944, the MINT returned possession of this 1933 Double Eagle to the Royal Legation of Egypt for export to King Farouk for his private collection.

*The Treasury's Campaign to Repossess Double Eagles*

43.     Notwithstanding the 1944 grant of an export license to King Farouk authorizing his private ownership of a 1933 Double Eagle, the MINT and DEPARTMENT OF THE TREASURY reversed course shortly thereafter, seizing and confiscating nine 1933 Double Eagles between 1944 and 1952, on the theory that the Coins had been unlawfully removed from the Mint.

44.     A tenth 1933 Double Eagle was seized in 1996 from British coin dealer Stephen Fenton, as referenced above.

45.     In confiscating the Double Eagles, the MINT and DEPARTMENT OF THE TREASURY invoked civil process as necessary.  Thus, at least two 1933 Double Eagles have been the subject of civil judicial proceedings instituted by representatives of defendant UNITED STATES.

46.     In or about 1947, the UNITED STATES instituted an action in the United States District Court for the Western District of Tennessee seeking to recover a 1933 Double Eagle from a Memphis collector.  In that case, the court drew an "inference" from "the proof" presented that the 1933 Double Eagle was "taken out of the Mint in an unlawful manner," but evidence later uncovered revealed that the Court's "inference" was based on nothing more than a flawed stipulation of facts.  The later-discovered evidence showed that the stipulated facts were incomplete, and did not support the inference drawn by the court.  The case is reported as United States v. Barnard, 72 F. Supp. 531 (1947).

47.     In 1996, the UNITED STATES filed a complaint for forfeiture of the Double Eagle seized that same year from Stephen Fenton, a London-based coin collector.

48.    Mr. Fenton contested the government's basis for seeking forfeiture of the coin.  In yet another about-face, the government agreed to the dismissal of the Fenton forfeiture action in 2001 pursuant to a settlement whereby – as noted above – the MINT and DEPARTMENT OF THE TREASURY agreed to a private auction of the coin, with proceeds to be split between the UNITED STATES and Mr. Fenton – the very individual from whom federal authorities had initially seized the coin.

49.    An auction subsequently conducted in New York City on or about July 30, 2002, by Sotheby's and Stack's, a rare coin dealer, culminated in the coin's sale for $7.59 million.

50.    At no point during the pendency of the Fenton proceedings did the government argue or even suggest – as it now maintains – that it could simply keep Mr. Fenton's coin without proving its entitlement to civil forfeiture in a court of law and otherwise providing Mr. Fenton with the process due him under statute, regulation and the United States Constitution. Even in the Barnard case, the government never took the radical position that it had the authority to bypass the courts entirely by simply asserting that the 1933 Double Eagles were stolen government property.

### Additional Legislation Concerning the Ownership of Gold Coins

51.    In 1954, the DEPARTMENT OF THE TREASURY expressly authorized the ownership of all gold coins made prior to April 5, 1933, recognizing that such coins have great historical value.  The 1954 Treasury Order clarified prior directives so as to remove any remaining doubt as to the lawfulness of possessing and owning gold coins struck at any time for any purpose whatsoever.

52.    Still later, with the passage of the Coinage Act of 1965, Congress directed that all "coins and currencies of the United States" would be legal tender "regardless of when coined or issued."

### *CAFRA Takes Effect*

53.    On April 25, 2000, during the pendency of proceedings arising from the seizure of Mr. Fenton's Double Eagle, and prior to the seizure of the LANGBORD FAMILY'S Coins, the Civil Asset Forfeiture Reform Act ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, became law.

54.    Congress enacted the legislation with the specific purpose of curbing government abuses in confiscating the property of private individuals.  Congressman Henry Hyde said that "this legislation revives the notion that property, like individuals charged with crimes, is innocent until proven guilty."

55.    Congress passed CAFRA as a direct response to the government's due process abuses under the former civil forfeiture laws.  Congress enacted a system of procedural safeguards to ensure protection from arbitrary confiscations by the government.  The legislative history reflects Congress's intention to prevent the government from retaining property subject to forfeiture for an extended period without commencing a judicial action to give claimants their day in court.

