UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

―――――――――――――――――――――― x
ROY LANGBORD, DAVID LANGBORD, and :
JOAN LANGBORD, :
 :
               Plaintiffs, :
 : No. 2:06-cv-5315 (LDD)
            v. :
 :
UNITED STATES DEPARTMENT OF THE :
TREASURY; UNITED STATES BUREAU OF :
THE MINT; HENRY M. PAULSON, JR., :
Secretary of the United States Department of the :
Treasury; STEPHEN LARSON, Acting General :
Counsel of the United States Department of the :
Treasury; EDMUND C. MOY, Director of the :
United States Mint; DANIEL P. SHAVER, Chief :
Counsel, United States Mint; DAVID A. LEBRYK, :
Deputy Director of the United States Mint; "JOHN :
DOE" Nos. 1 to 10, "John Doe" being fictional first :
and last names; and the UNITED STATES OF :
AMERICA, :
 :
               Defendants. :
 :
―――――――――――――――――――――― x

**PLAINTIFFS' COUNTER-STATEMENT OF MATERIAL FACTS
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

1. With respect to ¶ 1 of Defendants' "Statement of Indisputable Material Facts

in Support of Defendants' Motion to Dismiss, or in the Alternative, for Summary

Judgment," ("Defendants' Statement") plaintiffs dispute the contention that they claim

ownership of the ten 1933 Double Eagle $20 gold coins ("Coins") solely by means of

inheritance. The Complaint alleges that the Coins were possessed by Israel Switt, and

that all property of both Mr. Switt and his wife Elizabeth, both of whom are deceased,

has "passed" to plaintiffs. *See* Compl. ¶¶ 58-59. The cited language comprehends not

only inheritance, but also additional modes of transfer. *See* Deposition of Joan Langbord (Apr. 17, 2007), attached as Ex. F to Declaration of Declaration of Eric A. Tirschwell, Esq., at 215-16, 223-24, 349.

2. With respect to ¶ 2 of Defendants' Statement, plaintiffs do not dispute the contention.

3. With respect to ¶3 of Defendants' Statement, plaintiffs do not dispute the contention, but set forth the following additional material facts as to which no genuine issue exists:

   a. Stanton Langbord is deceased. *See* E.T. Ex. F at 235.

   b. Israel Switt's will names Roy Langbord as Mr. Switt's substitute executor. *See* Defs' Ex. G at 9 para. "Sixteenth."

4. With respect to ¶ 4 of Defendants' Statement, plaintiffs dispute the contention on the basis of the following facts:

   a. The cited "Renunciation and Disclaimer," if effective, did not extend to "any property," but rather was limited to Israel Switt's residuary estate, as defined by "Paragraph FIFTH" of Mr. Switt's will. Defs' Ex. N.

   b. Mr. Switt's will provided separately for the bequest of his "tangible personal property" and "personal effects" in Paragraph THIRD, Defs' Ex. G at 1, as to which the Renunciation and Disclaimer is clearly without effect. Defs' Ex. N.

5. With respect to ¶ 5 of Defendants' Statement, plaintiffs dispute the contention on the basis of the following facts:

KL3 2589913.5

   a. The cited "Renunciation and Disclaimer," if effective, did not extend to "any property," but rather was limited to Israel Switt's residuary estate, as defined by "Paragraph FIFTH" of Mr. Switt's will. Defs' Ex. O.

   b. Mr. Switt's will provided separately for the bequest of his "tangible personal property" and "personal effects" in Paragraph THIRD, Defs' Ex. G at 1, as to which the Renunciation and Disclaimer is clearly without effect, Defs' Ex. N.

6. With respect to ¶ 6 of Defendants' Statement, plaintiffs do not dispute the contention that the renunciations were filed in the Orphans' Court Division of the Court of Common Pleas of Philadelphia County, but dispute the characterization of those renunciations as "renouncing any interest in any property from Israel Switt's estate," for the reasons stated above in paragraphs 4 and 5.

7. With respect to ¶ 7 of Defendants' Statement, plaintiffs do not dispute that Joan Langbord inherited 100 percent of Israel Switt's residuary estate but note:

   a. Mr. Switt was predeceased by his wife Elizabeth. *See* E.T. Ex. OO; Defs' Ex. G.

   b. As a result, Mr. Switt's will devised "all of my personal effects.... To such of the issue of my daughter, JOAN LANGBORD, as survive my death, such issue to take per stirpes." Defs' Ex. G at 1 para. THIRD.

   c. Neither Roy nor David Langbord have renounced this bequest. *See supra* ¶¶ 4-5.

