## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROY LANGBORD, DAVID LANGBORD, and : \
JOAN LANGBORD, :

            Plaintiffs, :

              v. :      Civil Action No. 06-5315 (LDD)

UNITED STATES DEPARTMENT OF THE : \
TREASURY; UNITED STATES BUREAU OF : \
THE MINT; HENRY M. PAULSON, JR., : \
Secretary of the United States Department of the : \
Treasury; STEPHEN LARSON, Acting General : \
Counsel of the United States Department of the : \
Treasury; EDMUND C. MOY, Director of the : \
United States Mint; DANIEL P. SHAVER, Chief : \
Counsel, United States Mint; DAVID A. LEBRYK, : \
Deputy Director of the United States Mint; and : \
the UNITED STATES OF AMERICA, :

            Defendants. :

_____ :

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFFS' COMPLAINT

      Defendants, namely the United States of America, the United States Department of the

Treasury, the United States Bureau of the Mint, Henry M. Paulson, Jr. (official capacity only),

Stephen Larson (official capacity only), Edmund C. Moy (official capacity only), Daniel P.

Shaver (official capacity only), and David A. Lebryk (official capacity only), hereby answer the

complaint as follows:

### NATURE OF ACTION

      1.     Denied. Defendants deny that any property owned or otherwise belonging to the

plaintiffs was "lawlessly confiscated by the government," or that the plaintiffs have been denied

any property rights without due process.  Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.  The remaining allegations constitute conclusions of law to which no responsive pleading is required and which accordingly are deemed denied.

2.      Admitted in part; denied as stated.  Defendants admit only that plaintiffs seek to obtain from the government ten 1933 Double Eagle gold pieces, and that the quotations in the paragraph appeared in promotional information in advance of the non-precedential, government-authorized 2002 public auction of a 1933 Double Eagle, the result of which was the first and only monetization and lawful issuance of a 1933 Double Eagle to a private party.  Defendants deny the remaining allegations.

3.      Admitted in part; denied in part.  Defendants admit only that in a  non-precedential, government-authorized 2002, the result of which was the first and only monetization and lawful issuance of a 1933 Double Eagle to a private party, a single 1933 Double Eagle gold piece owned by the United States sold for more than $7.5 million, that the gold piece had been recovered from Stephen Fenton, and that a forfeiture proceeding was initiated in connection with the recovery.  Defendants further admit that the United States settled its dispute with Fenton.  Defendants specifically deny that Stephen Fenton ever owned the gold piece.  After reasonable inquiry, defendants are without knowledge sufficient to form a belief as to whether $7.5 million was the highest price on record for the sale of any rare coin.  Defendants further aver that: (1) the 1933 Double Eagle sold at auction did not become a coin until it was monetized and lawfully issued in accordance the authority of the Secretary of the Treasury at the time of its purchase; (2) a forfeiture action against the gold piece was not legally warranted or

necessary in that case; (3) the settlement agreement between the United States and Fenton –
which was signed by Barry Berke, Esq., plaintiffs' counsel in this action – acknowledged that the
1933 Double Eagle was owned by the United States; and (4) the catalogue created by Sotheby's
for the auction – which Mr. Berke reviewed and approved before the auction – stated "[a]ny
additional examples [of 1933 Double Eagles] that may exist, are similarly, the property of the
United States Government, illegal to own, and subject to seizure."

     4.    Denied. Defendants deny that plaintiffs ever have owned the 1933 Double Eagles.
Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they
never have been issued by the government as coinage. After reasonable inquiry, defendants are
without knowledge or information sufficient to form a belief as to the truth of the remaining
averment, and the allegation therefore is deemed denied.

     5.    Admitted in part; denied in part. Defendants admit only that plaintiffs' counsel
notified the United States that he had a client who claimed to possess ten 1933 Double Eagles.
Defendants deny that the notification was "voluntary." Defendants further avers that Mr. Berke
stated that his client felt compelled to inform the United States of the client's possession of
property belonging to the United States, and that his client's purpose in notifying the United
States of the client's possession of 1933 Double Eagles was to extract a reward for returning
property owned by the United States. Defendants deny that Fenton ever owned any 1933 Double
Eagle, and further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never
have been issued by the government as coinage.

