IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROY LANGBORD et al., | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| THE TREASURY et al., | : | NO. 06-CV-05315 |
|     Defendants. | : | |

ORDER

AND NOW, this 17th day of March 2008, upon consideration of Defendants' Motion for Protective Order Precluding Inquiry into Pre-Decisional Government Deliberations (Doc. No. 28), Plaintiffs' Memorandum of Law in Opposition (Doc. No. 32), and Defendants' Reply thereto (Doc. No. 40), it is hereby ORDERED that Defendants' Motion is GRANTED.

Defendants move this Court to preclude plaintiffs from inquiring into the government's pre-decisional deliberations during eight forthcoming depositions that plaintiffs have scheduled with various current and former government officials. Specifically, defendants seek to preclude plaintiffs from asking the deponents about the process by which the government reached its decision not to commence a forfeiture action against ten 1933 Double Eagle coins, which were purportedly discovered by plaintiffs but are currently in the government's possession. For the reasons stated below, defendants' motion is granted.

At issue in this case is whether defendants have acted in violation of the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983(a)(3)(A) (West 2007). Under CAFRA, no later than 90 days after a person files a claim for property allegedly seized in a nonjudicial civil forfeiture — as plaintiffs did on September 9, 2005 — the government must either file a

1

complaint for forfeiture or return the property pending the filing of a complaint. 18 U.S.C. § 983(a). The government may also request a court to extend the 90-day filing period "for good cause shown" or upon the parties' stipulation. 18 U.S.C. § 983(a)(3)(A).

It is undisputed that defendants, who are currently in possession of the 1933 Double Eagles, have chosen not to file a forfeiture complaint, nor are they requesting a filing extension.[1] Defendants' apparent position is that the coins are and always have been property of the United States, and therefore the CAFRA provisions, which they describe as "intended solely for the purpose of transferring the *ownership* of seized property *to* the government," are inapplicable here. (See Defs.' Mot. at 14.) They therefore contend that the internal deliberations leading up to the government's decision not to commence a forfeiture action are irrelevant to the issues in this case, and that plaintiffs should not be permitted to pierce the veil of governmental deliberative process privilege ("GDPP") during the scheduled depositions.

Without speaking to defendants' characterization of CAFRA, we agree that its pre-decisional deliberations are indeed privileged and, furthermore, not relevant at this procedural juncture. The GDPP generally covers documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," and protects neither factual information nor communications made subsequent to an agency decision. NLRB v. Sears, Roebuck, and Co., 421 U.S. 132, 150 (1975) (internal citations omitted); Redland Soccer Club v. Department of the Army, 55 F.3d 827, 854 (3d Cir. 1995). It likewise applies to deposition testimony about

---

[1] Defendants previously requested this Court to equitably toll the CAFRA filing deadline in their March 9, 2007 summary judgment motion, which is no longer pending, but have since expressly abandoned that request. (See Defs.' Reply at 10.)

2

communications of the same nature.  See Startzell v. City of Philadelphia, 2006 U.S. Dist. LEXIS 74579, *7 (E.D. Pa. Oct. 13, 2006) (citing NLRB v. Building & Constr. Trade Council, 1989 U.S. App. LEXIS 9411, *2-5 (3d Cir. Apr. 6, 1989)).  Once the GDPP has been properly invoked, the party seeking discovery "bears the burden of showing that its need for the documents outweighs the government's interest."  Redland, 55 F.3d at 854.  In balancing the competing interests of the parties, a court typically considers at least five factors: 1) relevance of the evidence; 2) availability of other evidence; 3) "seriousness" of the litigation; 4) the government's role in the litigation; and 5) the possibility of "future timidity" by government employees who will be forced to recognize that their secrets are violable.  Id. (citing First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994)).

