UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— x

ROY LANGBORD, et al.,                          :
                                               :
                        Plaintiffs,            :        CIVIL ACTION
                                               :
                v.                             :
                                               :        No. 2:06-cv-05315 (LDD)
UNITED STATES DEPARTMENT OF THE                :
TREASURY, et al.,                              :
                                               :
                        Defendants.            :
                                               :
                                               :
———————————————————— x

### PLAINTIFFS' MOTION TO COMPEL EXPERT DISCLOSURES OR, IN THE ALTERNATIVE, PRECLUDE DEFENDANTS FROM USING TESTIMONY AT TRIAL

Plaintiffs, pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, and for the reasons set forth in the memorandum of law submitted herewith, respectfully move to compel production of the requested expert disclosures pursuant to Plaintiffs' Subpoena with attached Document Requests dated May 1, 2008. The document requests are annexed as Exhibit C to Plaintiffs' memorandum of law in support of this motion. In the alternative, Plaintiffs respectfully move to preclude Defendants from offering expert testimony at trial.

Dated: August 18, 2008
New York, New York

                        Respectfully submitted,

                        s/Barry H. Berke

                        Barry H. Berke
                        Eric A. Tirschwell
                        Keith M. Donoghue
                        KRAMER LEVIN NAFTALIS & FRANKEL LLP
                        1177 Avenue of the Americas
                        New York, New York  10036
                        (212) 715-9100 (Telephone)
                        (212) 715-8000 (Fax)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

————————————————————————— x

ROY LANGBORD, et al.,             :

                      :

            Plaintiffs,    :    CIVIL ACTION

                      :

           v.            :

                      :    No.  2:06-cv-05315 (LDD)

UNITED STATES DEPARTMENT OF THE  :

TREASURY, et al.,           :

                      :

           Defendants.    :

                      :

                      :

————————————————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL EXPERT DISCOVERY OR, IN THE ALTERNATIVE,
PRECLUDE DEFENDANTS FROM OFFERING EXPERT TESTIMONY AT TRIAL**

Barry H.  Berke
Eric A. Tirschwell
Keith M. Donoghue
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100 (Telephone)
(212) 715-8000 (Fax)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF FACTS ..............................................................................................1

ARGUMENT...................................................................................................................4

I.    RULE 26 REQUIRES PRODUCTION OF ALL MATERIALS
     "CONSIDERED BY" TRIPP IN FORMULATING THE CONCLUSIONS
     SET FORTH IN HIS EXPERT REPORT – WHETHER HE FIRST BEGAN
     FORMULATING THOSE CONCLUSIONS IN CONNECTION WITH THIS
     LITIGATION OR AT SOME EARLIER POINT ...................................................4

II.   RULE 26 REQUIRES THE PRODUCTION OF MATERIALS BEARING
     ON THE EXTENT TO WHICH TRIPP'S CONCLUSIONS WERE SHAPED
     BY HIS OWN FINANCIAL AND REPUTATIONAL INTERESTS ..................................11

III.  RULE 26 REQUIRES THE PRODUCTION OF TRIPP'S COMMUNICATIONS
     TO THE EXTENT THEY BEAR ON (1) THE SUBJECT MATTER OF THE
     EXPERT REPORT AND/OR (2) TRIPP'S POTENTIAL BIAS .........................................13

CONCLUSION...............................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*In re Air Crash Disaster at Stapleton Intern.*,
    720 F.Supp. 1442 (D. Colo. 1988)............................................................................9

*B.C.F. Oil Refining v. Consolidated Edison Co.*,
    171 F.R.D. 57 (S.D.N.Y. 1997) ..............................................................................14

*Bitler Investment Venture II, LLC v. Marathon Ashland Petroleum, LLC*,
    No. 1: 04-CV-477, 2007 WL 465444 (N.D. Ill. Feb. 7, 2007) ....................................15

*Delso v. Trustees of Retirement Plan for Hourly Employees of Merck*,
    No. Civ. 04-3009 (AET), 2006 WL 3000199 (D.N.J. Oct. 20, 2006) ..........................11

*Emcore Corp. v. Optium Corp.*,
    Civ. A. No. 06-1202, 2007 WL 4377610 (W.D. Pa. Dec. 11, 2007)............................14

*Fidelity Nat'l Title Insur. Co. of New York v. Intercounty Title Insur. Co.*,
    412 F.3d 745 (7th Cir. 2005) ...................................................................................7

*Harlow v. Eli Lilly and Co.*,
    No. 94 C 4840, 1995 WL 319728 (N.D. Ill. May 25, 1995) .................................17 n.8

*The Herrick Co., Inc. v. Vetta Sports, Inc.*,
    No. 94 CIV. 0905 (RPP), 1998 WL 637468 (Sept. 17, 1998 S.D.N.Y.) ..................7, 8

*Johnson v. Gmeinder*,
    191 F.R.D. 638 (D. Kan. 2000)...............................................................................15

*Krisa v. Equitable Life Assurance Society*,
    196 F.R.D. 254 (M.D. Pa. 2000)...............................................................................7

*In re Orthopedic Bone Screw Products Liab. Litig.*,
    No. MDL 1014, 1996 WL 900345 (E.D. Pa. July 16, 1996)
    *aff'd*, 264 F.3d 344 (3d. Cir. 2001) ..................................................................10, 17 n.8

