IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROY LANGBORD, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| THE TREASURY, et al., | : | NO. 06-CV-05315 |
| Defendants. | : | |

Legrome D. Davis, J.                                                October 20, 2008

<u>MEMORANDUM</u>

Presently before this Court are Plaintiffs' Motion to Compel Disclosures or, in the

Alternative, Preclude Defendants from Using Testimony at Trial (Doc. No. 49) and Defendants'

Response thereto (Doc. No. 53).  For the reasons set forth below, Plaintiff's Motion is denied.

I.      BACKGROUND

Plaintiffs move this Court to compel Defendants to produce drafts of Defendants' expert

David E. Tripp's book <u>Illegal Tender</u>,[1] including handwritten drafts, as well as all recordings,

transcripts, and notes of interviews conducted in connection with the research for <u>Illegal Tender</u>.

Plaintiffs also ask this Court to compel Defendants to produce all documents regarding Tripp's

relationship with Sotheby's, the auction house, and his role in the 2002 auction of the 1933

Double Eagle coin.  In addition, Plaintiffs request that this Court compel the disclosure of all

communications between Tripp and publishers, producers, film makers, or television networks

---

[1]    David Tripp, <u>Illegal Tender, Gold Greed, and the Mystery of the Lost 1933 Double Eagle</u> (2004).

1

concerning Illegal Tender or the 1933 Double Eagle.[2]

II.    DISCUSSION

A.    The Illegal Tender Drafts and Interview Notes

We first turn to Plaintiffs' request that this Court compel Defendants to produce all drafts

of Illegal Tender as well as notes from interviews conducted by Tripp in conjunction with the

writing of that book.  Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires expert

---

[2]  Plaintiffs' Motion also asks this Court to compel Defendants' production of a number of other documents covered by Plaintiffs' Document Request.  Defendants have satisfactorily addressed each of the relevant requests.

Plaintiffs requested documents related to communications between Tripp and Sotheby's and between Tripp and the government concerning subjects covered by the expert report.  (Pls.' Mot. 13-16.)  Plaintiff also sought to obtain materials related to the interview of any person who claimed to have knowledge of any statement referenced in the Expert Report or who made a statement referenced in the Report.  (Pls.' Mot. 5.)  The relevant items are covered by Document Request Nos. 3, 4, 7(e)-(i), 8(e)-(h), 9(e)-(f), 10(d)-(g), 11(e)-(h), 14, and 15.  (Defs.' Resp. 3 n.2.)  According to Defendants' Response, following the filing of Plaintiffs' Motion, the parties jointly determined that no responsive documents existed with regard to those requests.  (Id.)

Plaintiffs also requested documents related to communications that took place between Tripp and employees of the United States Attorney's Office for the Eastern District of Pennsylvania for the period before Tripp agreed to serve as a testifying expert.  (Pls.' Mot. 13-14.)  These documents were covered by Request No. 7.  In their Response, Defendants agreed to produce those documents consistent with this Court's ruling in Synthesis Spine Co. v. Walden, 232 F.R.D. 460 (E.D. Pa. 2005).  (Defs.' Resp. 3 n.2.)

In addition, Plaintiffs' Request No. 12 called for the production of documents related to the 2002 auction of the 1933 Double Eagle.  Defendants have agreed to comply with that request.  (Id.)

Finally, in Request Nos. 9(g) and 9(h), Plaintiffs requested documents relating to communications between Tripp and employees of the United State Department of Treasury.  On October 7, 2008, this Court issued an Order directing Defendants to show cause why the Court should not compel the discovery of those documents.  In their response to that Order, Defendants explained that all documents responsive to Request No. 9(g) had already been produced to Plaintiffs.  (Defs.' Resp. to Order to Show Cause 2.)  Defendant also explained that no responsive documents exist with respect to Request No. 9(h).  (Id.)

Plaintiffs did not submit a reply contradicting Defendants' representations as to any of these issues.  Accordingly, we find that Plaintiffs' requests to compel production of the aforementioned documents are moot.  We therefore do not address those requests in this Order.

witnesses to provide the opposing party with a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them."  According to the Rule Advisory Committee Notes, "the [expert] report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions."  Advisory Committee's Note to the 1993 Amendments to the Federal Rules of Civil Procedure.  This Court has interpreted that requirement to include any materials that the expert "generated, reviewed, reflected upon, read, and/or used in formulating his conclusions, even if these materials were ultimately rejected by plaintiffs' expert in reaching his opinions."  Synthes Spine Co. v. Walden, 232 F.R.D. 460, 464 (E.D. Pa. 2005).