56.    Of particular relevance to this case, CAFRA radically altered the burden of proof in civil forfeiture actions.  Under prior law (applicable at the time of the Fenton seizure), the government had the burden merely of establishing probable cause to believe that property was subject to forfeiture, and could meet that burden with the use of hearsay evidence.  Once that showing was made, the burden shifted to the claimant to prove by a preponderance of the evidence that the property was lawfully his or hers.  Following the enactment of CAFRA, the

burden of proof was effectively reversed, such that the government – not the claimant – is now required to prove by a preponderance of non-hearsay evidence that property is subject to forfeiture. The relevant provisions of law were enacted as Section 2 of CAFRA, and are presently codified at Section 983(a) of Title 18 of the United States Code.

57.    CAFRA thus made it significantly more difficult for the government to lawfully obtain forfeiture of property claimed to be owned by private citizens such as the LANGBORD FAMILY.

### The Langbord Family's Ten 1933 Double Eagles

58.    In the 1930's, Israel Switt, the father of plaintiff JOAN LANGBORD, operated a jewelry business in close proximity to the Philadelphia Mint, where he frequently sold scrap gold and silver. During this period of time, Israel Switt came into possession of specimens of the 1933 Double Eagles.

59.    All of the property of Mr. Switt, who died in April 1990, and his wife, Elizabeth Switt, who died in April 1985, was passed to ROY, DAVID and JOAN LANGBORD, including the contents of a number of family safe deposit boxes.

60.    In 2003, JOAN LANGBORD inspected the contents of one such family safe deposit box maintained at the Wachovia Bank at 601 Chestnut Street in Philadelphia and found the ten 1933 Double Eagles at issue in this case (the "Coins").

61.    In August 2004, the LANGBORD FAMILY, through counsel, notified defendant DANIEL P. SHAVER, Chief Counsel of the UNITED STATES MINT, that the family had discovered that it owned and possessed these ten 1933 Double Eagle gold coins.

62.    Shortly thereafter, counsel for the LANGBORD FAMILY participated in discussions with the MINT to attempt to reach an amicable resolution of any issues raised by the MINT with regard to the Coins.

63.    In connection with these discussions, the MINT requested an opportunity to test the Coins to confirm that they were authentic.  The LANGBORD FAMILY agreed to permit the MINT to take possession of the Coins solely for the purpose of testing the Coins and securing them during the pendency of discussions about resolving any issues relating to the Coins.

64.    Prior to the MINT taking possession of the Coins for this limited purpose, the LANGBORD FAMILY, through counsel and in writing, expressly confirmed that it was making the Coins available for this sole and limited purpose, and specifically reserved all property rights and all remedies, in law and equity, with respect to its ownership of the Coins.

65.    Thereafter, on September 22, 2004, defendant DANIEL P. SHAVER, additional representatives of the MINT, and agents of the United States Secret Service entered Sovereign Bank, 2000 Market Street, Philadelphia, Pennsylvania, where the Coins had been transferred for safe-keeping following their discovery.  Plaintiff ROY LANGBORD removed the 1933 Double Eagles from the LANGBORD FAMILY'S safe deposit box and the government took possession of the Coins at that time.

66.    The MINT then requested that the LANGBORDS be patient while its representatives, including defendant SHAVER, claimed – for nearly a year – to be delayed in testing the Coins due to, *inter alia*, a dispute with the Secret Service regarding the Coins, limited availability of Secret Service agents, and the necessity of making appropriate arrangements with experts.  During this period, the MINT provided periodic updates to the LANGBORD FAMILY'S counsel describing these problems.

67.    On June 22, 2005, nine months after the government took possession of the Coins, defendant SHAVER met with counsel for the LANGBORD FAMILY and orally advised that the MINT had authenticated the LANGBORDS' ten Double Eagle gold coins as, in fact, genuine articles struck at Philadelphia in 1933. On the same occasion, defendant SHAVER stated for the first time that the MINT would not negotiate any resolution with respect to the Coins and instead would seek to retain the Coins permanently.

68.    By letter dated July 25, 2005, the LANGBORD FAMILY, through counsel, urged the MINT to return the LANGBORD FAMILY'S property.