8. With respect to ¶ 8 of Defendants' Statement, plaintiffs do not dispute the contention insofar as it is construed to mean that no papers filed in connection with the

KL3 2589913.5

probate of Mr. Switt's will made reference to the 1933 Double Eagles here in controversy.

9. With respect to ¶ 9 of Defendants' Statement, plaintiffs do not dispute the contention insofar as it is construed to mean that the inventory of property filed in connection with the probate of Israel Switt's will did not make reference to the 1933 Double Eagles here in controversy.

10. With respect to ¶ 10 of Defendants' Statement, plaintiffs do not dispute the contention.

11. With respect to ¶ 11 of Defendants' Statement, plaintiffs do not dispute the contention.

12. With respect to ¶ 12 of Defendants' Statement, plaintiffs dispute the contention. Plaintiffs do not set forth any citation to the record because the contention represents a legal conclusion, and because no record citation appears in Defendants' Statement, as required by Fed. R. Civ. P. 56 and the Procedures publicly noticed by the Hon. Legrome D. Davis.

13. With respect to ¶ 13 of Defendants' Statement, plaintiffs do not dispute the contention insofar as it is construed to mean that the proclamation of March 6, 1933 stated that "banking institutions" were not to pay gold coin during the "holiday" thus proclaimed. Defs' Ex. B at 0002. Plaintiffs also set forth the following additional material facts as to which no genuine issue exists:

    a. "Banking institutions" was defined in the March 6 proclamation as "all Federal Reserve banks, national banking associations, banks, trust companies, savings banks, building and loan associations, credit unions, or

    other corporations, partnerships, associations or persons, engaged in the business of receiving deposits, making loans, discounting business paper, or transacting any other form of banking business." Id.

  b. No other persons or governmental entities were prohibited by the proclamation from paying gold coins. Id.

  c. The banking holiday, which was the only period during which the proclamation stated that banks were not to pay out gold, was brought to a close beginning on March 13, and fully concluded on March 15. 2 <u>Public Papers and Addresses of Franklin D. Roosevelt: The Year of Crisis, 1933</u> § 15, pp. 59-60 (1938), E.T. Ex. PP.

14. With respect to ¶ 14 of Defendants' Statement, plaintiffs dispute defendants' contention to the extent it asserts that William H. Woodin gave directions to any official other than the Director of the Mint, and set forth the following additional material facts:

  a. There appears on the face of Defendants' Exhibit I a time limitation, such that the directive was to remain in effect "during the continuance" of a bank holiday or until officials were "otherwise directed." Defs' Ex. I.[1]

  b. On March 7, 1933, officials at the Philadelphia Mint were "otherwise directed," within the meaning of Defs' Ex. I, by a telegram from Assistant Secretary of the Treasury for Fiscal Affairs James H. Douglas, Jr., expressly authorizing the payment of "gold coin or bars in exchange for gold bullion." *See* E.T. Ex. R.

---

[1] Plaintiffs reserve all rights to object at trial to the authenticity of Exhibit I and to the admission of any hearsay statement set forth therein.

15. With respect to ¶ 15 of Defendants' Statement, plaintiffs do not dispute the contention.

16. With respect to ¶ 16 of Defendants' Statement, plaintiffs dispute the contention on the ground that defendants have failed to cite any record support, as required by Fed. R. Civ. P. 56 and the Procedures publicly noticed by the Honorable Legrome D. Davis. Plaintiffs also set forth the following facts material to the licensing of 1933 Double Eagles:

   a. In 1944, the United States Department of the Treasury specifically licensed the export and private ownership of a 1933 Double Eagle for inclusion in the collection of King Farouk of Egypt. Compl. ¶¶ 37 to 42.

   b. In connection with this license, Treasury officials sent a request to the curator of the Smithsonian's rare coin collection inquiring whether, in the language of Treasury regulations in effect since 1933, as discussed below in paragraph 20, the coin was "of recognized special value to collectors." E.T. Ex. LL.

   c. The curator, Theodore Belote, replied affirmatively in writing on the same day. *Id.*

17. With respect to ¶ 17 of Defendants' Statement, plaintiffs dispute the contention that Defendants' Exhibit J,[2] considered in isolation, demonstrates March 15, 1933, to be the "first time" 1933 Double Eagles were delivered to the cashier. The document indicates that March 15, 1933, was one occasion when 1933 Double Eagles were delivered to the cashier's control and recorded by the cashier on the Mint's

---

[2] Plaintiffs reserve all rights to object at trial to the authenticity of Defendants' Exhibit J and to the admission of any hearsay statement set forth therein.

accounts. The document indicates the delivery to comprise coins with a face value of $500,000 (25,000 coins).