     6.    Denied. Defendants deny that plaintiffs made a "good-faith voluntary" disclosure
of their possession of property belonging to the United States, that the United States illegally

confiscated any property owned by the plaintiffs, and that defendants violated any federal asset forfeiture law and the United States Constitution. Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

7.     Denied.  Defendants deny that the U.S. Mint requested to test the gold pieces that Berke reported as being 1933 Double Eagles, the implication that plaintiffs owned or had a legal right to the gold pieces, that plaintiffs' surrender of the gold pieces was voluntary, that the plaintiffs' surrender of the gold pieces was not qualified or conditioned in any respect whatsoever, and that plaintiffs and the Mint discussed "resolution of any issues" relating to the 1933 Double Eagles.  Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

8.     Admitted in part; denied in part.  Defendants admit only that Defendant Shaver informed plaintiffs' counsel that the 1933 Double Eagles are authentic.  Defendants deny the remaining allegations, including the implication that plaintiffs own the gold pieces.  Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

9.     Admitted in part; denied in part.  Defendants admit only that plaintiffs submitted to the United States a document self-styled "Seized Asset Claim" and that the document was returned to the plaintiffs because it did not constitute a cognizable claim under any law of the United States. Defendants deny the remaining allegations. Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage. Defendants further aver that, despite the United States' requests of the

4

plaintiffs to provide evidence of their purported ownership of the 1933 Double Eagles at issue, plaintiffs repeatedly failed to provide the United States with any evidence of their purported ownership of the gold pieces.

10.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

11.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

12.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants specifically deny that any statutory or Constitutional principles supports plaintiffs' attempt to take and keep property that they do not own – property belonging to the United States of America for the benefit of its citizens.  Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

13.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants specifically deny that any statutory or Constitutional principles supports plaintiffs' attempt to take and keep property that they do not

own – property belonging to the United States of America for the benefit of its citizens. Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

14.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants specifically deny that any statutory or Constitutional principles supports plaintiffs' attempt to take and keep property that they do not own – property belonging to the United States of America for the benefit of its citizens.  Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

## JURISDICTION AND VENUE

15.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants further deny that the Court has jurisdiction under any of these statutes to consider plaintiffs' attempt to take and keep property belonging to the United States.

16.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants do not dispute that the Court has jurisdiction to consider only  plaintiffs' replevin and conversion claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.

17.     Denied.  The allegations in this paragraph constitute legal conclusions to which no

response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants further deny that the Court has jurisdiction under any of these statutes except 28 U.S.C. §1346(b) to consider plaintiffs' attempt to retake and keep property belonging to the United States.

18.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. Defendants do not contest venue.

**PARTIES**

19.    Denied. After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied.

20.    Denied. After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied.

21.    Denied. Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

22.    Admitted.

23.    Admitted in part; denied in part. Defendants admit only that the United States Mint is responsible for minting and issuing coins to meet the needs of the United States. Defendants deny any implication that a planchet becomes a coin after striking, or that a struck planchet becomes a coin until after it is monetized and issued in accordance with lawful authority of the United States.

24.    Admitted.

7

25.    Admitted.

26.    Denied.  Defendants further aver that Defendant Stephen Larson is the former Acting General Counsel of the Department of the Treasury.

27.    Admitted.

28.    Admitted.

29.    Denied.  Defendants deny that any officer, representative, or employees of the United States or any or its agencies has seized or confiscated the ten 1933 Double Eagle gold pieces at issue in this case, or have violated any of plaintiffs' constitutional or statutory rights.

## STATEMENT OF FACTS
### *The 1933 Double Eagle Gold Pieces*

30.    Admitted in part; denied in part.  Defendants admit only that "Double Eagle" refers to gold pieces minted by the United States between 1850 and 1933, with the exception of 1917, 1918 and 1919.  Defendants deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage, and further deny any implication that a planchet becomes a coin after striking, or that a struck planchet becomes a coin until after it is monetized and issued in accordance with lawful authority of the United States.

31.    Admitted in part; denied in part.  Defendants admit the allegations, except that defendants deny that the 1933 Double Eagles at issue in this suit are "coins," as they never have been issued by the government as coinage.

32.    Admitted in part; denied in part.  Defendants admit the allegations, except that defendants deny that the 1933 Double Eagles at issue in this case were "rare and unusual coins" because they never have been monetized and issued as coinage pursuant to lawful authority –

8

and, if any had been – at the time of the exception referenced in this paragraph, each 1933 Double Eagle would have had a face value of only $20.

33.    Admitted. Defendants further aver that the Cashier's records of the United States Mint reflect that all 445,000 of the gold pieces, except for two that were sent to the National Numismatic Collection, were destroyed. Defendants further aver that only one 1933 Double Eagle has ever been issued as coinage, and that coin is not relevant to this lawsuit.

### *Private Collectors' Interest in the 1933 Double Eagle*

34.    Denied. After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied.

35.    Denied. After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied. Defendants further deny that any planchet becomes a coin solely on account of its striking, or that a struck planchet becomes a coin until after it is monetized and issued in accordance with lawful authority of the United States.