   Here, it is clear that the government's inter-agency and intra-agency discussions about whether to adopt a particular course of legal action, ultimately leading up to its decision not to initiate a forfeiture complaint, are protected under the GDPP.  Such communications fall squarely within the ambit of information the GDPP seeks to protect, on the principle that "were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer."  Redland, 55 F.3d at 854 (internal quotation marks omitted).  Such concerns are reiterated by Assistant Secretary O'Brien of the Treasury for Terrorist Financing and Financial Crimes, whose sworn affidavit accompanies defendants' motion and properly serves to invoke the GDPP on the government's behalf.[2]

---

[2]Plaintiffs challenge the sufficiency of Assistant Secretary O'Brien's affidavit, arguing that it does not sufficiently offer "precise and certain reasons for preserving the confidentiality of the communications."  United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980).  However, there are no "magic words" necessary to invoke the GDPP.  Mr. O'Brien is the immediate successor to Mr. Juan Zarate, the decision-maker in this case, and Mr. O'Brien explicitly stated

Plaintiffs, however, argue that defendants waived the GDPP when two memoranda, which generally outline the status of the agencies' discussions and the legal options they considered, were previously disclosed by the Secret Service in response to plaintiffs' subpoena. This Court disagrees. Although we recognize that "[v]oluntary disclosure of a significant part of the privileged matter" may waive the GDPP, Peck v. United States, 514 F. Supp. 210, 213 (S.D.N.Y. 1981), the minimal contents of the memoranda at issue do not constitute a "significant part" of the government's deliberations. Moreover, defendants have submitted evidence to show that the disclosure was not voluntary, and was not authorized by any of the agencies which are a party to this case. See Rupert v. United States, 226 F.R.D. 154, 157 (M.D. Pa. 2004) ("the [deliberate process] privilege cannot be inadvertently waived"); Redland, 55 F.3d at 856 (affirming the lower court's finding that inadvertent disclosure "did not qualify as a 'voluntary' waiver").[3]

Furthermore, upon application of the five-prong Redland balancing test, we do not find plaintiffs to have met their burden of showing that their need for the information outweighs the government's interest in maintaining confidentiality. Indeed, the first prong — the relevance of the evidence for which disclosure is sought — is all but dispositive in this case. Plaintiffs' sole reason for inquiring into the government officials' pre-decisional deliberations is to determine

---

that he is "personally familiar" with the specific communications plaintiffs seek to probe. (Defs.' Mot. Ex. E.) As such, the circumstances surrounding his invocation of the privilege stand in stark contrast to those that the Third Circuit found insufficient in O'Neill, where the GDPP was invoked only orally at a hearing by a lawyer, not an executive official. Id. at 225-26.

[3]Plaintiffs also argue that the privilege does not apply since defendants' deliberations themselves are at issue. As this argument essentially overlaps with their point on the first "relevance" prong of the GDPP balancing inquiry, we need not address it separately.

defendants' "actual basis for dispensing with their statutory forfeiture obligation," (Pls.' Memo. at 13, 19), which they argue is somehow relevant to whether defendants have shown "good cause" to justify an extension of the 90-day filing period.  However, as stated in footnote 1, supra, defendants are not currently seeking any extension of the statutory period.  More importantly, even if we were to assume that CAFRA applies to the unique circumstances of this case, the relevant legal inquiry would be the course of action defendants ultimately chose to undertake, not *why* they chose to undertake it.

Plaintiffs also cannot succeed on any of the remaining four factors.  Because the evidence plaintiffs seek is not relevant, the availability of other sources is likewise of no moment to the motion before us.  The litigation, which touches on issues of fundamental due process and possible theft of government property, is clearly serious to the parties.  Also, the government's role lends particular weight to our consideration of the fourth and fifth factors.  Unlike Title VII discrimination, this is not an area where Congress has explicitly provided a cause of action inherently requiring disclosure of the government's motivations and intent.  Moreover, there undoubtedly exists a strong interest in maintaining the confidentiality of inter-agency discussions, particularly where, as here, they involve the maneuvering of a legal minefield surrounding artifacts of unprecedented historical significance.

As we can see no reason to take the extraordinary measure of stripping the government of its deliberative process privilege, defendants' motion for a protective order is granted.

BY THE COURT:

/S/LEGROME D. DAVIS
Legrome D. Davis, J.