*Peterson v. Calmar Steamship Corp.*,
    296 F. Supp. 8 (E.D. Pa. 1969) ..............................................................................16

*Quaile v. Carol Cable Co.*,
    No. Civ. A. No. 90-7415, 1992 WL 277981 (E.D. Pa. Oct. 5, 1992)............................8

*Rector Church Warden's v. Hussman Corp.*,
    Civ. A. No. 91-7310, 1993 WL 29147 (E.D. Pa. Feb. 4, 1993) ..................................12

*RLI Ins. Co. v. Indian River School Dist.,*
   Civ. A. No. 05-858-JJF, 2007 WL 4292109 (D. Del. Dec. 4, 2007)............................7

*Smith v. Transducer Tech., Inc. En-Devco Corp. & Meggit-USA, Inc.,*
   No. Civ. 1995-28, 2000 WL 1717334 (D.V.I. Nov. 16, 2000)...................................13

*Synthes Spine Co. v. Walden,*
   232 F.R.D. 460 (E.D. Pa. 2005)................................................................................4

*United States v. Abel,*
   469 U.S. 45 (1984)...................................................................................................11

*United States v. City of Torrance,*
   163 F.R.D. 590 (C.D. Cal. 1995)..............................................................................7

*United States v. International Business Machines Corp.,*
   66 F.R.D. 215 (S.D.N.Y. 1974) ...............................................................................12

*United States v. International Business Machines Corp.,*
   84 F.R.D. 651 (S.D.N.Y. 1979) ...............................................................................12

*United States v. Ringwalt,*
   213 F. Supp. 2d 499 (E.D. Pa. 2002) .......................................................................13

*Vaughan Furniture Co. v. Featureline Mfg, Inc.,*
   156 F.R.D. 123 (M.D.N.C. 1994) .............................................................................14

*Vitale v. McAtee,*
   170 F.R.D. 404 (E.D. Pa. 1997)..........................................................................12, 13

*Vitalo v. Cabot Corp.,*
   212 F.R.D. 472 (E.D. Pa. 2002)................................................................................9

## FEDERAL RULES

Fed. R. Civ. P. 26.................................................................................................. *passim*

Fed. R. Civ. P. 26 Advisory Committee Notes (1993) .........................................................4

Fed. R. Civ. P. 37.........................................................................................................1

**MISCELLANEOUS**

David Tripp, *Illegal Tender: Gold, Greed and the Mystery of the Lost 1933 Double Eagle*, New York: Free Press (2004) ...............................................................2

8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2015 (2008)......................................................................................................11, 12

Plaintiffs respectfully move this Court pursuant to Federal Rule of Civil Procedure 37 for an order compelling Defendants to produce documents bearing on the proposed testimony to be given by their expert witness or, in the alternative, barring Defendants from offering such testimony at trial.

## PRELIMINARY STATEMENT

This motion arises from Defendants' refusal to produce materials Plaintiffs need in order to be able to effectively understand, analyze and impeach the flawed historical conclusions set forth in the report of Defendants' expert witness, David Tripp – materials to which Plaintiffs are entitled under Federal Rule of Civil Procedure 26.

## STATEMENT OF FACTS

Before the Langbord family's discovery of the ten coins at issue in this lawsuit, the last 1933 Double Eagle to come to light was seized in 1996 from Stephen Fenton, a British national, and then made the *in rem* defendant in a forfeiture action brought by the United States in the Southern District of New York, styled *United States v. A $20 Gold Coin* (hereafter, "the Fenton coin").[1] In *A $20 Gold Coin*, the government alleged that the 1933 Double Eagle seized by the government was stolen from the United States Mint in the 1930s and therefore that it was properly forfeitable. Five years later, on the eve of trial, the parties in *A $20 Gold Coin* reached a settlement providing for the coin's auction and equal division of proceeds between Fenton and the United States.

Sotheby's Inc. ("Sotheby's") and Stack's LLP, a rare coin dealer, auctioned the coin in July 2002, which resulted in the sale of the Fenton coin for $7.59 million. Tripp – who is Defendants' proposed expert here – was employed by Sotheby's as Special Consultant to

---

[1]    The full caption styled by the United States was *United States v. A $20 Gold Coin, Known as a 1933 "Double Eagle" Minted at the United States Mint in Philadelphia, Pennsylvania.*

conduct the Fenton auction.[2]  He also authored the Sotheby's catalogue relating to the sale.  In

the catalogue, Tripp set forth a brief purported history of the storied Double Eagles, including the

assertion that the coin had been "stolen from the United States." *See* July 30, 2002 Sotheby's

Catalogue, at 11, Ex. B.  The catalogue described the Fenton coin as "unique and the only one

certified for private ownership." *Id.* at 33.

        In 2004, Tripp published *Illegal Tender: Gold, Greed and the Mystery of the Lost

1933 Double Eagle* ("*Illegal Tender*").  *Illegal Tender* was marketed to the general public as a

readable account[3] of, among other things, the historical question of how numerous 1933 Double

Eagles made their way out of the Mint some 70 years ago.