In the present case, Plaintiffs argue that Tripp specifically admitted to having relied upon the materials that he utilized in writing Illegal Tender for his Expert Report.  Plaintiffs point to the following statement by Tripp included in the Expert Report:

> I have re-examined documents that I utilized in preparation of the Sotheby's auction catalogue for the 2002 sale of the 1933 Double Eagle, as well as those utilized while researching my book Illegal Tender.

(Pls.' Mot. 6.)  Plaintiffs make the following argument regarding the relevance of this statement to Defendants' Rule 26(a)(2)(B) obligations:

> If Tripp were allowed to discharge his Rule 26(a)(2)(B) obligations by producing only the . . . Illegal Tender documents he 're-examined' in connection with drafting the expert report, he would be evading his obligation to produce the documents that he considered – but ultimately rejected – when reaching the historical conclusions set forth in . . . Illegal Tender and subsequently addressed in his current report.

(Pls.' Mot. 6-7.)  Tripp's sworn statement submitted along with Defendants' Response belies Plaintiffs' claim.  In his statement, Tripp declares, "All of the historical documents that I have considered (meaning generated, reviewed, reflected upon, read, and/or used) . . . in connection with the preparation of my report have been turned over to counsel for the government.  I understand that all of these documents have been produced to the Plaintiffs." (Defs.' Resp. App. C ¶ 7.)  Therefore, under penalty of perjury, Tripp states that all the documents he considered, including those he may have ultimately rejected, consisted of historical documents that were turned over to the Plaintiffs.  At no point did Tripp state or imply that he considered any drafts or interview notes prepared in connection with Illegal Tender.  Courts have found that in such circumstances where a party "has presented the court with affidavits and deposition testimony clearly establishing that the testifying expert witnesses never read, reviewed or considered the subject documents in forming their opinions . . . the rationale for a broad reading of the disclosure requirements of Rule 26(a)(2) disappears." Amway Corp. v. P&G, 2001 U.S. Dist. LEXIS 5317 (W.D. Mich. 2001).  In one of the cases cited by Plaintiffs in support of their proposition, Vitalo v. Cabot Corp., 212 F.R.D. 478 (E.D. Pa. 2002), the court granted the motion to compel under Rule 26(a)(2) because the experts' affidavits, in which they stated that they had not "relied upon" the relevant documents, did not also state that they had not "considered" those documents.  Id. at 479.  Here, Tripp's affidavit specifically states that the documents he considered in preparing his report have already been produced to the Plaintiffs.  (Defs.' Resp. App. C ¶ 7.)  We therefore find that Tripp's sworn statement shows that he did not consider the drafts and interview notes and those materials are therefore outside the scope of Rule 26(a)(2)(B).

Plaintiffs further argue that, regardless of whether the information was considered by Tripp, the drafts and interview notes should be discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure, which governs the scope of discovery generally and allows the discovery of information that "appears reasonably calculated to lead to the discovery of admissible evidence." (Pls.' Mot. 7.) In this case, the time period allowed for factual discovery ended on February 29, 2008. Therefore any discovery permitted at this point would have to be related to the expert witness's testimony. See Spartan Corp. v. United States, 77 Fed. Cl. 10, 14-15 (Ct. Cl. 2007).

Plaintiffs cite two cases in which courts have interpreted Rule 26(b)(1) to allow for the discovery of evidence related to an expert witness beyond the scope of Rule 26(a)(2). First, Plaintiffs cite The Herrick Co. v. Vetta Sports, Inc., 1998 U.S. Dist. LEXIS 14544 (S.D.N.Y. 1998), in which the court found that Rule 26(b)(1) allowed the discovery of documents related to past cases in which the expert had served as "an expert on matters of legal ethics for [the relevant party] and its clients." Id. at *3. The court allowed the discovery of the expert's previously rendered opinions and of the advice he gave to the party. Plaintiffs also cite Krisa v. Equitable Life Assur. Soc., 196 F.R.D. 254, 261 (M.D. Pa. 2000), in which the court found that documents generated by the expert or provided by counsel to the expert in connection with his role in that case were discoverable.

The cases cited by Plaintiff are inapposite. In each of those instances, the court allowed the discovery of documents that were directly related to the professional relationship between the expert and the party in that case. They also involved documents directly related to the witness's role as a hired expert. Those types of documents would be highly relevant for impeachment

purposes.  Also, those documents purported to be communications of actual facts and opinions to third parties, communications held out by the parties as "expert opinions."