69.    By letter dated August 9, 2005, the MINT informed the LANGBORD FAMILY in writing that it would not return the Coins.

70.    The MINT further stated that it had "no intention of seeking forfeiture of these ten Double Eagles because they already are, and always have been, property belonging to the United States," and therefore forfeiture proceedings were "entirely unnecessary."

71.    In claiming that it was not required to commence and successfully prosecute forfeiture proceedings in order to retain the Coins, the MINT has ignored the procedural protections of CAFRA, including the requirement that the government prove, in a court of law and by a preponderance of the evidence, that disputed property is subject to forfeiture.

72.    On or about September 9, 2005, the LANGBORD FAMILY, through counsel, filed a Seized Asset Claim with the MINT and the DEPARTMENT OF THE TREASURY pursuant to CAFRA § 2(a), 18 U.S.C. § 983(a)(2), reasserting its ownership of the Coins and seeking their immediate return.

73.    In the Seized Asset Claim, the LANGBORD FAMILY reminded the MINT and the DEPARTMENT OF THE TREASURY that CAFRA mandates that within ninety days after

such a claim has been filed, the government must either file a complaint for forfeiture or return the property pending the filing of a complaint.

74.    The MINT and the DEPARTMENT OF THE TREASURY waited until just days prior to the expiration of the ninety day period, and then by letter dated December 5, 2005, sent over the signature of defendant SHAVER and reciting the concurrence of then general counsel to the DEPARTMENT OF THE TREASURY Arnold I. Havens, the LANGBORD FAMILY'S Seized Asset Claim was returned "without action." The letter indicated that a copy had been sent to the then Acting Director of the MINT, defendant DAVID A. LEBRYK.

75.    By letter dated December 6, 2005, the LANGBORD FAMILY, through counsel, objected to this unauthorized and improper response by the MINT and the DEPARTMENT OF THE TREASURY to the LANGBORD FAMILY'S Seized Asset Claim. The LANGBORD FAMILY reminded the MINT and the DEPARTMENT OF THE TREASURY that CAFRA provides that if the government does not file a complaint for forfeiture or return the property within ninety days following the filing of a claim, the government must return the property and is barred from seeking forfeiture of that property.

76.    The DEPARTMENT OF THE TREASURY and UNITED STATES MINT did not file such a forfeiture complaint or return the LANGBORDS' property within the ninety day period, or at any time following the expiration of that statutory time limit.

77.    By retaining custody of the ten 1933 Double Eagles and refusing to consider, or otherwise act upon, the LANGBORD FAMILY'S claim for return of the Coins, the DEPARTMENT OF THE TREASURY and UNITED STATES MINT have taken final action to confiscate the Coins.

78.    On or about May 8, 2006, the LANGBORD FAMILY filed written administrative claims with the DEPARTMENT OF THE TREASURY and the UNITED STATES MINT asserting that the UNITED STATES has damaged the LANGBORD FAMILY by depriving it of its property by means of the acts and omissions complained of above.

79.    The LANGBORD FAMILY, through counsel, supplemented its administrative claims on or about June 29, 2006, by means of a letter to defendant SHAVER.

80.    On or about November 6, 2006, counsel for plaintiffs received a facsimile on the letterhead of the DEPARTMENT OF THE TREASURY and UNITED STATES MINT and signed by defendant SHAVER.  The letter stated the "position of the United States Government that . . . all ten of the 1933 Double Eagles in question are and always have been property belonging to the United States Mint," and advised that, in consequence, the LANGBORDS' administrative claims had been denied.

81.    In addition to violating CAFRA and the Constitution, the MINT'S actions with respect to the LANGBORDS' coins are inconsistent with its treatment of other coins of numismatic interest that have a purported "colorful background."  Such coins have been bought and sold without government intervention and, in some cases, with the government's blessing.

82.    For example, the government has long permitted the numismatic community to collect and trade the 1913 Liberty Nickel, which regularly has been sold in high-profile auctions, including as recently as last year when one specimen sold for $4.15 million.

83.    The MINT was not authorized to strike any Liberty nickels with a 1913 date since the Indian Head "Buffalo" nickel design had been adopted for use on all nickels to be minted that year.  The 1913 Liberty Nickels were therefore minted illegally by someone believed to be a MINT employee.