18. With respect to ¶ 18 of Defendants' Statement, plaintiffs dispute defendant's interpretation of Defendants' Exhibit K. A typographical error, whereby figures appearing in a table were listed in the row beneath the one intended, is apparent on the face of the document, such that the report should be read to indicate that Double Eagles with a total face value of $8,910,000 were coined (or, to use defendants' words, "lawfully issued as coinage") in 1933. This typographical error is apparent in light of the following facts:

    a. The $8,910,000 figure listed in a row as the value of <u>$10 Eagles</u> coined in 1933 corresponds exactly to the 445,500 <u>$20 Double Eagles</u> which Defendants acknowledge to have been struck. *See* Defendants' Statement at ¶ 15.

    b. The $3,125,000 figure listed in a row as the value of <u>$5 Half Eagles</u> coined in 1933 corresponds exactly to the 312,500 <u>$10 Eagles</u> that were in fact manufactured. *See* E.T. Ex. BB.

    c. Double Eagles and Eagles were the only gold coins struck in 1933. *See* E.T. Exs. V, Y, Z, BB.

19. With respect to ¶ 19 of Defendants' Statement, plaintiffs dispute the contention that Department of the Treasury records establish the fact stated on the basis of the following facts:

    a. The single record cited by the defendants is a letter from the Office of the Treasurer of the United States, based on an informal request advising only

that the author was not able to locate records of payments to the Federal Reserve System a decade after the relevant period. Defs' Ex. D, which represents a single unit of the Department of the Treasury, see 31 U.S.C. § 301(d), not the Department as a whole.[3]

20. With respect to ¶ 20 of Defendants' Statement, plaintiffs dispute the contentions. Plaintiffs note that defendants do not cite to any record support for the contention that no 1933 Double Eagles were "lawfully issued as coinage." Plaintiffs set forth the following material facts:

   a. The entire mintage of 1933 Double Eagles was delivered to the cashier's control and recorded on the Philadelphia Mint's accounts on or before May 19, 1933.

   b. The Mint's annual report for the fiscal year ended June 30, 1934 indicates, albeit with a typographical error described in paragraph 18 above, that all Double Eagles manufactured in 1933 were duly "coined." Defs' Ex. K at 000004 (title of chart). The Mint has also described the 1933 Double Eagle as a "circulating coin." E.T. Ex. NN.

   c. Beginning on April 5, 1933, the Roosevelt administration promulgated a series of regulations requiring that persons subject to U.S. jurisdiction take certain actions with respect to gold and desist from others. The regulations uniformly exempted from their scope all gold coins "of recognized special value to collectors of gold coins." E.T. Exs. M, N, O,

---

[3] Plaintiffs reserve all rights to object at trial to the authenticity of Exhibit D and to the admission of any hearsay statement set forth therein.

P, Q. As a result, the acquisition, possession, sale, and trade of such coins was never barred by the regulations and laws. *See* E.T. Exs. X, CC.

d. During this time period, the Office of the Treasurer of the United States made uncirculated gold coins available to collectors by mail in exchange for payment of their face value and a small surcharge for shipping and handling. *See* E.T. Exs. U, V, W, BB.

   i. The Treasurer maintained special stores of coins for the purpose of accommodating collectors' requests until at least February 21, 1934. *See* E.T. Ex. EE.

   ii. The Treasurer also sometimes filled collectors' orders by having gold coins shipped from the Philadelphia Mint. *See* E.T. Ex. FF.

e. Independently of the United States Treasurer, the Philadelphia Mint was directly authorized, following proclamation of the bank holiday, to give out uncirculated gold coins in exchange for other forms of gold of equal value, such as gold scrap, gold jewelry, and previously circulated gold coins. *See* E.T. Exs. R, S, T.

f. The Philadelphia Mint official responsible for gold exchanges was the facility's cashier, to whose control thousands 1933 Double Eagles were delivered beginning on March 15, 1933. See Defs' Ex. J (upper right-hand corner of "Payments" column).

g. By regulation promulgated July 13, 1954, the Treasury Department expressly defined all gold coinage "made prior to April 5, 1933," as having "recognized special value to collectors of rare and unusual coin,"

*see* E.T. Ex. Q, thus confirming such pieces' lawful status under the regulations described above in subparagraph [c]. The gold regulations were subsequently amended to read "1934" in place of "April 5, 1933." *See* E.T. Ex. KK.