36.    Denied. After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied. Defendants further aver that the 1933 Double Eagles at issue in this suit are not "coins," as they never have been issued by the government in accordance with lawful authority as coinage.

37.    Admitted in part; denied in part. Defendants admit only that in 1944 King Farouk of Egypt obtained possession of a 1933 Double Eagle. Defendants deny that in 1944 the United

States expressly authorized the private ownership of a 1933 Double Eagle or that it specifically

recognized its numismatic value. Defendants further deny that the United States issued a license

allowing King Farouk of Egypt to own a 1933 Double Eagle, or that King Farouk ever did own a

1933 Double Eagle.

38.     Denied. The allegations in this paragraph constitute legal conclusions to which no

response is required and which are deemed denied. To the extent the paragraph contains factual

allegations, they are denied. Defendants further aver that at the time of Ross's request, it was not

known to the government that 1933 Double Eagle pieces that had not been issued as coinage

were outside the possession of the United States. Defendants further deny that the 1933 Double

Eagles at issue in this suit are "coins," because they never have been issued by the government as

coinage.

39.     Denied. After reasonable inquiry, defendants are without knowledge or

information sufficient to form a belief as to the truth of the allegations in this paragraph, and

therefore the allegations are deemed denied. Defendants further deny that the 1933 Double

Eagles at issue in this suit are "coins," because they never have been issued by the government as

coinage.

40.     Denied. Defendants deny that the TGL-11 Export License issued to King Farouk

on February 28, 1944, authorized private ownership of the 1933 Double Eagle.

41.     Denied. Defendants deny the characterization "curator's findings" with reference

to the document quoted in the paragraph. Defendants further aver that it was not known to the

government at the time the letter was written that the 1933 Double Eagle – which had not been

issued in accordance with lawful authority as coinage – was outside the possession of the United

States. Defendants further deny that the 1933 Double Eagles at issue in this suit are "coins," because they never have been issued by the government as coinage.

42.    Admitted. Defendants further aver that 19 days later the Director of the United States Mint cancelled TGL-11 Export License issued to King Farouk upon discovering that the 1933 Double Eagle had not been issued as coinage of the United States.

### The Treasury's Campaign to Repossess Double Eagles

43.    Admitted in part; denied in part. Defendants admit only that, from 1944 until 1952, the United States regained possession of nine 1933 Double Eagles on the ground that none of the 1933 Double Eagles had been issued in accordance with lawful authority as coinage of the United States, and therefore had always been the property of the United States. Defendants deny the remaining allegations, and specifically deny the allegation that the TGL-11 Export License conferred ownership of a 1933 Double Eagle, and any implication in the subheading before this paragraph that the United States' efforts to recover all of the 1933 Doubles Eagle in private hands was anything other than a lawful process to regain property belonging to the United States. Defendants further aver that all of the recovered 1933 Double Eagles had at one time been in the possession of Israel Switt, and that the United States' recovery of the ten 1933 Double Eagles in this case is completely consistent with the United States' objectives since 1944, when the United States first recognized that a number if non-monetized and unissued 1933 Double Eagles had found there way – through Israel Switt – into private hands.

44.    Admitted. Defendants further aver that the 1933 Double Eagle recovered from Fenton never was issued as coinage of the United States, and therefore had always been property belonging to the United States.

11

45.     Admitted in part; denied in part.  Defendants admit only that the United States invoked as necessary and further aver that at least one federal court considering ownership of a 1933 Double Eagle has ruled that no 1933 Double Eagle had been issued as coinage of the United States and therefore all 1933 Double Eagles are property belonging to the United States.

46.     Admitted in part; denied in part.  Defendants admit only that an action was commenced in the United States District Court for the Western District of Tennessee, captioned United States v. Barnard, 72 F. Supp. 531 (1947), seeking a judicial determination of the ownership of a 1933 Double Eagle in the possession of a Memphis coin collector.  Defendants deny the remaining allegations in this paragraph, including specifically plaintiffs' allegations concerning a purportedly erroneous stipulation in that case.  Defendants further aver that the Barnard court found in favor the United States after concluding that to determine ownership of the 1933 Double Eagle, the "decisive question" was whether the 1933 Double Eagle had been "issued as money or currency of the United States, or whether the status of the same was that of a chattel, or an article of virtu" and further that 1933 Double Eagles "could only be issued and circulated legally by the Philadelphia Mint, upon receipt by said Mint of an order from the Treasurer of the United States," and that "the Mint did not, at any time, receive such an order except one to deliver two of these coins to the Smithsonian Institute."  Defendants further aver that the Barnard court additionally held that the 1933 Double Eagle at issue "did not leave the Mint as regularly and lawfully issued money"; that it "was not, at any time, money or currency, but was chattel, or an article of virtu"; that it had been "stolen or, through fraudulent breach of trust, taken from the Philadelphia Mint"; and that "the defendant, though a bona fide purchaser, acquired no title in the purchase of same against the United States Government, the rightful

12

owner." Defendants further aver that the decision in <u>Stack v. Strang</u>, 94 F. Supp. 54 (S.D.N.Y. 1950) – another 1933 Double Eagle case – is consistent with the holding in <u>Barnard</u>.