        Tripp now has been retained by Defendants in this case as an expert witness to

testify with respect to that same issue.[4]  Tripp's expert report reaches the same conclusion set

forth in the Sotheby's catalogue and *Illegal Tender*, a conclusion that no doubt added to the

value of the Fenton coin at the time of its auction and to the public's interest in his book – that

the 1933 Double Eagles were stolen from the Mint some 70 years ago.

        On May 1, 2008, in accordance with Federal Rule of Civil Procedure 26,

Plaintiffs served a subpoena and request for documents relating to Tripp's expert report.  *See*

---

[2]    Tripp has been affiliated with Sotheby's for more than thirty-five years, *see* Ex. A (Tripp Report at
45), and continues to work with the auction house on highly remunerative projects, last year co-authoring
a catalogue for the December auction of the Washington-Lafayette Cincinnati Medal, which sold for $5.3
million, *see id.* (Appendix 5 at first page); Sotheby's, Inc., George Washington's Order of the Cincinnati
Medal," http://www.sothebys.com/app/live/lot/LotDetailPrintable.jsp?lot_id=159428541 (reviewed
August 14, 2008).

[3]    Reviews printed on the back of the book's dust jacket, for example, describe it as a "first rate
adventure story," a "classic thriller," and "entertaining."

[4]    This historical question would only become relevant if the government is permitted by the Court to
institute forfeiture proceedings against the Coins, notwithstanding the government's failure to abide by
CAFRA's timetable which requires such proceedings be instituted within 90 days of the filing of a claim
for the property, at which point the question presented will be whether the government can prove to a jury

-2-

Plaintiffs' Document Request to Defendants' Expert Witness, <u>Exh. C</u> ("Document Request").
The May 1 subpoena requested, among other things, three categories of documents:

      <u>First,</u> to understand on what basis Tripp arrived at the conclusions set forth in his
expert report but first addressed in the Sotheby's catalogue and *Illegal Tender*, Plaintiffs
demanded production of various categories of documents that Tripp considered and/or generated
in furtherance of writing those publications. *See* Document Request Nos. 3, 4, 12(a) and 18,
<u>Exh. C</u>.

      <u>Second,</u> Plaintiffs requested various categories of documents that would allow
them to explore the extent to which the conclusions set forth in Tripp's expert report were shaped
by his own biases, including his own financial and reputational interests. *See* Document Request
Nos. 7(f), 8(f), 9(f), 10(e), 11(f), 12, 14-16 and 19-20, <u>Exh. C</u>. For example, the discovery of ten
additional 1933 Double Eagles – which has the potential of affecting the value of the Fenton coin
(marketed in the Sotheby's catalogue as "unique and the only one certified for private
ownership") – may implicate representations that were made by Tripp and/or Sotheby's to the
buyer or any prospective buyer of the 1933 Double Eagle offered at the auction. *See* Document
request No. 12 (<u>Exh. C</u>). In fact, Tripp specifically states in the Sotheby's Catalogue that the
Fenton coin is "the only example that the United States Government … ever intends to authorize
for private ownership." <u>Exh. B</u> at 12. In light of representations such as this one, Tripp and/or
Sotheby's might have an interest in the outcome of this litigation that influenced Tripp's expert
opinion.

      <u>Third,</u> Plaintiffs requested various categories of communications in furtherance of
an effort to determine the extent to which Tripp's conclusions may have been shaped by the

---

by a preponderance of the evidence its assertion that the Coins were stolen from the United States Mint
over 70 years ago.

government, Sotheby's and/or his potential biases regarding the Langbord Family's position in this litigation. *See* Document Request Nos. 7, 8(e)-(h), 9(e)-(h), 10(d)-(g), 11(e)-(h) and 14.

By letter dated July 11, 2008, Defendants objected to producing documents falling into the foregoing three categories. *See* July 11, 2008 Ltr. from Jacqueline Romero to Keith Donoghue, Exh. D.

## ARGUMENT

I.    **RULE 26 REQUIRES PRODUCTION OF ALL MATERIALS "CONSIDERED BY" TRIPP IN FORMULATING THE CONCLUSIONS SET FORTH IN HIS EXPERT REPORT – WHETHER HE FIRST BEGAN FORMULATING THOSE CONCLUSIONS IN CONNECTION WITH THIS LITIGATION OR AT SOME EARLIER POINT**

By imposing mandatory disclosure obligations on testifying experts, the 1993 amendments to Federal Rule of Civil Procedure 26(a)(2)(B) "broadened the scope of discoverable information" relating to expert testimony. *Synthes Spine Co. v. Walden,* 232 F.R.D. 460, 462 (E.D. Pa. 2005). Among other changes implemented by the 1993 amendments, "Rule 26(a)(2)(B) was added to require testifying experts to submit an expert report, which, in turn, must disclose, *inter alia*, 'the data or other information *considered* by the witness in forming the opinions.'" *Id.* As this Court has previously recognized, the advisory committee notes to the 1993 amendments to Rule 26 make clear "that the term 'considered' in Rule 26(a)(2)(B) exceeds the more narrow definition of 'relied upon,' referring instead to any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." *Id.; see* 1993 Fed. R. Civ. P. 26 Advisory Committee Notes ("litigants should *no longer* be able to argue that materials furnished to their experts to be used in forming their opinions – *whether*

- 4 -

*or not ultimately relied upon by the expert* – are privileged or otherwise protected from

disclosure when such persons are testifying or being deposed" (emphasis added)).