The drafts of <u>Illegal Tender</u>, on the other hand, do not relate at all to Tripp's professional relationship with Defendants.  Tripp's work on those drafts does not relate to his employment as an expert witness.  Rather, it relates solely to his job as a writer of a book that tells "a riveting tale . . . liberally spiced with greed, intrigue, deception, and controversy," a very far cry from an official expert opinion.[3]  David Tripp, <u>Illegal Tender</u>, back flap (2004).  Furthermore, to the extent that Tripp's rejected drafts include information later excluded from the book, those drafts do not represent statements that he stands behind as expert; to the contrary, they represent statements that he specifically decided not to make in his book.  The drafts are therefore not relevant to clarify or discredit Tripp's Expert Report or the related testimony.  We therefore find that <u>The Herrick Co.</u> and <u>Krisa</u> do not support Plaintiffs' position.  We further find that Tripp's rejected drafts are not "reasonably calculated to lead to the discovery of admissible evidence" regarding Tripp's expert testimony and are therefore not discoverable under Rule 26(b)(1).[4]

_____

[3]  We find noteworthy that Plaintiffs' counsel did not address over forty sources that Tripp lists in the book's Selected Bibliography and which were not included in the Expert Report's Research Sources.  <u>Illegal Tender</u> at 344-48.  The fact that Plaintiffs' counsel does not find the lack of disclosure of these forty sources to be objectionable is evidence that counsel understands that the book itself is not intricately related to the Expert Report.

[4]  We find that Plaintiffs' position, if taken to its logical conclusion, would create untenable requirements for expert discovery.  For example, if a scientist who was an expert on a specific chemical substance was called upon to testify as to the properties of that substance, an application of Plaintiffs' suggested requirement would allow for the discovery of the drafts of every article that he had ever written on that substance and any sources used in conjunction with every article.  In professions where experts make their livelihood largely from publishing articles, Plaintiffs' approach would result in the discovery of the drafts of potentially dozens of articles written over the span of an expert's entire career.  We cannot agree with a proposition that would create the potential for such excessive and burdensome discovery requirements.

We must also note that, under Rule 26(b)(2)(B), "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."  The rule further states that, on motion to compel, the party resisting discovery must show that the information is not reasonably accessible because of undue burden.  If that showing is made, the court may still allow discovery if the requesting party shows good cause.  Here, Tripp has asserted in his sworn statement that "drafts of sections (pages, paragraphs, sentences, etc.) could be located on a variety of computer discs with other materials." (Defs.' Resp. App. C ¶ 8.)  Tripp further stated that "[t]o attempt to locate drafts that still may be in my possession would be extremely inconvenient and burdensome." (Id. at ¶ 9.) As we have stated above, we do not find that Plaintiffs have shown good cause for requiring that Tripp locate and identify all of his drafts and provide them to Plaintiffs.  Plaintiffs argue that Defendants' contention that the request is burdensome has been rendered moot by Plaintiffs' offer to review the materials themselves.  (Pls.' Mot. 5 n.5.)  However, given the nature of the drafts, Tripp would be required to identify which of the pages, paragraphs, and sentences contained among his other electronic materials were written in connection with Illegal Tender. Only Tripp would be able to indicate which unlabeled materials are "drafts."  We therefore find that, even if the drafts were relevant under Rule 26(b)(1), Defendants would be protected from having to produce any electronic drafts by Rule 26(b)(2)(B).

We turn now to Plaintiffs' attempt to discover notes made by Tripp pursuant to his interview of Stephen Fenton, the only interview notes related to Illegal Tender that he currently

possesses.[5]  As we stated above, we find that Tripp did not consider these notes in preparing his

Expert Report.  However, Plaintiffs argue that the notes are otherwise discoverable as relevant

under Rule 26(b)(1).  There are only two instances in the Expert Report where Tripp discussed

information to which Fenton's personal knowledge might be relevant.  The first time is on page

46, in the list explaining the provenance of each coin, where Fenton is mentioned under Example

Number 3 as having purchased the coin for approximately $200,000 on October 3, 1995.  (See

David Tripp's Expert Rep. 46.)  Tripp states that he based that information on documents

prepared by Secret Service agents during the 1944-1945 investigation as well as information

contained in the memoranda of Secret Service interviews conducted during the investigation.

(See id. at 45 n.30.)  The other instance where Fenton is mentioned in the Report is on page 33 of

Appendix 2 in the Synopsis of the Holdings of the 1933 Double Eagles at the Philadelphia Mint.