84.    Notwithstanding this history, the government took no action to interfere with last year's sale (or any other) of a 1913 Liberty Nickel, or with the ownership of such coins within the numismatic community.

85.    Similarly, as noted above, the MINT has sanctioned the public auction of a 1933 Double Eagle, an event the MINT trumpeted on its own website until very recently.  In connection with this auction, the Mint made clear that it fully recognizes the numismatic interest in these coins, stating on its website that "[t]he 1933 Double Eagle has, since the year of its creation, been the stuff of legend."

86.    Moreover, the MINT specifically acknowledged the great benefit in making these coins available for purchase and sale.  In the words of former Mint Director Henrietta Holsman Fore, who described the Sotheby's auction of the 1933 Double Eagle seized from Stephen Fenton (which resulted in millions of dollars in proceeds for the government) in a statement on the Mint's website:

> We are very pleased with the sale.  This coin, once worth only $20, should reinforce the notion that there is tremendous value in coin collecting.  It is not only an enjoyable hobby, but also an interesting and historically rich pursuit marked by exciting occasions such as this one.

87.    The MINT not only unlawfully seized and confiscated the LANGBORD FAMILY'S property, but also put the Coins to work for the government's own purposes and benefit without notice or consent from the LANGBORDS, the Coins' rightful owners. Specifically, in early August 2006, while the LANGBORD FAMILY's administrative claims were pending, the government disseminated a press release stating that the DEPARTMENT OF THE TREASURY, with the assistance of the Secret Service, had "recovered" the Coins, and announcing that the Coins would be "unveil[ed]" for display as the marquis exhibit at the American Numismatic Association's summer convention in Denver, Colorado.  The MINT thus

- 18 –

claimed to have "recovered" the Coins even though the MINT would not even have known that the Coins existed, let alone been in a position to confiscate and exploit them without affording the LANGBORDS any process whatsoever, but for the LANGBORD FAMILY contacting the MINT and informing it of the discovery of these extremely valuable 1933 Double Eagles.

88.     On or about August 16, 2006, over continuing protest from the LANGBORD FAMILY, the MINT "unveiled" the Coins – under a banner that read "The Nation's Most Treasured Numismatic Specimens" – at the opening ceremony of the American Numismatic Association's summer convention in Denver, Colorado.

89.     In order to vindicate the constitutional and statutory rights violated by the government's unlawful action, the LANGBORD FAMILY brings this action seeking the Coins' immediate return and a prohibition upon any future action by the United States to seize, confiscate, or otherwise encumber the Coins.

90.     More particularly, the LANGBORD FAMILY seeks the immediate return of its Coins under CAFRA, which requires that when – as here – the government fails to file a timely complaint for forfeiture, it must "promptly release the property" back to the person(s) who filed a claim for return of the property.

91.     Alternatively, the LANGBORD FAMILY seeks to require the government to promptly initiate a proper civil forfeiture action wherein the MINT'S claims challenging the LANGBORD FAMILY'S ownership of the Coins may be fully and fairly litigated.

### FIRST CAUSE OF ACTION
#### Unlawfully Withheld or Unreasonably Delayed Agency Action –
#### Administrative Procedure Act, 5 U.S.C. § 706(1)

92.     Plaintiffs repeat and reallege as if fully set forth herein the allegations contained in paragraph numbers 1 through 91.

93.    Under the Administrative Procedure Act, 5 U.S.C. § 706(1), a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ."

94.    By taking the ten 1933 Double Eagles and claiming authority to retain the Coins permanently, defendants UNITED STATES, DEPARTMENT OF THE TREASURY and UNITED STATES MINT have seized and confiscated property belonging to plaintiffs ROY, DAVID, and JOAN LANGBORD.

95.    The LANGBORD FAMILY has filed a Seized Asset Claim with defendants DEPARTMENT OF THE TREASURY and UNITED STATES MINT asserting ownership of the Coins and seeking their immediate return.

96.    The Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983(a)(3)(A), provides in pertinent part that, "[n]ot later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint."

97.    More than ninety days have elapsed since the Langbords' submission of their Seized Asset Claim asserting ownership of the Coins and seeking their immediate return.