21. With respect to ¶ 21 of Defendants' Statement, plaintiffs dispute the contentions on the basis of the facts stated above in paragraph 20.

22. With respect to ¶ 22 of Defendants' Statement, plaintiffs dispute the contention on the ground that defendants have failed to cite any record support, as required under Fed. R. Civ. P. 56 and the Procedures publicly noticed by the Honorable Legrome D. Davis. Insofar as defendants imply that the Secret Service first learned in 1944 of trade in 1933 Double Eagles, Plaintiffs dispute the contention on the basis of the following facts:

    a. Exhibitions of 1933 Double Eagles were publicized in 1937 and 1939 in a coin collecting periodical, The Numismatist. *See* E.T. Exs. II, JJ.

    b. The readership of The Numismatist included the Mint's then director, Nellie Tayloe Ross, or other Mint staff, as evidenced by Ms. Ross's submission to the periodical of one letter correcting a mistake in a report and another sending regards upon the opening of a 1937 collectors' convention in Washington. *See* E.T. Ex. HH, GG.

23. With respect to ¶ 23 of Defendants' Statement, plaintiffs dispute the contention on the ground that defendants have failed to cite any record support, as required under Fed. R. Civ. P. 56 and the Procedures publicly noticed by the Honorable Legrome D. Davis. To the extent that defendants' contention is based upon defendants'

KL3 2589913.5

Exhibit E, plaintiffs object to the admission of any part of the exhibit. The document has not been authenticated as a statement made by Israel Switt, does not bear any actual signature, and consists exclusively of hearsay statements that are not admissible in evidence, as required by Fed. R. Civ. P. 56(e) to support a motion for summary judgment.

24. With respect to ¶ 24 of Defendants' Statement, plaintiffs dispute the contention because Defendants' Exhibit F, if authenticated,[4] would tend to show merely that the United States Attorney advised certain persons that untimeliness was one reason no charges would be instituted against Mr. Switt. Exhibit F does not indicate or suggest that a prosecution would have been instituted but for the expiration of the limitations period nor does it indicate that the referenced matter related to 1933 Double Eagles.

25. With respect to ¶ 25 of Defendants' Statement, plaintiffs dispute the contention. Plaintiffs note the defendants' failure to cite any certification or other record support, as required by Fed. R. Civ. P. 56(c) and the Procedures publicly noticed by the Honorable Legrome D. Davis, for the proposition that the United States is in possession of no documents—for example, in its national archives—of the type described. Plaintiffs incorporate here the additional material facts set forth in paragraph 20, above, and also set forth the following material facts in response to defendants' contention:

   a. Israel Switt collected coins. See E.T. Ex. F at 21, 58, 62.

   b. During the 1930s, Israel Switt regularly visited the Philadelphia Mint. See E.T. Ex. F at 144-45.

   c. Some or all of Israel Switt's visits to the Mint were for the purpose of exchanging scrap gold he collected in the course of his retail jewelry

---

[4] Plaintiffs reserve all rights to object at trial to the authenticity of Exhibit F and to the admission of any hearsay statement set forth therein.

business and indulge his hobbyist's enthusiasm for coins. *See* E.T. Ex. F at 343-44.

    d.  In sworn testimony given in this case, an old business acquaintance of Switt's testified in response to questions by defendants' counsel that he had been told by Switt in the 1970's that Switt had obtained 1933 Double Eagles by exchanging other gold coins for them. *See* E.T. Ex. G at 58.

26. With respect to ¶ 26 of Defendants' Statement, plaintiffs do not dispute the contention.

27. With respect to ¶ 27 of Defendants' Statement, plaintiffs dispute the contention on the basis of the following material facts:

    a.  Plaintiffs permitted the government to take custody of the Coins solely for certain limited purposes memorialized by plaintiffs' counsel in a September 21, 2004 letter to defendants. *See* Defs' Ex. B. These purposes were the Coins' authentication and safekeeping during settlement discussions. *Id.* By the same letter, plaintiffs reserved all rights and remedies existing at law, in equity, or otherwise. *Id.*; E.T. Ex. A.

    b.  On September 22, 2004, plaintiffs made the Coins available to defendants pursuant to the terms stated in counsel's September 21 letter. *See* Defendants' Statement of Indisputable Material Facts at 30.