47. Admitted. Defendants further aver that the 1996 forfeiture action was not legally warranted or necessary.

48. Admitted in part; denied in part. Defendants admit only that in 2001 the United States dismissed its forfeiture action as part of a settlement agreement requiring that the gold piece recovered in 1996 be sold at a public auction and the proceeds shared with Fenton. Defendants specifically deny that Fenton ever owned the gold piece, and further aver that a forfeiture action against the gold piece was not legally warranted or necessary. Defendants further aver that the settlement – the written memorialization which was signed by Barry Berke, plaintiffs' counsel here – acknowledged that the 1933 Double Eagle belonged to the United States, and that the 1933 Double Eagle could not be offered to the public until it was monetized and issued as coinage of the United States. Defendants deny the remaining allegations and characterizations.

49. Admitted in part; denied in part. Defendants admit the allegations, except that defendants deny that the 1933 Double Eagle was a coin until after it was monetized and issued as coinage of the United States.

50. Denied. Defendants further deny any factual and legal similarity between this action of the dispute between the United States and Fenton. Defendants further aver the 1933 Double Eagle was not a coin until after it was monetized and issued as coinage of the United States.

13

*Additional Legislation Concerning the Ownership of Gold Coins*

51.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants specifically deny that the 1954 Treasury Order is applicable to the 1933 Double Eagles because there is no evidence to support a contention that the 1933 Double Eagles at issue in this case were struck before April 5, 1933. Defendants further deny that the 1954 Treasury Order would have had any bearing whatsoever on any 1933 Double Eagles because 1933 Double Eagles were never monetized and issued as coinage of the United States.

52.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants further aver that the Coinage Act of 1965 had no bearing whatsoever on any 1933 Double Eagle because 1933 Double Eagles were never monetized and issued as coinage of the United States.

*CAFRA Takes Effect*

53.    Admitted in part; denied in part. Defendants admit only that the Civil Asset Forfeiture Reform Act ("CAFRA") was enacted in 2000. Defendants deny the remaining allegations, and specifically deny that the 1933 Double Eagles at issue in this case were seized, or that plaintiffs or Fenton ever owned a 1933 Double Eagle, or that the 1933 Double Eagles in this case are coins.

54.    Denied. After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations, and the allegations

14

therefore are deemed denied. Defendants further aver that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

55.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants further aver that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

56.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants further aver that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

57.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants specifically deny that plaintiffs are – or ever have been – the owners of any 1933 Double Eagles. Defendants further aver that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the

United States of America for the benefit of its citizens.

### The Langbord Family's Ten 1933 Double Eagles

58.    Denied.  Defendants deny that during the 1930s Switt operated a jewelry business in close proximity to the United States Mint in Philadelphia.  After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and the allegations therefore are deemed denied.  Defendants further deny any implication in the heading before this subparagraph that the subject ten 1933 Double Eagles are the property of the plaintiffs.

59.    Admitted in part; denied in part.  Defendants admit only that Israel Switt reportedly died in April 1990 and that Elizabeth Switt reportedly died in April 1985.  Defendants deny the remaining allegations.

60.    Denied.  After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations, and the allegations therefore are deemed denied.

61.    Denied.  Defendants further aver that in August 2004 plaintiffs' counsel declined to identify plaintiffs, and that plaintiffs' counsel did not assert that his clients owned 1933 Double Eagles.  Defendants further aver that the 1933 Double Eagles at issue in this suit are not "coins," as they never have been issued by the government as coinage.

62.    Admitted in part; denied in part.  Defendants admit only that plaintiffs' counsel and representatives of the United States Mint met and discussed the 1933 Double Eagles. Defendants further aver that Defendant Shaver informed plaintiffs' counsel that if the 1933 Double Eagles were determined to be counterfeit, the matter would be turned over to the United

States Secret Service for investigation, and that if the gold pieces were determined to be authentic, then they would be property belonging to the United States.  Plaintiffs' counsel did not contest this outcome.  Defendants deny the remaining allegations, as well as the implication that 1933 Double Eagles are coins.