Plaintiffs have requested the following categories of documents "considered,"

reviewed and/or generated by Tripp in furtherance of forming the conclusions first set forth in

the Sotheby's catalogue and *Illegal Tender* and now addressed in his expert report:

- "All recordings, transcripts and notes of any interview conducted by Tripp of"
  (1) "any person claiming to have personal knowledge of any fact or putative fact
  referenced in Illegal Tender or the Expert Report"; and (2) "any person who made a
  statement referenced in Illegal Tender or the expert Report." Document Requests No.
  3-4.

- "All drafts of Illegal Tender, including all handwritten drafts." Document Request
  No. 18.

- Documents concerning the Sotheby's catalogue. *See* Document Request No. 12(a).

In refusing to produce the foregoing categories of documents, Defendants asserted

that Plaintiffs' requests went beyond the scope of discovery allowed under Federal Rule of Civil

Procedure 26 because "David Tripp did not generate, review, reflect upon, read, and/or use

materials from *Illegal Tender* in connection with the formulation of his opinions in this case."

*See* July 11, 2008 Ltr. from Jacqueline Romero to Keith Donoghue, at 2, <u>Exh. D</u>.[5]  These

---

[5]     Defendants also objected to the requests as "overbroad and unduly burdensome," asserting that they
would require locating and reviewing "old, unsorted materials stored away in various boxes, as well as
any electronically stored information." Plaintiffs offered, by email dated July 18, 2008, to relieve
Defendants' concerns regarding burdensomeness by reviewing the boxes themselves at a mutually
convenient location. *See* July 18, 2008 Email from Eric Tirschwell to Joel Sweet, <u>Exh. E</u> ("In addition, to
the extent you and/or Tripp are concerned with the burden on Tripp of going through the boxes of
materials referenced in Jacqueline's letter, we would be prepared to come and review those boxes
ourselves at a mutually agreeable location. Let us know if this allows you to withdraw any of your
objections."). We therefore assume that Defendants are no longer objecting to the subpoena on this
ground of burdensomeness. With respect to relevancy concerns, Defendants later admitted that the
documents are in fact relevant. *See* July 22, 2008 Email from Joel Sweet to Eric Tirschwell, <u>Exh. F</u>
(*Illegal Tender* "discusses some of the same issues that are the subject of the expert's report").

assertions, however, are directly contradicted by a representation made by Tripp in his expert report:

> I have re-examined documents that I utilized in preparation of the Sotheby's auction catalogue for the 2002 sale of the 1933 Double Eagle, as well as those utilized while researching my book *Illegal Tender*. *See* Exh. A (Tripp Report at 3).

By email dated July 22, 2008, Plaintiffs drew Defendants' attention to the fact that Tripp himself had stated, in his expert report, that in formulating the opinions set forth in that report, he had relied on some of the very materials requested in the subpoena. *See* July 22, 2008 Email from Eric Tirschwell to Joel Sweet, Exh. F. Defendants stood by their refusal to produce the requested material, asserting that they had already produced the documents "Mr. Tripp relied upon – including those [Sotheby's catalogue and *Illegal Tender* documents] that he 're-examined' – in connection with the preparation of his expert report," and taking the position that their obligations under Rule 26 did not require the production of any additional materials. *See* July 22, 2008 Sweet Email to Tirschwell, Exh. F ("David Tripp states in his report that he 're-examined' documents that he used to prepare the Sotheby's catalogue and his book, *Illegal Tender*. He does not state that he re-examined all of those documents to prepare his expert report. As we have stated previously, it is our understand[ing] that we already have produced all of the documents Mr. Tripp relied upon – including those that he 're-examined' – in connection with the preparation of his expert report.").

Defendants have therefore made clear that their production thus far does not comply with the requirements of Rule 26(a)(2)(B). If Tripp were allowed to discharge his Rule 26(a)(2)(B) obligations by producing only the Sotheby's catalogue and *Illegal Tender* documents that he "re-examined" in connection with drafting the expert report, he would be evading his obligation to produce the documents that he considered – but ultimately rejected – when reaching

the historical conclusions set forth in the Sotheby's catalogue and *Illegal Tender* and subsequently addressed in his current report – materials that are required to be produced under Rule 26, in large part because they may yield "effective ammunition for cross-examination." *Fidelity National Title Ins. Co. of New York v. Intercounty Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005); *see also Synthes*, 232 F.R.D. at 464 (requirement that all information considered by expert witness be disclosed "serves important policy considerations, including the facilitation of effective cross-examination"); *RLI Ins. Co. v. Indian River School Dist.,* Civ. A. No. 05-858-JJF, 2007 WL 4292109 at *4 (D. Del. Dec. 4, 2007) ("Indian River's expert is entitled to a straight-forward accounting of what Mr. Cassin did and (perhaps more importantly) did not consider when he reached his conclusions."); *United States v. City of Torrance,* 163 F.R.D. 590, 594 (C.D. Cal. 1995) ("[I]n fact, the documents considered but rejected by the expert trial witness could be even more important for cross-examination than those actually relied upon by him.")(citation omitted)).