There, Tripp states that: on February 8, 1996, a 1933 Double Eagle was recovered from Fenton

by the United States Secret Service; on January 25, 2001, there was a settlement between Felton

and the government; and on February 7, 2002, the Fenton coin was auctioned by Sotheby's and

Stacks.  (See id. at 33.)  Each of these are readily accessible facts, and Plaintiffs do not require

the Fenton interview notes to understand or verify them.

    Rule 26(b)(2)(C)(i) states that "the court must limit the frequency or extent of discovery

otherwise allowed by these rules if it determines that: (i) the discovery sought is unreasonably

cumulative or duplicative, or can be obtained from some other source that is more convenient."

---

[5] Although Plaintiffs requested all interview notes related to Illegal Tender, Defendants'
Response asserts that Tripp "has confirmed that he does not possess notes of interviews from
Illegal Tender, except perhaps for one person, Stephen Fenton."  (Defs.' Resp. 6 n. 3.)

Here, the only two aspects of the Expert Report for which the interview could potentially be relevant, those that relate to things of which Fenton had personal knowledge, are easily verifiable through the documents that Defendants have already provided to Plaintiffs, namely the Secret Service documents and other historical documents.  Any potential information contained in the interview that would relate to these easily verifiable facts would be duplicative and can be more conveniently obtained from those documents already in Plaintiffs' custody.

We therefore find that the application of Rules 26(a)(2)(B), 26(b)(1), 26(b)(2)(B) and 26(b)(2)(C)(i) dictate that Tripp is not required to produce the <u>Illegal Tender</u> drafts or the Fenton interview notes.

B.      Tripp's Communications with Sotheby's and Publishers, Producers, etc.

We turn now to Plaintiffs' request that this Court compel Defendants to produce documents regarding Tripp's relationship with Sotheby's and his role in the 2002 auction of the 1933 Double Eagle (Document Request Nos. 12, 16) as well as documents concerning Tripp's communications with publishers, producers, film makers, or television networks concerning <u>Illegal Tender</u> or the 1933 Double Eagle (Document Request Nos. 19-20).  Plaintiffs assert that these documents will allow them to determine the extent to which Tripp has an economic interest in the outcome of this case that could lead to a potential bias.  (Pls.' Mot. 11.)

Indeed, "a witness may be impeached by showing that he or she is biased, has an interest in the outcome of the litigation, is prejudiced in some relevant way, or has a motive to testify in a particular way." <u>Behler v. Hanlon</u>, 199 F.R.D. 553, 557 (D. Md. 2001) (citing <u>United States v. Abel</u>, 469 U.S. 45, 49-52 (1984)).  However, even if certain information is relevant to show

9

potential bias, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had."  Nicholas v. Wyndham Intern., Inc., 373 F.3d 537, 543 (4th Cir. 2004). Under Rule 26(b)(2)(C), a court must limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  In fact, in its comments to the 2000 amendments to Rule 26, the Rules Advisory Committee stated, "The Committee has been told repeatedly that courts have not implemented [the Rule 26(b)(2)] limitations with the vigor that was contemplated . . . [the new language] has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery."  Advisory Committee's Note to the 2000 Amendments to the Federal Rules of Civil Procedure.  The Supreme Court has also highlighted the importance of Rule 26(b)(2), emphasizing that the rule gives courts "broad discretion to tailor discovery narrowly."  Crawford-El v. Britton, 523 U.S. 574, 598 (1998).  In the foregoing analysis, we exercise that discretion by applying the balancing test of Rule 26(b)(2)(C)(iii) to the benefits and burdens presented by the proposed discovery.

We first analyze the extent to which the proposed discovery is needed in the present case or is important in resolving the issues.  We note that Plaintiffs' argument regarding the importance of this evidence to prove financial interest is based on cases that are distinguishable from the present case.  Plaintiffs cite a number of cases for the proposition that "courts routinely order the discovery of materials regarding the extent to which a witness has a financial interest in the outcome of the litigation." (Pls.' Mot. 12.)  However, all but one of the cases cited by Plaintiffs involve situations where the permitted discovery related to the witness's direct

10

financial relationship with one of the parties in the matter or with the parties' attorneys.  (See id. 12-13.)  The remaining case concerns documents showing that the witness had financial investments in a number of the opposing party's competitors.  See United States v. International Business Machines Corp., 66 F.R.D. 215, 218 n.4 (S.D.N.Y. 1974).  In each of those cases, the direct nature of those relationships may indeed have been relevant to proving a bias toward or against a particular party.