98.    No proceedings relating to the Coins have been instituted in any court.

99.    In the absence of certain criminal proceedings, the Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983(a)(3)(B), provides as follows: "If the Government does not . . . file a complaint for forfeiture or return the property, in accordance with subparagraph (A) . . . the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense."

100.    In violation of 18 U.S.C. § 983(a)(3), defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, in their official capacities and under color of legal authority, have not caused a forfeiture complaint to be filed within ninety days of the LANGBORDS' submission of their Seized Asset Claim.

101.    By failing to cause the filing of a forfeiture complaint within ninety days of plaintiffs' submission of their Seized Asset Claim, defendants have unlawfully withheld and unreasonably delayed agency action required under CAFRA, in violation of and as actionable under the Administrative Procedure Act, 5 U.S.C. § 706(1).

102.    As the result of defendants' unlawful withholding and unreasonable delay of agency action, plaintiffs ROY, DAVID, and JOAN LANGBORD have suffered legal wrong, and have been adversely affected and aggrieved.

103.    By reason of the foregoing, defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, should be compelled to cause return of the Coins to plaintiffs ROY, DAVID, and JOAN LANGBORD.

104.    By reason of the foregoing, defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, should be barred from taking any further action to effect the civil forfeiture of the Coins.

105.    Alternatively, by reason of the foregoing, defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON,

MOY, SHAVER, and LEBRYK should be compelled to cause the prompt commencement of a proceeding for forfeiture of the Coins.

## SECOND CAUSE OF ACTION
**Agency Action Failing to Meet Statutory, Procedural, and Constitutional Requirements –**
**Administrative Procedure Act, 5 U.S.C. § 706(2)(B), (C), and (D)**

106.    Plaintiffs repeat and reallege as if fully set forth herein the allegations contained in paragraph numbers 1 through 105.

107.    Under the Administrative Procedure Act, 5 U.S.C. § 706(2), a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . (B) contrary to constitutional right . . . ;  (C) in excess of statutory. . . limitations, or short of statutory right"; or "(D) without observance of procedure required by law . . . ."

108.    By seizing and confiscating the Coins without filing a complaint for forfeiture within ninety days of submission of the LANGBORDS' Seized Asset Claim, defendants UNITED STATES, DEPARTMENT OF THE TREASURY and UNITED STATES MINT have acted contrary to 18 U.S.C. § 983(a)(3), and without observance of procedure required by law, in violation of and as actionable under the Administrative Procedure Act, 5 U.S.C. § 706(2)(C) and (D).

109.    By seizing and confiscating the Coins without affording or submitting to any process whatsoever, defendants have acted contrary to plaintiffs' rights under the Fifth Amendment, in violation of and as actionable under the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

110.    By seizing and confiscating of the Coins without probable cause, a warrant, or any other reasonable justification, defendants have acted contrary to plaintiffs' rights under the

Fourth Amendment, in violation of and as actionable under the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

111.    By reason of the foregoing, the seizure and confiscation of the Coins should be held unlawful and set aside, and defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, should be compelled to cause return of the Coins to plaintiffs ROY, DAVID, and JOAN LANGBORD.

112.    By reason of the foregoing, defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, should be barred from taking any further action to effect the civil forfeiture of the Coins.

113.    Alternatively, by reason of the foregoing, the seizure and confiscation of the Coins should be held unlawful and set aside; and defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, insofar as any of them may seek to confiscate the Coins, should be compelled to cause the prompt commencement of a proceeding for forfeiture of the Coins.

### THIRD CAUSE OF ACTION
### Declaratory Relief – CAFRA, 18 U.S.C. § 983

114.    Plaintiffs repeat and reallege as if fully set forth herein the allegations contained in paragraph numbers 1 through 113.

115.    Congress, via the enactment of the Civil Asset Forfeiture Reform Act, has directed that all executive departments and administrative agencies of the United States afford certain procedural safeguards in connection with any confiscation of property.

116. Congress's purpose in enacting CAFRA was to prevent the government from retaining property allegedly subject to forfeiture without commencing a judicial proceeding wherein private claimants of such property could be assured their day in court.