    c.  Roughly nine months later, defendants advised that the United States had authenticated the Coins but would not participate in further settlement discussions. *See* Defs' Ex. R; Compl. ¶ 67. Despite plaintiffs' prior limitation of their consent to the government's custody of the Coins solely

KL3 2589913.5

for the purposes of authentication and safekeeping while settlement discussions continued, the government now advised that the Coins would not be returned. *See* Defs. Ex. R; E.T. Ex. H; Compl. ¶¶ 67, 69.

    d. Plaintiffs promptly demanded that the Coins be returned. *See* Defs' Exs. R.

    e. The government first provided plaintiffs with written notice of the Coins' confiscation on August 10, 2005. *See* E.T. Ex. H

    f. Plaintiffs thereafter timely filed a written claim under the Civil Asset Forfeiture Reform Act for either the return of the Coins or the commencement of a civil forfeiture proceeding. *See* E.T. Ex. I.

    g. Defendants rejected plaintiffs' claim "without action" and refused to commence any judicial forfeiture proceeding. *See* E.T. Ex. J. Plaintiffs immediately requested that defendants reconsider this action. *See* E.T. Ex. K.

    h. Plaintiffs subsequently demanded that they be compensated for the Coins' conversion. *See* Defs' Exs. M, S.

28. With respect to ¶ 28 of Defendants' Statement, plaintiffs dispute the contention because the cited paragraph of the complaint says no such thing and also notes the following material facts:

    a. Plaintiffs permitted the government to take custody of the Coins solely for the limited purposes set forth above in paragraph 27.

    b. The United States has not "consistently maintained" that 1933 Double Eagles were never lawfully issued as coinage. Rather, defendants'

KL3 2589913.5

position as to the legal status of 1933 Double Eagles has repeatedly shifted, as evidenced by the facts set forth above in paragraphs 20 and 22, and in the following subparagraph:

 c. In 2001, the United States settled a forfeiture action it had instituted against a 1933 Double Eagle. *See* E.T. Exs. B, C. The settlement's terms permitted an individual from whom the government had taken the coin, and who contested the forfeiture proceeding, to take one-half the proceeds of a 2002 auction that culminated in a $7.59 million bid. *Id.*

29. With respect to ¶ 29 of Defendants' Statement, plaintiffs do not dispute that the parties agreed to a time and place at which plaintiffs would permit the government to take custody of the Coins solely for the limited purposes set forth above in paragraph 27. Plaintiffs otherwise dispute the contention stated in ¶ 29 of Defendants' Statement.

30. With respect to ¶ 30 of Defendants' Statement, plaintiffs do not dispute that Roy Langbord permitted the government to take custody of the Coins solely for the limited purposes set forth above in paragraph 27. Plaintiffs otherwise dispute the contention stated in ¶ 30 of Defendants' Statement. Defendants' own documents state that the Secret Service "seized" the Coins.

31. With respect to ¶ 31 of Defendants' Statement, plaintiffs dispute that they attempted to negotiate a "reward" in connection with a "voluntary transfer" of the Coins. *See* Defs. Ex. A, M, R, S; E.T. Ex. I. Again, the sole cited paragraph of the Complaint says no such thing. E.T. Ex. K.

32. With respect to ¶ 32 of Defendants' Statement, plaintiffs do not dispute that Barry H. Berke, Esq., was principally responsible for communicating with the United

States Mint on plaintiffs' behalf. Plaintiffs dispute that they attempted to negotiate a "reward" in connection with a "voluntary transfer" of the Coins. *See* Defs. Ex. A, M, R, S; E.T. Exs. I, K.

33. With respect to ¶ 33 of Defendants' Statement, plaintiffs do not dispute the contention that upon prevailing in these proceedings or a subsequent forfeiture proceeding the freely trading 1933 Double Eagle would be worth more than $500,000.

                      WALTER M. PHILLIPS, Jr., Esq.
                      Obermayer Rebmann Maxwell & Hippel LLP
                      615 Chestnut Street, Suite 1250
                      1617 John F. Kennedy Boulevard
                      Philadelphia, PA 19103-1895
                      Telephone: (215) 665-3224

                      */s/ Barry H. Berke*

                      BARRY H. BERKE, Esq.
                      ERIC A. TIRSCHWELL, Esq.
                      ROBIN WILCOX, Esq.
                      KEITH M. DONOGHUE, Esq.
                      KRAMER LEVIN NAFTALIS &
                      FRANKEL LLP
                      1177 Avenue of the Americas
                      New York, New York 10036
                      (212) 715-9100 (Telephone)
                      (212) 715-8000 (Fax)

Dated: May 11, 2007