63.    Denied.  Defendants specifically deny that the parties had agreed that plaintiffs' voluntary surrender of the 1933 Double Eagles was qualified or conditional.  Defendants moreover aver that at no time did Berke and any of the defendants ever discuss the possibility that the 1933 Double Eagles ever would be returned to the plaintiffs.  Defendants further deny the implication that 1933 Double Eagles are coins.

64.    Admitted in part; denied in part.  Defendants admit only that after the conclusion of the parties' discussions concerning plaintiffs' unqualified voluntary surrender of the 1933 Double Eagles, and a day before the voluntary surrender occurred, plaintiffs' counsel delivered a letter to the United States Mint in which he attempted to preserve legal rights that plaintiffs purport to have in the 1933 Double Eagles.  Defendants deny the remaining allegations, and specifically deny that the parties had agreed that plaintiffs' surrender of the 1933 Double Eagles was qualified or conditional.  Defendants moreover aver that at no time did Berke and any of the defendants ever discuss the possibility that the 1933 Double Eagles ever would be returned to the plaintiffs.  Defendants further deny the implication that 1933 Double Eagles are coins.

65.    Admitted in part; denied in part.  Defendants admit only that on September 22, 2004, plaintiff Roy Langbord voluntarily surrendered possession of ten 1933 Double Eagles to agents of the United States Secret Service at Sovereign Bank, 2000 Market Street, Philadelphia, Pennsylvania.  Defendants deny the remaining allegations, and specifically deny that the 1933

17

Double Eagles are coins.

66.     Admitted in part; denied in part.  Defendants admit the allegations in this paragraph as to the stated explanations for delay, but deny plaintiffs' characterization of the time period as "nearly a year," and also plaintiffs' allegation that the 1933 Double Eagles are coins.

67.     Admitted in part; denied in part.  Defendants admit only that plaintiffs' counsel met with representatives of the United States Mint, including Defendant Shaver, on June 22, 2005, and that Shaver informed plaintiffs' counsel that the 1933 Double Eagles that plaintiffs had voluntarily surrendered were authentic.  Defendants deny the remaining allegations, and deny specifically the allegations that defendants had engaged in any discussion of "negotiating any resolution" with respect to the 1933 Double Eagles, or that Defendant Shaver ever stated that the United States would "seek" to retain the gold pieces.  Defendants further deny that the 1933 Double Eagles are coins.

68.     Admitted in part; denied in part.   Defendants admit only that plaintiffs sent the United States Mint a letter dated July 25, 2005.  Defendants deny the remaining allegations.

69.     Admitted in part; denied in part.   Defendants admit only that the United States Mint sent plaintiffs' counsel a letter dated August 9, 2005.  Defendants deny the remaining allegations.

70.     Admitted.

71.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants specifically deny that plaintiffs are – or ever have been – the owners of any 1933 Double Eagles.  Defendants further aver that CAFRA is inapplicable to

18

this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain
tactical advantage in their effort to retake and keep for themselves property belonging to the
United States of America for the benefit of its citizens.

 72. Admitted in part; denied in part.  Defendants admit only that on or about
September 9, 2005, plaintiffs sent the United States Mint a self-styled "Seized Asset Claim" that
plaintiffs purport to comply with CAFRA.  Defendants deny the remaining allegations, and
specifically deny that plaintiffs own – or have ever owned – any 1933 Double Eagles.  Plaintiffs'
legal conclusions also are denied.  Defendants further aver that CAFRA is inapplicable to this
action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical
advantage in their effort to retake and keep for themselves property belonging to the United
States of America for the benefit of its citizens.

 73. Admitted in part; denied in part.  Defendants admit only that on or about
September 9, 2005, plaintiffs sent the United States Mint a self-styled "Seized Asset Claim" that
plaintiffs purport to comply with CAFRA.  Defendants deny the remaining allegations, and
specifically deny that plaintiffs own – or have ever owned – any 1933 Double Eagles.  Plaintiffs'
legal conclusions also are denied.  Defendants further aver that CAFRA is inapplicable to this
action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical
advantage in their effort to retake and keep for themselves property belonging to the United
States of America for the benefit of its citizens.

 74. Admitted in part; denied in part.  Defendants admit only that the United States
Mint sent a letter dated December 5, 2005, to plaintiffs' counsel, and that the letter informed
plaintiffs' counsel that plaintiffs' self-styled "Seized Asset Claim" was returned "without

action," and that the letter indicated that Treasury Department General Counsel Arnold I. Havens concurred with the decision, and that the letter was copied to Acting Director of the Mint David A. Lebryk. Defendants deny the remaining allegations.