Indeed, Rule 26(b)(1) requires the production of these materials whether or not they were "considered by" Mr. Tripp in furtherance of formulating the conclusions set forth in his expert report. *See, e.g.*, *The Herrick Co., Inc. v. Vetta Sports, Inc.*, No. 94 CIV. 0905 (RPP), 1998 WL 637468 at *2 (S.D.N.Y. Sep. 17, 1998)("The scope of further discovery beyond the mandatory disclosure of Rule 26(a)(2)(B) is governed by Rule 26(b)(1), which permits broad discovery of information that 'appears reasonably calculated to lead to the discovery of admissible evidence.'"); *Krisa v. Equitable Life Assur. Soc.*, 196 F.R.D. 254, 261 (M.D. Pa. 2000) (same). In *Herrick*, the defendant law firm designated, as an expert trial witness, a professor who specialized in the area of legal ethics and who, before his designation, had "served as an expert on matters of legal ethics" for the law firm and its clients in connection with other

matters. Rejecting the argument that the expert's work on prior matters was privileged, the court

ordered the disclosure of "documents relating to advice given to [the law firm] by [the expert] on

the general subject matter of [the expert's] report filed in th[e] action." The court reasoned:

> By designating Wolfram as an expert trial witness, Skadden
> has opened the door to such discovery, which covers documents
> other than those directly considered by Wolfram in forming his
> opinions. Prior inconsistent opinions by Wolfram on the same
> subject matter would be highly relevant material. Where an
> attorney is called as an expert to testify regarding legal ethics, a
> subject which lies at the heart of defendants' liability, and it can
> reasonably be forecast that the expert's opinion will be accorded
> great weight by the jury, who are unfamiliar with the rules of
> professional responsibility, it is especially critical that opposing
> counsel be properly equipped to impeach this attorney-expert. As
> stated in the Advisory Committee Note to Rule 26, cases such as
> this one "present intricate and difficult issues as to which expert
> testimony is likely to be determinative," and "[i]n cases of this
> character, a prohibition against discovery of information held by
> expert witness produces in acute form the very evils that discovery
> has been created to prevent. Effective cross examination of an
> expert witness requires advance preparation." *Herrick*, 1998 WL
> 637468, at *2.

Defendants' own cases make clear, moreover, what is obvious from the face of

Rule 26(a)(2)(B): that they cannot defend their incomplete production by drawing an arbitrary

temporal distinction between Tripp's efforts with respect to drafting the Sotheby's catalogue and

*Illegal Tender*, on the one hand, and his efforts in connection with drafting the expert report in

this case, on the other. Rather, both Rule 26 and common sense dictate that Defendants are

required to produce all documents considered by Tripp in connection with formulating the

conclusions set forth in his expert report – which conclusions he clearly began formulating well

before being retained in this litigation.

In *Quaile v. Carol Cable Co.*, No. Civ. A. No. 90-7415, 1992 WL 277981 at *2

(E.D. Pa. Oct. 5, 1992) – cited on the first page of the letter in which Defendants objected to the

production of these materials, *see* <u>Exh. D</u> – Judge Hutton ordered the production of documents

relating to expert testimony the witness had given in other cases.  The court reasoned that the

documents were properly discoverable because they had been requested in furtherance of an

effort "to elicit information specifically related to the testimony of [the] expert with respect to his

expected testimony." *Id.* at *2.  In reaching his conclusion, Judge Hutton relied on *In re Air

Crash Disaster at Stapleton Intern.*, 720 F. Supp. 1442, 1444-5 (D. Colo. 1988), in which the

District of Colorado – noting that "[t]he focus of information to be gathered under the Rule,

either for general understanding of an expert's position or for impeachment, *is on the events

giving rise to the litigation at hand and the opinions to be received in evidence during that

litigation*" – ordered the discovery of "a list of cases which would lead to discoverable opinions

regarding other cases with similar or parallel facts." *Id.* at *2 (emphasis added) (quoting

*Stapleton*).

To the same effect is the holding in *Vitalo v. Cabot Corp.,* 212 F.R.D. 472 (E.D.

Pa. 2002) – also cited by Defendants in their letter objecting to the production of these materials,

*see* <u>Exh. D</u>.  In *Vitalo*, Judge Bartle ordered the production of documents that the experts had

considered in formulating their testimony in prior cases regarding the same subject matter.  *Id.* at

473-4.  The court reasoned that the "broad scope of allowable discovery" included the supporting

documents to the experts' testimony, whether or not the materials were provided by the attorney

retaining the expert, and whether or not the expert ultimately relied on the information in

forming his or her opinion. *Id.* at 474.

Tripp himself has conceded that the documents he considered in drafting the

Sotheby's catalogue and *Illegal Tender* are related to his expert report. *See* April 17, 2008 David

Tripp Expert Report on Behalf of Defendants, at 3, <u>Exh. A</u> ("I have re-examined documents that

I utilized in preparation of the Sotheby's auction catalogue for the 2002 sale of the 1933 Double Eagle, as well as those utilized while researching my book *Illegal Tender*."). So has counsel for Defendants. *See* July 22, 2008 Email from Joel Sweet to Eric Tirschwell, <u>Exh. F</u> (*Illegal Tender* "discusses some of the same issues that are the subject of the expert's report"). No other conclusion is possible, as the Sotheby's catalogue, *Illegal Tender* and Tripp's expert report all address the history of 1933 Double Eagles, including the question of how the coins made their way out of the Mint some 70 years ago. As *Quaile* and *Vitalo* make clear, Rule 26 therefore requires the production of documents considered by Tripp in drafting the Sotheby's catalogue and *Illegal Tender*. *See also In re Orthopedic Bone Screw Products Liab. Litig.,* No. MDL 1014, 1996 WL 900345, at *3-4 (E.D. Pa. July 16, 1996) (granting motion to compel production of more than 300 patient files from expert's background records where expert's opinion was based on his extensive experience that formed the "underpinnings" for his opinion). Any other result would deprive Plaintiffs of the materials they need in order to be able to effectively understand, analyze, and challenge the bases for the conclusions that Tripp has reached in his expert report concerning 1933 Double Eagles – conclusions he first described in the Sotheby's catalogue and then in *Illegal Tender*.