In contrast, the documents requested by Plaintiffs do not concern a party to this action nor a competitor of one of the parties.  Neither Sotheby's nor any of the entertainment industry professionals mentioned are at all related to the present case.  Plaintiffs' theory that Tripp may be biased because an adverse result in this action could harm his relationship with Sotheby's or his future profits from Illegal Tender is a much more tenuous connection than any considered in the cases cited by Plaintiffs.

The other main difference between the cases cited by Plaintiffs involving financial interest and the present case is that each of those cases involved concrete, verifiable information regarding the witnesses' actual profits, the number of times they had been employed as experts, or their present investments.  In those cases, the experts never disputed the existence of their compensation, their employment, or their investments.  In this case, Tripp asserts in his sworn statement that he does not have a financial interest in the outcome of this litigation and that, other than his compensation as an expert, which he has already disclosed to Plaintiffs, he does not have any agreement for compensation relating to this case. (Defs.' Resp. App. C ¶ 3.)  Tripp further asserts that he does not "expect or anticipate any pecuniary benefit whatsoever based upon the results in this case" and does not have "an agreement with Sotheby's or anyone else in

11

connection with any 1933 Double Eagle(s)." (Id. at ¶ 4-5.)  Plaintiffs' argument that Tripp's relationship with Sotheby's or his profits from Illegal Tender could potentially be adversely affected by a judgment for the Plaintiffs is purely speculative and lacks the concrete, verifiable nature of the financial interests involved in the cases cited by Plaintiffs.

Permitting the discovery of an expert's compensation from sources unrelated to his role in the litigation "would provide the jury with little information relevant to a fair assessment of the expert's credibility, while concomitantly introducing the real possibility of creating confusion, distraction and even prejudice." Behler v. Hanlon, 199 F.R.D. 553, 562 (D. Md. 2001).  The fact that the information requested relates to parties that are not involved in this matter and the fact that the request is based on purely speculative grounds points against finding that the discovery is highly necessary or important for uncovering bias in this matter.  We therefore find that, for purposes of the Rule 26(b)(2)(C)(iii) balancing test, the need for and importance of the proposed discovery to resolving the issues in the present case are very slight, especially when compared with the type of evidence sought in the cases allowing such discovery that were cited by Plaintiffs.

In weighing the burden factor of the Rule 26(b)(2)(C)(iii) analysis, we find that the proposed discovery would undoubtedly place a substantial burden on Tripp.  The remaining request involving Sotheby's demands "documents sufficient to show all compensation paid by Sotheby's, Inc. or Stack's LLP to Tripp since January 1, 2001." (Pls.' Mot. App. C ¶ 16.)  Given that Tripp has continued to consult uninterruptedly for Sotheby's during those seven years, (see David Tripp's Expert Rep. 1), that request would implicate a significant amount of financial information, all unrelated to Tripp's work as an expert witness and to the present matter.

Furthermore, the request to produce all of Tripp's communications with entertainment industry professionals represents a significant burden and a deep invasion into Tripp's personal business relationships unrelated to this matter.  Tripp asserts in his sworn statement that he considers those communications to be "highly confidential and proprietary."  (Defs.' Resp. App. C ¶ 6.) By requiring Tripp to disclose ongoing communications regarding business matters unrelated to this action, the request could  place a significant strain on those relationships and could greatly impede Tripp's further dealings with the relevant parties.  More importantly, Tripp has stated that "none of these communications concerned . . . [any] aspect of this litigation."  (Id.)  As mentioned above, Plaintiffs' assertion that the communications could show a financial interest in the outcome of this case is purely speculative.  We cannot allow Plaintiffs unfettered access to Tripp's confidential and sensitive business communications unrelated to this action based solely on unsupported speculation.

"Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive."  Surles v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007) (citing Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978)) (internal quotations omitted).  We find that the significant burden on Tripp's private professional dealings unrelated to this litigation or to his role as an expert witness weighs heavily against allowing the requested discovery under Rule 26(b)(2)(C)(iii).

We therefore hold that, because the discovery request places a significant burden on Tripp and because the requested evidence is not sufficiently important or necessary to outweigh that burden, Rule 26(b)(2)(C)(iii) bars Plaintiffs' request to compel the discovery.

13

III.     CONCLUSION

Accordingly, Plaintiffs' Motion to Compel Disclosures or, in the Alternative, Preclude Defendants from Using Testimony at Trial (Doc. No. 49) is DENIED.  An appropriate order follows.