117. Toward this end Congress expressly prescribed, in 18 U.S.C. § 983(a)(3), twin remedies for the redress of delays caused by the government's failure to institute timely forfeiture proceedings: prompt release of the property alleged to be subject to forfeiture and permanent enjoinment of future action to confiscate that property on the basis of the same alleged offense.

118. As property owners who have been denied prompt opportunity to contest a governmental seizure and confiscation of their property, plaintiffs ROY, DAVID, and JOAN LANGBORD are among those persons for whose specific benefit Congress enacted CAFRA and provided judicially enforceable remedies for undue governmental delay.

119. By reason of the foregoing, and pursuant to 28 U.S.C. § 2201, plaintiffs ROY, DAVID, and JOAN LANGBORD are entitled under 18 U.S.C. § 983 to bring suit against defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK for declaratory relief to compel defendants to discharge their statutory obligations under CAFRA.

120. By reason of the foregoing, this Court should declare that: (a) defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, are required under the plain dictates of CAFRA to cause return of the Coins to plaintiffs ROY, DAVID, and JOAN LANGBORD; and (b) defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and

LEBRYK, and their successors in office, are barred from taking any further action to effect the civil forfeiture of the Coins; or (c) in the alternative, to the extent that confiscation of any property in the Coins is hereafter sought, defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK are required to cause the prompt commencement of a proceeding for forfeiture of the Coins.

## FOURTH CAUSE OF ACTION
### Due Process of Law – Fifth Amendment

121.    Plaintiffs repeat and reallege as if fully set forth herein the allegations contained in paragraph numbers 1 through 120.

122.    By seizing and confiscating the Coins without affording or submitting to any process whatsoever, defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK have deprived plaintiffs ROY, DAVID, and JOAN LANGBORD of property without due process of law, in violation of the Fifth Amendment to the United States Constitution.

123.    As described herein, the LANGBORD FAMILY has been deprived of its property without any process whatsoever.  At the very least, the LANGBORD FAMILY is entitled to, among other things, notice of the statutory authority and allegations of fact pursuant to which the Coins have been seized and confiscated; an opportunity to be heard and present arguments and/or evidence in opposition to the seizure and confiscation; an independent adjudication, by an impartial and duly constituted authority, of the lawfulness or unlawfulness of the seizure and confiscation; and judicial review.

124.    By virtue of its inherent equitable powers to remedy constitutional violations, and pursuant to 28 U.S.C. § 2201, this Court is possessed of authority and power to declare the

seizure and confiscation of the Coins to be unlawful violations of the Fifth Amendment to the United States Constitution and to compel defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, to cause the return of the Coins to plaintiffs ROY, DAVID, and JOAN LANGBORD.

125.    Alternatively, this Court is possessed of authority and power to compel defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, to afford the LANGBORDS the process due in connection with the confiscation of the Coins.

### FIFTH CAUSE OF ACTION
#### Unlawful Seizure – Fourth Amendment

126.    Plaintiffs repeat and reallege as if fully set forth herein the allegations contained in paragraph numbers 1 through 125.

127.    At no time have defendants filed any application with a neutral and detached magistrate for a warrant authorizing seizure of plaintiffs' ten 1933 Double Eagle gold coins.

128.    At no time have defendants presented proof evidencing probable cause to seize plaintiffs' ten 1933 Double Eagle gold coins.

129.    By seizing and confiscating the Coins without probable cause, a warrant, or any other lawful justification, defendants UNITED STATES, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK have deprived plaintiffs ROY, DAVID, and JOAN LANGBORD of their right to be secure in their persons, property, and effects, in violation of the Fourth Amendment to the United States Constitution.

130.    By virtue of its inherent equitable powers to remedy constitutional violations, and pursuant to 28 U.S.C. § 2201, this Court is possessed of authority and power to order defendants UNITED STATES, DEPARTMENT OF THE TREASURY, BUREAU OF THE MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, to cause the return of the Coins to the possession, custody, and control of the LANGBORDS.

**SIXTH CAUSE OF ACTION**
**Relief in the Nature of Mandamus – Mandamus and Venue Act**

131.    Plaintiffs repeat and reallege as if fully set forth herein each and every allegation set forth in paragraph numbers 1 to 130.