75.    Admitted in part; denied in part. Defendants admit only that on or about December 6, 2005, plaintiffs sent the United States Mint a letter. Defendants deny the remaining allegations. Plaintiffs' legal conclusions also are denied. Defendants further aver that plaintiffs do not own – and never have owned – any 1933 Double Eagles, and that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

76.    Admitted in part; denied in part. Defendants admit only that the United States did not file a forfeiture complaint in response to plaintiffs' request that it do so, or that the United States returned the 1933 Double Eagles to the possession of the plaintiffs. Defendants deny the remaining allegations. Plaintiffs' legal conclusions also are denied. Defendants further aver that plaintiffs do not own – and never have owned – any 1933 Double Eagles, that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

77.    Denied. Plaintiffs' legal conclusions also are denied. Defendants further aver that plaintiffs do not own – and never have owned – any 1933 Double Eagles, that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property

belonging to the United States of America for the benefit of its citizens.

78.     Admitted in part; denied in part.  Defendants admit only that on or about May 8, 2006, plaintiffs sent the United States Mint a letter self-styled as an a administrative claim. Defendants deny the remaining allegations.

79.     Admitted in part; denied in part.  Defendants admit only that on or about June 29, 2006, plaintiffs sent the United States Mint a letter purporting to be a supplement to its self-styled administrative claim.  Defendants deny the remaining allegations.

80.     Admitted in part; denied in part.  Defendants admit the allegations, except for the allegation concerning the date that plaintiffs' counsel received the referenced letter from Defendant Shaver, which allegation defendants are without sufficient information to admit or deny.  That allegation therefore is deemed denied.

81.     Denied.  Defendants specifically deny that the 1933 Double Eagles are coins as they were never monetized and issued as coinage of the United States.

82.     Denied.  After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied.

83.     Denied.  After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied.

84.     Denied.  After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore the allegations are deemed denied.

85.    Denied as stated.  Defendants specifically deny the implication that the United States sanctions private possession of property of the United States, and further deny that the non-precedential, government-authorized public auction, the result of which was the first and only monetization and lawful issuance of a 1933 Double Eagle to a private party, is of any relevance to this action.  After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported quotation from the website of the United States Mint, and further aver that the quotations in the paragraph may have appeared in promotional information in advance of the 2002 public auction of a 1933 Double Eagle.

86.    Denied as stated.  Defendants specifically deny the implication that the United States sanctions private possession of property of the United States, and further deny that the non-precedential, government-authorized public auction, the result of which was the first and only monetization and lawful issuance of a 1933 Double Eagle to a private party, is of any relevance to this action.  After reasonable inquiry, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported quotation from the website of the United States Mint, and further aver that the quotations in the paragraph may have appeared in promotional information in advance of the 2002 public auction of a 1933 Double Eagle.

87.    Admitted in part; denied in part.  Defendants admit only that the United States disseminated a press release announcing the recovery of the 1933 Double Eagles, and also announcing that the 1933 Double Eagles would be displayed at a convention in Denver Colorado. Defendants deny the remaining allegations, and specifically deny that the United States Mint

seized or confiscated the 1933 Double Eagles, that the plaintiffs have at any time owned the 1933

Double Eagles, and that the 1933 Double Eagles are coins, as they never has been monetized and

issued as coinage.

88.    Admitted in part; denied in part.  Defendants admit only that in July 2006 – for

the first time ever – the 1933 Double Eagles were made available for viewing by the public at the

convention of the American Numismatic Association's summer convention in Denver, Colorado.

After reasonable inquiry, defendants are without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in this paragraph, and therefore the allegations

are deemed denied.

89.    Denied.  Defendants further aver that plaintiffs have brought this lawsuit in an

attempt to obtain and keep for themselves property belonging to the United States for the benefit

of its citizens.

90.    Denied.  Defendants further aver that plaintiffs have brought this lawsuit in an

attempt to obtain and keep for themselves property belonging to the United States for the benefit

of its citizens.  Defendants further aver that plaintiffs do not own – and never have owned – any

1933 Double Eagles, that the 1933 Double Eagles at issue here are not coins because they never

have been monetized and issued as coinage, that CAFRA is inapplicable to this action, and that

plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in

their effort to retake and keep for themselves property belonging to the United States of America

for the benefit of its citizens.

91.    Denied.  Defendants further aver that plaintiffs have brought this lawsuit in an

attempt to retake and keep for themselves property belonging to the United States for the benefit

of its citizens. Defendants further aver that plaintiffs do not own – and never have owned – any 1933 Double Eagles, that the 1933 Double Eagles are not coins because they never have been monetized and issued as coinage, that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

## FIRST CAUSE OF ACTION
### Unlawfully Withheld or Unreasonably Delayed Agency Action - Administrative Procedure Act, 5 U.S.C. § 706(1)

92. Defendants incorporate herein as if fully set forth herein their responses contained in all of the preceding paragraphs. Defendants further deny any implication in the heading before this paragraph that any agency action was unlawfully withheld or unreasonably denied.

93. Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.

94. Denied.

95. Admitted in part; denied in part. Defendants admit only that plaintiffs sent the United States Mint a document self-styled as a Seized Asset Claim. Defendants deny CAFRA is applicable to this dispute, and further deny that plaintiffs have complied with CAFRA.

96. Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.

97. Admitted in part; denied in part. Defendants admit only that more than 90 days have elapsed since the date plaintiffs sent the United States Mint a document self-styled as a Seized Asset Claim.

98.    Denied.  Defendants further deny that the 1933 Double Eagles are coins.

99.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.

100.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants further aver that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

101.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants further aver that CAFRA is inapplicable to this action, and that plaintiffs baselessly seek to invoke CAFRA merely in an attempt to gain tactical advantage in their effort to retake and keep for themselves property belonging to the United States of America for the benefit of its citizens.

102.    Denied.

103.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

104.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

105.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

## SECOND CAUSE OF ACTION
### Agency Action Failing to Meet Statutory, Procedural, and Constitutional Requirements - Administrative Procedure Act, 5 U.S.C. § 706(2)(B), (C) and (D)

106.     Defendants incorporate herein as if fully set forth herein their responses contained in all of the preceding paragraphs.  Defendants further deny any implication in the heading before this paragraph that the defendants' purported actions in any way failed to meet statutory, procedural or Constitutional requirements.

107.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.

108.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

109.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

110.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

111.     Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual

allegations, they are denied.

112.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

113.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

**THIRD CAUSE OF ACTION**
**Declaratory Relief - CAFRA, 18 U.S.C. § 983**

114.    Defendants incorporate herein as if fully set forth herein their responses contained in all of the preceding paragraphs.

115.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

116.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

117.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.

118.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual

allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the 1933 Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

119.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied.

120.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied.

### FOURTH CAUSE OF ACTION
#### Due Process of Law - Fifth Amendment

121.    Defendants incorporate herein as if fully set forth herein their responses contained in all of the preceding paragraphs.

122.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the 1933 Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

123.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the 1933 Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

124.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied. To the extent the paragraph contains factual

allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the 1933

Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

125.    Denied. The allegations in this paragraph constitute legal conclusions to which no

response is required and which are deemed denied. To the extent the paragraph contains factual

allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the 1933

Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

### FIFTH CAUSE OF ACTION
#### Unlawful Seizure - Fourth Amendment

126.    Defendants incorporate herein as if fully set forth herein their responses contained

in all of the preceding paragraphs.

127.    Admitted in part; denied in part. Defendants admit the allegations, except

defendants deny that the United States seized or confiscated the 1933 Double Eagles, and further

deny that the United States was required by law to obtain a warrant to receive upon voluntary

surrender property owned by the United States that had been in the possession of plaintiffs.

128.    Admitted in part; denied in part. Defendants admit the allegations, except

defendants deny that the United States seized or confiscated the 1933 Double Eagles, and further

deny that the United States was required by law to present proof evidencing probable cause to

receive upon voluntary surrender property belonging to the United States that had been in the

possession of plaintiffs.

129.    Denied. The allegations in this paragraph constitute legal conclusions to which no

response is required and which are deemed denied. To the extent the paragraph contains factual

allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the 1933

29

Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

130.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants specifically deny that plaintiffs are owners of the 1933 Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

## SIXTH CAUSE OF ACTION
### Relief in the Nature of Mandamus - Mandamus and Venue Act

131.    Defendants incorporate herein as if fully set forth herein their responses contained in all of the preceding paragraphs.

132.    Denied.  The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.  To the extent the paragraph contains factual allegations, they are denied.  Defendants specifically deny that plaintiffs are owners of the 1933 Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

133.    Admitted in part; denied in part.  Defendants admit only that more than 90 days have elapsed since the date plaintiffs sent the United States Mint a documents self-styled as a Seized Asset Claim.  Defendants deny the remaining allegations, including the allegations that plaintiffs own the 1933 Double Eagles, and that the 1933 Double Eagles are coins.

134.    Admitted.  Defendants further aver that they are not required under law to commence any proceeding for forfeiture of the 1933 Double Eagles, that the 1933 Double Eagles are and always have been owned by the United States, and that the 1933 Double Eagles are not coins because they have not been monetized and issued in accordance with lawful authority.