For the reasons set forth above, we respectfully submit that Rule 26(a)(2)(B) requires the production of all documents responsive to Request Nos. 3, 4, 12(a) and 18.

- 10 -

## II.   RULE 26 REQUIRES THE PRODUCTION OF MATERIALS BEARING ON THE EXTENT TO WHICH TRIPP'S CONCLUSIONS WERE SHAPED BY HIS OWN FINANCIAL AND REPUTATIONAL INTERESTS

In order to explore the extent to which Tripp's own financial and reputational interests have colored the conclusions set forth in his report, Plaintiffs have also requested – and Defendants have refused to produce – the following categories of documents:

- Documents regarding Tripp's relationship with Sotheby's and his role in the 2002 auction of the Fenton coin. *See* Document Request Nos. 7(f), 8(f), 9(f), 10(e), 11(f), 12 and 14-16. Plaintiffs requested these documents to determine the extent to which the discovery of an additional ten 1933 Double Eagles – which has the potential of reducing the value of the Fenton coin (marketed in the Sotheby's catalogue as "unique and the only one certified for private ownership") – may implicate Tripp's longstanding economic relationship with Sotheby's and/or representations that were made by Tripp and/or Sotheby's to the buyer or any prospective buyer of the 1933 Double Eagle offered at the auction.

- Documents concerning Tripp's communications with publishers, producers, filmmakers or television network concerning *Illegal Tender* or the 1933 Double Eagles. *See* Document Request Nos. 19-20. Plaintiffs requested these documents to ascertain the extent to which Tripp has an economic interest in the outcome of this case – *i.e.*, in a judicial finding that does not draw into question the authority of *Illegal Tender* and thus detract from its future sales or discourage the possibility of any other work based on it.

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984); *see also Delso v. Trustees of Retirement Plan for Hourly Employees of Merck*, No. Civ. 04-3009 (AET), 2006 WL 3000199, at *4 (D.N.J. Oct. 20, 2006) ("If Plaintiff has a good faith basis to allege the presence of bias, then a request by Plaintiff to further investigate that bias may be granted, so long as it is calculated to lead to the discovery of admissible evidence."); 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2015, at 207 (2008) ("Discovery is commonly allowed in which the discovering party seeks information with which

- 11 -

to impeach witnesses for the opposition . . . . , proof of bias, and similar material, being themselves admissible evidence, cannot be excluded from the scope of discovery.").

In accordance with the foregoing principles, courts routinely order the discovery of materials regarding the extent to which a witness has a financial interest in the outcome of the litigation. *See, e.g., United States v. International Business Machines Corp.*, 84 F.R.D. 651, 652-3 (S.D.N.Y. 1979) (ordering discovery regarding witness' "holdings of IBM securities" and "proportion of such securities to his total assets and net worth"; "relevance" of such information is "too plain to require exposition"; noting "hornbook proposition[]" that "[i]nquiry into a witness' financial interest in the outcome of a case, and the extent of that interest is essential if bias is to be uncovered," and that "[p]ersonal motives must be factored in when assessing a witness' credibility"); *United States v. International Business Machines Corp.*, 66 F.R.D. 215, 217-18 (S.D.N.Y. 1974) (ordering discovery, in government antitrust suit, of information relating to the extent to which two of government's witnesses had a financial interest in the relevant industry). Materials bearing on whether an expert witness has a financial interest in reaching his or her expert conclusions therefore constitute properly discoverable impeachment material. *See, e.g., Rector Church Warden's v. Hussman Corp.*, Civ. A. No. 91-7310, 1993 WL 29147, at *3 (E.D. Pa. Feb. 4, 1993) (ordering discovery of "information relative to the number of times each expert witness has been called upon by Plaintiff's law firm to render an expert opinion"; reasoning that a "continuing employment relationship between the expert and Plaintiff's law firm is at least possibly suggestive of bias and thus a matter for impeachment of the expert at the time of trial"); *Vitale v. McAtee*, 170 F.R.D. 404, 405 (E.D. Pa. 1997) (ordering the production of materials relating to the expert's testimony in other cases in which he was retained by the same law firm because a "continuing employment relationship" between the expert and Defendants'

- 12 -

law firm would "clearly be probative of [the expert's] credibility"); *Smith v. Transducer Tech., Inc. En-Devco Corp. & Meggitt-USA, Inc.*, No. Civ. 1995-28, 2000 WL 1717334, at *2 (D.V.I. Nov. 16, 2000) (ordering the production of "the expert witnesses' invoices and requests for payments billed to Plaintiff's attorney for a less than two year period"; reasoning that "courts have held that the amount of income derived from services related to testifying as an expert witness is relevant to show bias or financial interest"). Evidence tending to show that a witness had a personal interest in the testimony given is also proper impeachment material. *See, e.g., United States v. Ringwalt*, 213 F. Supp. 2d 499, 511 (E.D. Pa. 2002) (evidence of affair between defendant and witness gave witness "a personal stake in the outcome of the trial" and thus was properly admitted).