132.    At all times relevant hereto, defendants PAULSON, LARSON, MOY, SHAVER and/or LEBRYK, in their official capacities to act for the DEPARTMENT OF THE TREASURY and/or UNITED STATES MINT, have had a nondiscretionary duty to cause the prompt commencement of a proceeding for forfeiture of the Coins.

133.    More than ninety days have elapsed since the LANGBORDS submitted a timely Seized Asset Claim asserting ownership of the Coins and demanding their return.

134.    Defendants PAULSON, LARSON, MOY, SHAVER, and LEBRYK have failed to cause the commencement of any proceeding for forfeiture of the Coins.

134.    By reason of the foregoing, this Court has the power and authority, pursuant to 28 U.S.C. § 1361, to grant to the LANGBORDS relief in the nature of mandamus, compelling defendants PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, to cause the return of the Coins to plaintiffs ROY, DAVID, and JOAN LANGBORD.

135.    Alternatively, by reason of the foregoing, this Court has the power and authority, pursuant to 28 U.S.C. § 1361, to grant to the LANGBORDS relief in the nature of mandamus, compelling defendants PAULSON, LARSON, MOY, SHAVER, and LEBRYK, insofar as

confiscation of any property in the Coins may hereafter be sought by or on behalf of the

UNITED STATES, DEPARTMENT OF THE TREASURY, or UNITED STATES MINT, to

cause the prompt commencement of a proceeding for forfeiture of the Coins.

**SEVENTH CAUSE OF ACTION**
**Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* – Replevin**

136.   Plaintiffs repeat and reallege as if fully set forth herein the allegations contained

in paragraph numbers 1 through 135.

137.   The wrongful acts and omissions complained of herein were taken by, among

other employees of defendant UNITED STATES, defendant SHAVER, defendant LEBRYK,

Henrietta Holsman Fore, formerly Director of defendant MINT, and Arnold I. Havens, formerly

General Counsel of defendant DEPARTMENT OF THE TREASURY, in the course of their

official duties as employees of the UNITED STATES, the DEPARTMENT OF THE

TREASURY, and the UNITED STATES MINT.

138.   The LANGBORD FAMILY transferred the Coins to the MINT on September 22,

2004, for the limited purpose of authenticating and securing the Coins while the parties discussed

a possible resolution of issues relating to the Coins.

139.   As memorialized in a letter from plaintiffs' counsel to defendant SHAVER dated

September 21, 2004, plaintiffs have at all times reserved their exclusive right to the Coins, as

well as all other rights and remedies with respect to their ownership of the Coins.

140.   Pursuant to their ownership of and exclusive right to possess the Coins, plaintiffs

have repeatedly demanded the Coins' immediate return.

141.   Defendants SHAVER and LEBRYK, along with Ms. Fore, Mr. Havens, and other

employees of defendant UNITED STATES, caused plaintiffs to be advised, in writing, that their

– 28 –

Coins will not be returned to them because defendant UNITED STATES intends to exercise permanent dominion over them.

142.    Defendants PAULSON, LARSON, MOY, SHAVER, and LEBRYK, along with Ms. Fore, Mr. Havens and other employees of defendant UNITED STATES, have willfully refused to cause return of the Coins to plaintiffs.

143.    Replevin is a cognizable tort against a private person.

144.    The LANGBORDS are the legal owners of the Coins.

145.    The LANGBORDS are entitled to immediate possession of the Coins.

146.    The LANGBORDS' right to possess the Coins is exclusive of defendant UNITED STATES.

147.    Plaintiffs have exhausted administrative remedies by filing with defendants DEPARTMENT OF THE TREASURY and UNITED STATES MINT written claims seeking compensation for the Coins' seizure and confiscation.

148.    By reason of the foregoing, defendant UNITED STATES has performed acts and omissions that, if taken by a private person, would be sufficient to entitle the LANGBORDS under the law of replevin to possession of the Coins or compensation in an amount not less than the fair value of the Coins as of the date of their tortious conduct.

149.    By reason of the foregoing, the LANGBORD FAMILY is entitled to the replevy and return of the Coins to its possession, custody, and control; or, to compensation in an amount not less than the Coins' fair value as of the date of the government's tortious conduct.