134. [sic]  Denied.  The allegations in this paragraph constitute legal conclusions to which

no response is required and which are deemed denied. To the extent the paragraph contains

factual allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the

1933 Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

135.    Denied. The allegations in this paragraph constitute legal conclusions to which no

response is required and which are deemed denied. To the extent the paragraph contains factual

allegations, they are denied. Defendants specifically deny that plaintiffs are owners of the 1933

Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

**SEVENTH CAUSE OF ACTION**
**Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* - Replevin**

136.    Defendants incorporate herein as if fully set forth herein their responses contained

in all of the preceding paragraphs.

137.    Denied. The allegations in this paragraph constitute legal conclusions to which no

response is required and which are deemed denied. To the extent the paragraph contains factual

allegations, they are denied, except that defendants admit that any actions taken by each of the

defendants was within the course and scope of his federal employment.

138.    Denied.

139.    Denied.

140.    Denied. Defendants specifically deny that plaintiffs are owners of the 1933

Double Eagles, or that the United States seized or confiscated the 1933 Double Eagles.

141.    Denied. Defendants further aver that they advised plaintiffs that the United States

would retain possession of property belonging to the United States.

142.    Denied. Defendants specifically deny that plaintiffs own – or ever have owned –

31

the 1933 Double Eagles. Defendants further aver that the 1933 Double Eagles are property belonging to the United States.

143.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.

144.    Denied.

145.    Denied.

146.    Denied.

147.    Admitted in part; denied in part. Defendants admit only that plaintiffs have exhausted administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. Defendants deny any remaining allegations.

148.    Denied.

149.    Denied.

**EIGHTH CAUSE OF ACTION**
**Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. - Conversion**

150.    Defendants incorporate herein as if fully set forth herein their responses contained in all of the preceding paragraphs.

151.    Denied. The allegations in this paragraph constitute legal conclusions to which no response is required and which are deemed denied.

152.    Denied.

153.    Admitted in part; denied in part. Defendants admit that they presently exercise dominion and control over the 1933 Double Eagles on behalf of the United States. Defendants deny the remaining allegations, and specifically deny that plaintiffs own the 1933 Double Eagles,

or that the gold pieces are coins.

154.    Denied.

155.    Denied.

156.    Admitted in part; denied in part.  Defendants admit only that plaintiffs have

exhausted administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§2671 et seq.

Defendants deny the remaining allegations, and specifically deny that the 1933 Double Eagles

were seized or confiscated, or that the 1933 Double Eagles are coins.

157.    Denied.  Defendants further aver that plaintiffs are entitled to nothing.

WHEREFORE, defendants respectfully request that judgment be entered in favor of the

defendants and against the plaintiffs on all of the counts in the complaint, and that plaintiffs take

nothing from this lawsuit.

## JURY DEMAND

The Court should strike the jury demand because Congress had not expressly authorized

jury trials against the United States.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, due to waiver.

## FOURTH  AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, on the ground that any action or conduct by an officer, representative, and/or employee of the United States Mint (or any other federal agency or department) resulting in the release of 1933 Double Eagles from the United States Mint was <u>ultra vires</u>.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, due to illegality by the plaintiffs and their family members having received and thereafter concealed the 1933 Double Eagles.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, due to plaintiffs' and their family's fraudulently having received and thereafter concealed the 1933 Double Eagles.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, due to laches to the extent plaintiffs knew or should have known of the existence of the 1933 Double Eagles in their possession before 2003.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of <u>res judicata</u> and issue preclusion.

WHEREFORE, defendants respectfully request that judgment be entered in favor of the

defendants and against the plaintiffs on all of the counts in the complaint, and that plaintiffs take

nothing from this lawsuit.

Respectfully,

PATRICK L. MEEHAN
United States Attorney


VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division


JOEL M. SWEET
Assistant United States Attorney


JACQUELINE ROMERO
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476
Tel. (215) 861-8200
Fac. (215) 861-8349

*For All Defendants*

Of Counsel:

Daniel P. Shaver, Chief Counsel
Greg M. Weinman, Senior Counsel
United States Mint
801 9th Street NW
Washington, DC 20220

August 6, 2007

35

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August 2007, a true and correct copy of the

foregoing Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint was served by

first-class United States mail, postage prepaid, upon the following:

> Barry H. Berke, Esquire
> KRAMER LEVIN NAFTALIS & FRANKEL
> 1177 Avenue of the Americas
> New York, NY 10036
>
> Kevin J. Kotch, Esquire
> Obermayer Rebmann Maxwell & Hippel, LLP
> One Penn Center, 19th Floor
> 1617 John F. Kennedy Boulevard
> Philadelphia, PA 19103

_____

JOEL M. SWEET
Assistant United States Attorney