The foregoing case law makes clear that Defendants' refusal to produce the above-described categories of documents finds no support in Rule 26 or the case law, which instead require the production of these materials. Accordingly, we respectfully submit that Defendants should be ordered to produce documents responsive to Document Request Numbers 7(f), 8(f), 9(f), 10(e), 11(f), 12, 14-16 and 19-20.

**III.    RULE 26 REQUIRES THE PRODUCTION OF TRIPP'S COMMUNICATIONS TO THE EXTENT THEY BEAR ON (1) THE SUBJECT MATTER OF THE EXPERT REPORT AND/OR (2) TRIPP'S POTENTIAL BIAS**

A. *Communications Between Tripp and the United States Attorneys Office for the Eastern District of Pennsylvania*

In response to Plaintiffs' request for Tripp's communications with employees and representatives of the United States Attorneys Office for the Eastern District of Pennsylvania, *see* Document Request No. 7, Defendants agreed to produce only those communications made *after* Tripp was retained as a testifying expert, *see* July 11, 2008 Ltr. from Jacqueline Romero to Keith Donoghue, at 3 (Exh. D).

- 13 -

Defendants' attempt to exclude their communications with Tripp before it was decided that he would testify is not supported by the law and must be rejected. *See Synthes Spine,* 232 F.R.D. at 465 (requiring disclosure of "all oral communications between Plaintiff, Plaintiff's attorney, and/or Plaintiff's expert that Plaintiff's expert considered in fashioning his conclusions in this litigation."); *Emcore Corp. v. Optium Corp.,* Civ. A. No. 06-1202, 2007 WL 4377610, at *1 (W.D. Pa. Dec. 11, 2007) ("If a document is reviewed by an expert acting in his consultant role that also informs his expert report, the document is discoverable. Any doubts should be resolved in favor of the party seeking the discovery." (citation omitted)); *Herrick,* 1998 WL 637468, at *2 (discussed *supra* at page 7-8); *Vaughan Furniture Co. v. Featureline Mfg., Inc.,* 156 F.R.D. 123, 128 (M.D.N.C. 1994) (waiver of privilege resulting from designation of attorney as expert witness applies to those documents expert reviewed at any time and that would be relevant to formulation of expert opinion); *Western Resources, Inc. v. Union Pacific Railroad Co.,* No. 00-2043-CM, 2002 WL 181494 at *10 (D. Kan. Jan. 31, 2002) (ordering production of nine years of materials that expert may have considered in his prior work as a consultant and/or non-testifying expert); *B.C.F. Oil Ref. v. Consolidated Edison Co.,* 171 F.R.D. 57, 62 (S.D.N.Y. 1997) (directing disclosure of documents where it was "not clear" whether reviewed by expert solely in capacity of consultant or "whether they informed his expert opinion as well").

B. *Communications Bearing on the Subject Matter of the Expert Report*

In order to determine the extent to which Tripp formed the conclusions set forth in his expert report – conclusions that, as noted above, were first formulated in connection with the Sotheby's catalogue and *Illegal Tender* – in consultation with others, Plaintiffs also requested communications between Tripp and any representative or employee of Sotheby's concerning *Illegal Tender*, "including any proposals, precursors, drafts, synopses, summaries, abstracts or

manuscripts prepared in connection with the work that became *Illegal Tender*," Document

Request No. 14, as well as communications between Tripp and any representative or employee

of the government (in particular, the United States Attorneys Offices for the Eastern District of

Pennsylvania and Southern District of New York, the United States Mint, the United States

Department of the Treasury or the United States Secret Service) concerning (1) the auction of a

1933 Double Eagle on or about July 30, 2002, including the catalogue published in connection

with that auction[6]; (2) litigation in the Southern District of New York concerning the Fenton

coin; and (3) *Illegal Tender* or any proposed or actual revision of any draft of *Illegal Tender, see*

Document Request Nos. 7(f)-(g), (i), 8(f)-(h), 9(f)-(h), 10(e)-(g) and 11(f)-(h).

As the case law recognizes, "it is essential that the parties be able to discover not

only what an opposing expert's opinions are, but also the manner in which they were arrived at,

what was considered in doing so, and whether this was done as a result of an objective

consideration of the facts or by an attorney," or "someone else," "advocating a particular

position." *Bitler Investment Venture II, LLC v. Marathon Ashland Petroleum, LLC,* No. 1: 04-

CV-477, 2007 WL 465444, at *4 (N.D. Ill. Feb. 7, 2007) (ordering production of 15 lawyer-

client emails sent to expert witness by client; "because one of the purposes of disclosure is to

assist opposing counsel in uncovering all of the information that potentially influenced an

expert's testimony, it makes little difference whether the attorney or someone else provided the

information and influenced the expert's opinion" (citation omitted)); *Johnson v. Gmeinder,* 191

F.R.D. 638, 646 (D. Kan. 2000) ("obtaining the materials or documents that a testifying expert

considers is crucial if an adverse party is to determine the extent to which the opinion of the

---

[6]    Defendants have agreed to produce the catalogue itself.

expert may have been influenced by counsel or, in this case, by the non-testifying expert").[7]

Defendants' refusal to produce these documents is therefore unsupported by the law, and should

be rejected.