### EIGHTH CAUSE OF ACTION
### Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* – Conversion

150.    Plaintiffs repeat and reallege as if fully set forth herein the allegations contained in paragraph numbers 1 through 149.

151.    Conversion is a cognizable tort against a private person.

152.    Defendant SHAVER, defendant LEBRYK, Ms. Fore, Mr. Havens, and other employees of defendant UNITED STATES have, on behalf of defendant UNITED STATES, willfully caused the LANGBORD FAMILY to be permanently deprived of the use, enjoyment, possession, custody, and control of the Coins.

153.    Defendant SHAVER, defendant LEBRYK, Ms. Fore, Mr. Havens and other employees of defendant UNITED STATES have, on behalf of defendant UNITED STATES, exercised dominion and control over the Coins in spite of the LANGBORDS' demands that the Coins be returned to their custody.

154.    Defendant SHAVER, defendant LEBRYK, Ms. Fore, Mr. Havens and other employees of defendant UNITED STATES, have, on behalf of the UNITED STATES, disposed of the Coins in furtherance of their own uses and purposes.

155.    By reason of the foregoing, defendant UNITED STATES has performed acts and omissions which, if taken by a private person, would be sufficient to impose liability for conversion.

156.    Plaintiffs have exhausted administrative remedies by filing with defendants DEPARTMENT OF THE TREASURY and UNITED STATES MINT written claims seeking compensation for the Coins' seizure and confiscation.

157.    By reason of the foregoing, the LANGBORD FAMILY is entitled to compensation in an amount not less than the full value of the Coins as of the date of the government's tortious conduct.

WHEREFORE, plaintiffs respectfully request that a judgment be granted as follows:

    a.  Declaring as follows:

        i.  That defendants UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK have violated CAFRA in seizing and confiscating the LANGBORDS' ten 1933 Double Eagle gold coins;

        ii.  That defendants UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK have deprived the LANGBORDS of property without due process of law, in violation of the Fifth Amendment; and

        iii.  That defendants UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK have denied the LANGBORDS their rights to be secure in their persons, possessions, and effects, in violation of the Fourth Amendment;

    b.  Compelling defendants UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors in office, to cause to be returned to the LANGBORDS their ten 1933 Double Eagle gold coins;

    c.  Enjoining defendants UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, UNITED STATES MINT, PAULSON, LARSON,

MOY, SHAVER, and LEBRYK, and their successors in office from

instituting, or causing to be instituted, any action at law or in equity to seize,

forfeit, or confiscate the ten 1933 Double Eagle gold coins, to place any lien

or encumbrance thereupon, or otherwise to interfere with the LANGBORDS'

use and enjoyment of the Coins;

d.  Or, alternatively, compelling UNITED STATES OF AMERICA,

DEPARTMENT OF THE TREASURY, UNITED STATES MINT,

PAULSON, LARSON, MOY, SHAVER, and LEBRYK, and their successors

in office, to the extent any may seek to confiscate the Coins, promptly to

cause the commencement of a proceeding for forfeiture of the Coins;

e.  Or, alternatively, compelling defendant UNITED STATES, in the event the

Coins are not returned to the LANGBORDS, to compensate the

LANGBORDS in an amount not less than the full value of the Coins as of the

date of the government's unlawful and tortious conduct;

f.  Awarding reasonable attorneys' fees and costs in favor of plaintiffs; and

g.  Ordering such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial of those issues and causes of action triable to a jury.


Dated: December 5, 2006


                  OBERMAYER  REBMANN  MAXWELL  &
                  HIPPEL LLP

By:   s/Walter M. Phillips, Jr.
                  Walter M. Phillips, Jr.
                  One Penn Center – 19th Floor
                  1617 John F. Kennedy Boulevard
                  Philadelphia, PA  19103-1895
                  215-665-3224

                  KRAMER LEVIN NAFTALIS
                  & FRANKEL LLP
                  Barry H. Berke
                  Eric A. Tirschwell
                  1177 Avenue of the Americas
                  New York, New York  10036
                  (212) 715-9100

                  Attorneys for Plaintiffs