C. *Communications Bearing on Tripp's Potential Bias against Plaintiffs*

Finally, Plaintiffs requested communications between Tripp and any

representative or employee of the government (specifically, the United States Attorneys Offices

for the Eastern District of Pennsylvania, Southern District of New York, the United States Mint,

the United States Department of the Treasury or the United States Secret Service) concerning the

Langbord Family. *See* Document Request Nos. 7(e), 8(e), 9(e), 10(d) and 11(e). Plaintiffs

requested these documents in an effort to determine the extent to which Tripp's conclusions may

have been biased by information about Plaintiffs' position in this case, as communicated to him

by the government. Again, case law makes clear that such information is properly discoverable.

*See, e.g., Peterson v. Calmar Steamship Corporation,* 296 F. Supp. 8, 12 (E.D. Pa. 1969) ("There

is an infinite range of circumstances to which counsel legitimately can refer for the purpose of

demonstrating a witness' bias in favor of one party.").

---

[7]    In addition to communications from counsel to the expert, courts also have ordered the production of
communications from the expert to counsel. *See, e.g., Krisa v. Equitable Life assurance Society,* 196
F.R.D. 254, 256 (M.D. Pa. 2000) (ordering production, among other things, of communications from
expert to counsel); *id.* at 258 ("expression of the evolution of the experts' opinions" is necessary for
effective cross examination); *Synthes Spine,* 232 F.R.D at 465.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask the Court to grant their motion for an Order compelling the production of documents responsive to Document Request Nos. 3, 4, 7, 8(e)-(h), 9(e)-(h), 10(d)-(g), 11(e)-(h), 12, 14-16 and 18-20 or, in the alternative, barring Defendants from presenting Tripp's testimony at trial.[8]

Dated: August 18, 2008

                         Respectfully submitted,

                         s/Barry H. Berke

                         Barry H. Berke
                         Eric A. Tirschwell
                         Keith M. Donoghue
                         KRAMER LEVIN NAFTALIS & FRANKEL LLP
                         1177 Avenue of the Americas
                         New York, New York 10036
                         (212) 715-9100 (Telephone)
                         (212) 715-8000 (Fax)

---

[8]    *Harlow v. Eli Lilly and Company,* No. 94 C 4840, 1995 WL 319728 at *1 (N.D. Ill. May 25, 1995) ("Failure to comply with Rule 26(a) precludes a party from using at trial any information or witness not disclosed."); *In re Orthopedic Bone Screw Products Liab. Litig.,* No. MDL 1014, 1996 WL 900345 at *4 (E.D. Pa. July 16, 1996) (ordering expert to make necessary disclosures or else precluding his expert testimony based on those disclosures).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------- x

ROY LANGBORD, et al.,

               Plaintiffs,

           v.,

UNITED STATES DEPARTMENT OF THE
TREASURY, et al.,

               Defendants.

:   CIVIL ACTION

:   No. 2:06-cv-05315 (LDD)

---------------------------------------------------- x

## COUNSEL'S CERTIFICATION OF PARTIES' INABILITY TO RESOLVE DISPUTE

     I, Barry H. Berke, as counsel to plaintiffs, hereby certify on this 18th day of August,

2008, that the parties, after reasonable effort, are unable to resolve the dispute from which the

present motion arises.

Dated: August 18, 2008
New York, New York

                            s/Barry H. Berke
                            BARRY H. BERKE

                            KRAMER LEVIN NAFTALIS & FRANKEL LLP
                            1177 Avenue of the Americas
                            New York, NY 10036

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————— x

ROY LANGBORD, et al.,                              :

                   Plaintiffs,              :     CIVIL ACTION

                v.                            :

                            :     No. 2:06-cv-05315 (LDD)

UNITED STATES DEPARTMENT OF THE        :
TREASURY, et al.,                                  :

                Defendants.              :

                            :

———————————————————————————— x

### CERTIFICATE OF SERVICE

        I, Barry H. Berke, hereby certify on this 18th day of August, 2008, that I caused a copy of Plaintiffs' Motion to Compel Expert Discovery or, in the Alternative, Preclude Defendants from Offering Expert Testimony at Trial, along with plaintiffs' memorandum in support, counsel certification of parties' inability to resolve dispute, annexed exhibits and proposed order, to be placed in an official depository of the United States Postal Service, enclosed in a first class postage prepaid wrapper, addressed to:

                Joel M. Sweet, Esq.
                Assistant United States Attorney
                U.S. Attorney's Office
                615 Chestnut Street, Suite 1250
                Philadelphia, PA 19106

        I hereby further certify on this 18th day of August, 2008, that I caused a copy of the foregoing motion, memorandum in support, counsel certification, annexed exhibits, and proposed order to be filed electronically in the Eastern District's CM/ECF system.

Dated: August 18, 2008

                s/Barry H. Berke
                BARRY H. BERKE