IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROY LANGBORD, DAVID LANGBORD, and : 
JOAN LANGBORD, :
:
Plaintiffs, :
:
v. : Civil Action No. 06-CV-5315 (LDD)
:
UNITED STATES DEPARTMENT OF THE :
TREASURY, et al., :
:
Defendants. :

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' ILLEGAL SEIZURE AND DUE PROCESS CLAIMS

Plaintiffs' counsel, Barry Berke, testified at his deposition that plaintiffs' rights with respect to the 1933 Double Eagles allegedly were derived from having reached agreement with the government: (1) that the 1933 Double Eagles would be transferred to the government only for purposes of authentication, and (2) that if no resolution was reached with respect to plaintiffs' demand for a reward for having returned the 1933 Double Eagles, the government would commence a forfeiture claim against the gold pieces.

Plaintiffs now concede that their "constitutional claims do not rely or depend on any such promise or agreement." Plaintiffs' Memorandum of Law In Response to Defendants' Partial Motion for Summary Judgment ("Pls' Resp.") at 1. Plaintiffs reiterate this point at page 12 of their memorandum: "Plaintiffs have not alleged in their complaint, are not contending, and do not intend to rely on the existence of any agreement (implied-in-fact or otherwise) entered into by Messrs. Shaver and/or Weinman that the government would commence a forfeiture action if no resolution of settlement could be reached." This is a substantial retreat from the positions

expressed by Mr. Berke when he was asked at his deposition about the facts bases supporting plaintiffs' constitutional claims. Now that the issue of purported agreements with the government is resolved, it is not necessary for the Court to parse through the parties' pre-transfer communications to identify whether any agreements had been formed or to determine whether any such agreements were enforceable.[1] Given plaintiffs' concession, the Court can proceed to decide the government's motion on the basis of there having been no agreements between the parties before the September 22, 2004, transfer of the 1933 Double Eagles to the government.

We can now move on to the remaining purported bases for plaintiffs' constitutional claims. Plaintiffs have not alleged, nor have they produced evidence of, coercion or other improper conduct by any government official or agent leading to the transfer of the Double Eagles to the government on September 22, 2004, and therefore any facts relating to the government's actions are irrelevant for purpose of deciding the government's motion.

---

[1] Plaintiffs' recitation of the pre-transfer facts does not raise any genuine dispute of material facts. Now that plaintiffs have admitted that no agreements had been reached between the parties in advance of the transfer, Barry Berke's testimony about what he believed and what he believed the government representatives may have understood is of no relevance whatsoever. Moreover, none of the "Post-Transfer Events" described by plaintiffs, see Plaintiffs' Response at 10-12, have any bearing on the question of the parties' respective knowledge or understanding before the transfer, and therefore will not be addressed here. In the event the Court were to allow plaintiffs' constitutional claims to proceed on the basis of the parties' communications before the transfer, the government respectfully restates its request to depose Barry Berke concerning the issues about which he previously refused to testify on the grounds of the work-product doctrine.

Finally, plaintiffs' references to plaintiff Roy Langbord's understanding concerning the transfer of the 1933 Double Eagles, see Pls' Resp. at 6, 10, 15, 21 and 22), are irrelevant. Roy Langbord admitted that he had no direct contact with government officials before the transfer (other than pleasantries the morning of the transfer), and his entire understanding of the circumstances surrounding the transfer were based upon information he received from Barry Berke, see R. Langbord Tr., Exhibit A hereto, at 166, which he declined to testify about in the ground of the attorney-client privilege. Id.

2

Plaintiffs argue in their response that their constitutional claims are based in part upon a federal statute, namely the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983 ("CAFRA"). In a motion filed on December 12, 2008 (Docket No. 67), the government explained that plaintiffs' reliance on CAFRA as a source of rights with respect to the 1933 Double Eagles is misplaced as a matter of statutory interpretation applied to two undisputed facts. We will not repeat those arguments here.

Without any allegations or evidence of improper conduct by the government and without CAFRA, plaintiffs' constitutional claims only can be derived from their alleged property interest in the 1933 Double Eagles. The government respectfully requests that the Court grant the government's summary judgment motion for two reasons. First, plaintiffs have been afforded the due process to which they are entitled in connection with their assertion of a property interest in the 1933 Double Eagles. Second, plaintiffs have failed to offer any evidence of a cognizable property interest in the 1933 Double Eagles, and, without having established such a right, they cannot sustain a claim for denial of due process.

### A.   Plaintiffs Have Been Afforded the Process Due to Them Under These Circumstances.

Plaintiffs argue that their constitutional claims are based upon the government's decision "following authentication of the Coins, to summarily and unilaterally confiscate, seize and retain Plaintiffs' 1933 Double Eagles *without affording Plaintiffs any legal process whatsoever* . . . ." Pls' Resp. at 4 (emphasis added). Plaintiffs' argument is contrary to the allegations in the Complaint and to the undisputed facts. Plaintiffs were afforded and took advantage of an administrative claims process in which they had the opportunity to – indeed, they were requested

3

to – provide evidence of their purported interests in the 1933 Double Eagles. Plaintiffs admit in their Complaint that on or about May 8, 2006, they filed "written administrative claims with the DEPARTMENT OF THE TREASURY and the UNITED STATES MINT asserting that the UNITED STATES has damaged the LANGBORD FAMILY by depriving it of its property by means of the acts and omission" described in the Complaint. Complaint at ¶ 78 (capitalization in original); see also Claim for Damages dated May 8, 2006, Exhibit B hereto. On June 6, 2006, the government acknowledged having receive plaintiffs' administrative claim and requested additional information necessary to evaluate the claim. See Letter from Daniel P. Shaver to Barry H. Berke dated June 6, 2006, Exhibit C hereto. The information requested by the government included "[p]roof of ownership" of the 1933 Double Eagles, including "all evidence that the Langbord Family holds, or ever held, title to the property in question. Evidence of ownership may include copies of receipts of purchase or other evidence of title, as well as evidence of receipt by gift of inheritance." Id. Plaintiffs supplemented their administrative claim on or about June 29, 2006, by means of a letter to the United States Mint, Complaint at ¶ 79, although plaintiffs did not provide any evidence of ownership in response to the government's request during the administrative process.

On or about November 6, 2006, the government denied plaintiffs' administrative claim. See Complaint at ¶ 80. The government's letter communicating the denial detailed the bases for the decision, which included the fact that plaintiffs had failed to provide any evidence of a property interest in the 1933 Double Eagles. See Letter from Daniel P. Shaver to Barry H. Berke dated November 6, 2006, Exhibit D hereto. The letter further informed plaintiffs that they had the right to file a lawsuit in federal court if they sought review of the government's decision. Id.

4

at 3. Plaintiffs have availed themselves of that right and thus, before this Court, plaintiffs have asserted claims for Replevin and Conversion pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. (Seventh Cause of Action and Eight Cause of Action).

The government submits that this procedure was constitutionally adequate to for plaintiffs to assert and establish a property right in the 1933 Double Eagles. This process provided an opportunity for plaintiffs to submit evidence of their rights in the 1933 Double Eagles, and the process was resolved with a lengthy explanation of the bases for the government's decision. Plaintiffs may not be content with the administrative process they were afforded by the government, and of which they took advantage, and clearly they are not content with the result.[2] But the basis of their claim – that they were denied "any legal process whatsoever," Pl's Resp. at 4, and that the 1933 Double Eagles were confiscated from private citizens "without any process of law," Pl's Resp. at 13 – is demonstrably false.

Plaintiffs have not established that the administrative process provided by the government, as described above, was constitutionally inadequate. Due process is a "flexible concept" and the "content and timing of constitutionally required protections" will vary with the circumstances. Justice v. Fabey, 541 F. Supp. 1019, 1023 (E.D. Pa. 1983). For more than one hundred and twenty years, the law has recognized that when the government recovers its own property, the process due to a party claiming an interest in the property differs from the process due when the government seizes private property. See Wilson v. United States, 221 U.S. 361, 380 (1911) (in dispute concerning government's right to recover property in possession of

---

[2] The administrative claim procedure by which the government considered and ultimately rejected plaintiffs' claim to the 1933 Double Eagles is mentioned briefly, in a single sentence, on page 12 of plaintiffs' responsive memorandum.

5

another, court must consider "the nature of the [property] and the capacity in which [it] is held"); Boyd v. United States, 116 U.S. 616, 623 (1886) (acknowledging analytical distinction in Fourth Amendment cases between circumstances where "government is entitled to the possession of the property" from circumstances where government takes private property).

The distinction in the constitutional process due when the government recovers its own property – compared to the process due when the government takes private property – was addressed in Davis v. United States, 328 U.S. 582 (1946) (Douglas, J.). In that case, the Supreme Court considered the distinction in the context of government agents recovering gas ration coupons from a criminal suspect. Affirming a decision by Judge Learned Hand, the Supreme Court held that no warrant was necessary for the government to recover gas coupons during an investigation of the illegal sale of gasoline. The Supreme Court's analysis focused on the distinction "between property to which the government is entitled to possession and the property to which it is not." Id. at 590. The Supreme Court acknowledged the principle that:

> For an owner of property who seeks to take it from one who is unlawfully in possession has long been recognized to have greater leeway that he would have but for his right to possession. The claim of ownership will even justify a trespass and warrant steps otherwise unlawful.

Id. at 591. In United States v. Stern, 225 F. Supp 187 (S.D.N.Y. 1964), the court considered the government's seizure of certain Internal Revenue Service forms that the government maintained were "government property not available to the public, which [the defendant] had no right to possess." Id. at 193. That court found that, while Davis does not authorize the seizure of government property in every case:

6

> if during the course of an otherwise lawful search federal officials discover government property in the hands of one not entitled to possess it, they may reclaim that property in a reasonable manner *without violating any of that person's constitutional rights* even in the absence of a valid search warrant describing the property.

Id. at 194 (emphasis added).

The distinction in the type of constitutional due process required when the government recovers its own property, compared to the seizure of private property, also was addressed in United States v. Sellers, 30 C.M.R. 262 (C.M.A. 1961). In that case, the court considered the conviction of a military officer for wrongful appropriation of his battalion's funds. Id. at 264. During the defendant's hospitalization, the government obtained papers relating to the misappropriated funds from the defendant's car. Relying upon Davis, the court reasoned that "[w]ith regard to obtaining the return of its own property, the question which must be decided is simply whether the Government acted reasonably." Id. at 266. The court held that there had been no seizure of evidence, but rather there had been a return of government property. Id. The court stated, "[t]he Government obtained no more than that to which it was entitled, i.e., possession of its own property, and it did so by means totally lacking coercive intent." Id. at 267.[3]

---

[3] Plaintiffs missed this line of cases entirely. Instead, plaintiffs cite to two cases (on page 18 of their responsive memorandum) for the proposition that courts have held the government must prevail in a forfeiture proceeding in order to recover stolen government property. Plaintiffs' characterizations of the cases, and their descriptions of the holdings – are plainly wrong. The first case, United States v. One Parcel of Real Estate Property with Bldg., 34 F. Supp.2d 107, 114-15 (D.R.I. 1999), was a forfeiture action arising out of embezzlement of funds from the United States Postal Service, where the court recognized the government's dual role as both the sovereign with a right to commence forfeiture and the victim of fraud with an interest in recovering stolen funds. Id. at 114. In that case, the government challenged the standing of the claimant (the former wife of the embezzler). Because the claimant had established a prima facia basis for asserting a claim against the property, the court denied the government's motion.

7

As illustrated in Davis, Stern and Sellers, constitutional due process requirements where the government recovers its own property plainly are less stringent than when the government seizes private property. The government submits that the due process requirement should be even less stringent in this case – as opposed to Davis, Stern and Sellers – because, unlike in those cases, here the government merely accepted the return of its own property and did not seize the 1933 Double Eagles for the purpose of furthering a criminal prosecution against plaintiffs. In this case, it is undisputed that the transfer of the 1933 Double Eagles was completely voluntary. Plaintiffs notified the government of their possession of the 1933 Double Eagles, knowing full well that the government had long claimed – and that a federal court already had held – that the gold pieces had been stolen from the United States Mint and therefore were the property of the United States. Further, with that undisputed knowledge, plaintiffs arranged with the government a mutually convenient time and place to transfer possession of the 1933 Double Eagles to the United States without having secured any agreement limiting or conditioning the transfer, without any provision for the return of the 1933 Double Eagles, and without any expressed expectation of their return. And unlike in Davis, Stern and Sellers, here there are no allegations or evidence of any improper or illegal conduct by any government agent or official.

---

Plaintiffs' citation to this case is remarkable given that the claimant prevailed exactly because she was able to offer evidence of her ownership of the subject property, which is exactly what plaintiffs in this case are unable to do. The second case cited by plaintiffs, United States v. 144,774 Pounds of Blue King Crab, 410 F.3d 1131 (9th Cir 2005), has absolutely nothing to do with the proposition for which it is cited. That case did not involve the government recovering its property. Rather, it involved the government confiscating crab as contraband because the crab was caught in violation of a federal statute. The question decided by that court was the statutory definition of contraband. That court noted that the government has an obligation in a forfeiture action to establish that the *rem* satisfies a statutory definition of contraband. That case had nothing to do with the constitutional requirements when the government recovers its own property.

8

The government respectfully contends that, where the government has recovered its property in the absence of any evidence of coercion or improper conduct by any government agent or official, the administrative claims process – a process of which plaintiffs took full advantage but now virtually ignore even occurred afforded plaintiffs – is all that was constitutionally required.[4]

### B. Plaintiffs Have Failed to Establish a Property Interest in the 1933 Double Eagles and Therefore No Protected Interest Has Been Denied.

The remaining basis for plaintiffs' constitutional claims appear to rest on their purported property interests in the 1933 Double Eagles. To assert a valid takings claim under the Fifth Amendment, a plaintiff must have a property interest that is constitutionally protected. See Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1198 (9th Cir. 1998). To determine whether such an interest exists, federal courts should look to state law. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972) ("Property interests are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."); see also Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997) ("State law creates the property rights protected by the Fourteenth Amendment."); Brown v. Trench, 787 F.2d 167, 170 (3d Cir.1986) ("State law determines whether . . . a property interest exists.").

In this case, plaintiffs have offered no evidence to demonstrate a cognizable property interest in the 1933 Double Eagles. Plaintiffs have failed to respond to the government's motion

---

[4] The administrative claims process not only provided plaintiffs ample opportunity to assert their claim of ownership over the 1933 Double Eagles, but it also satisfied the statutory administrative claim requirement that is a jurisdictional prerequisite to their tort claims before this Court. See 28 U.S.C. § 2671, et seq.

9

for summary judgment with affidavits setting out specific facts showing a genuine issue for trial. See Rule 56(e), Fed.R.Civ.P. Moreover, plaintiffs have admitted that they have no evidence concerning whether the 1933 Double Eagles were taken from the United States Mint through an authorized channel, or how they were obtained by Israel Switt, plaintiffs' father and grandfather.[5] In the absence of any evidence to support their claim of a cognizable ownership interest in the 1933 Double Eagles, plaintiffs cannot establish a protected constitutional right, or a deprivation thereof.

Lacking any evidence to establish a property interest in the 1933 Double Eagles, plaintiffs urge the Court to presume their ownership of the 1933 Double Eagles from the fact that until 2004, the 1933 Double Eagles were (purportedly unbeknownst to plaintiffs) in a safe deposit box with other valuables once belonging to Israel Switt. The government submits that a presumption based upon mere possession – as a substitute for a legal property interest – is illogical in this circumstance and contrary to public policy.

Plaintiffs attempt to support their argument with cases such as Willcox v. Stoup, 467 F.3d 409 (4th Cir. 2006). Willcox, however, is procedurally and factually distinct from this case in several important respects. In that case, the possessor of historical papers sought a declaratory judgment that historical documents originating from two governors of South Carolina and transferred to private hands in advance of General's Sherman's march through the state were part of his bankruptcy estate. The court stated explicitly that there was no suggestion by the parties of any illegality relating to how the documents were obtained from the governors. See id. at 411.

---

[5] See Deposition Transcript of Roy Langbord, Exhibit A, at 131-32, 135, 140, 146-49, 151-57; Deposition Transcript of David Langbord, Exhibit E, at 50, 53-55; Deposition Transcript of Joan Langbord, Exhibit F, at 70-72, 76-78.

10

Here, on the other hand, another federal court already has ruled that the 1933 Double Eagles were taken from the United States Mint without authority. See United States v. Barnard, 72 F. Supp. 531, 532 (W.D. Tenn. 1947) (holding that 1933 Double Eagle "did not leave the Mint as regularly and lawfully issued money, or currency," and that it was "taken out of the Mint in an unlawful manner," and that it was "stolen or, though fraudulent breach of trust, taken from the Philadelphia Mint").

Significantly, in Willcox there was a genuine question whether the state *ever* owned the historical documents, and if so, the nature of the original ownership and legal status of the historical documents. Id. at 415, n.2 ("The entire question is whether gubernatorial papers such as these constitute public property. That the papers were produced in an official context is simply insufficient to demonstrate title"). In the present case, of course, there is no such question – the 1933 Double Eagles incontestably were minted as the result of the exercise of an exclusive Federal power to coin money, U.S. Const. Art. I, sec. 8, cl. 5, and, unless and until they are properly issued (i.e., they "leave the [United States] Mint as regularly and lawfully issued money"), they remained chattel belonging to the United States. Barnard, 72 F. Supp. at 532-33 ("The coin here involved was not, at any time, money or currency, but was a chattel, or an article of virtue. . . . It follows that title to the coin in litigation is in the plaintiff, United States of America"). In Willcox, there also was a complete absence of any documentary evidence for the court to consider. Only because of the absence of such documentary or other evidence did the court's attention fall to tenets of South Carolina common law that "usually remain in the background of ownership determinations." Wilcox, 467 F.3d at 412.

11

Thus, unlike in <u>Willcox</u>, in this case, the starting point for ownership of the 1933 Double Eagles indisputably is with the government. If the Court were to apply any presumption, it should be that the 1933 Double Eagles are the property of the government unless proven otherwise. And in this case, there is a wealth of admissible historical documentary evidence proving that the 1933 Double Eagles were not lawfully taken from the United States Mint. Given the substantial differences in the issues and evidence, <u>Willcox</u> therefore offers this Court no guidance to decide whether plaintiffs have established a protectable property interest sufficient to support their constitutional claims.

Plaintiffs' reliance on <u>Justice v. Faber</u>, 541 F. Supp. 1019 (E.D. Pa. 1982) is similarly misplaced because that case also is distinguishable in important respects. That case did not involve the government recovery of its own property. Rather, <u>Justice</u> concerned a dispute involving a purported innocent purchaser of a truck that had been stolen from an owner in another state. Several years after the purchase, police seized the truck and returned it to the out-of-state owner, pursuant to a state law. The plaintiff claimed he was entitled to a hearing concerning the ownership of the truck. The court ruled that the plaintiff's prima facie possessory interest at the time of the seizure – he had indisputably purchased the car and was facially entitled to possession – was sufficient to afford him a right to some type of hearing. <u>Id.</u> at 1023.

Our case differs significantly in that plaintiffs had no facial possessory interest in the 1933 Double Eagles. Plaintiffs merely "found" the gold pieces and have no knowledge of whether they were taken from the United States Mint legally or how they were obtained by Israel Switt. Moreover, unlike the plaintiff in that case, who involuntarily lost possession of the truck when it was seized by the police, here plaintiffs voluntarily relinquished possession of the 1933

12

Double Eagles on September 22, 2004, when they transferred them to the possession of the government. It is undisputed that plaintiffs were not coerced to relinquish the 1933 Double Eagles, and they had reached no agreement with the government to regain possession.[6]

Plaintiffs also ignore the critical legal distinction between mere possession and a possessory interest. The distinction is crucial: a person who *leases* a car has a cognizable possessory interest in the car, while the person who *steals* a car has actual possession, but no legitimate possessory interest. Similarly, and akin to this case, a person who leases a mail truck from the government and keeps it in his garage has a cognizable possessory interest in the mail truck. But a person who wakes up in the morning and unexpectedly finds a mail truck in his garage has no cognizable property interest in the mail truck. That person has mere possession.

In this case, plaintiffs had physical possession of the 1933 Double Eagles for an unknown number of years during which time the gold pieces were concealed in a safe deposit box. There

---

[6] Other cases cited by plaintiffs also are distinguishable, and in some cases support the government's argument that a presumption based upon mere possession is insufficient to establish a protected constitutional right. For example, in Leitch v. Sanford Motor Truck Co., 123 A. 658 (Pa. 1924), the court considered the various property interests of a property owner, a bailee, and a creditor of the bailee, after the bailee absconded. The Leitch court does not address any issues relevant to this case. Contrary to plaintiffs' presentation of the decision on page 16 of their memorandum, however, the Leitch court warns that mere possession is "not conclusive, as it may result from purchase, bailment or trespass, and the claimant, in replevin, must show not only a general or special property in the goods, but also his exclusive right to possession." Id. at 163-64. The court thus warned that – like the situation with the plaintiffs and the 1933 Double Eagles – possession potentially based upon trespass or another unjustified taking is not an appropriate substitute for requiring evidence of ownership. Similarly, plaintiffs quote from Fuentes v. Shevin, 407 U.S. 67, 86 (1972), concerning the applicability of the Fourteenth Amendment to property with disputed ownership. Plaintiffs cite to a sentence in that decision for a general and uncontroversial proposition of law, but omit the very next sentence which suggests that the Fourteenth Amendment applies only where there is a "significant property interest." Id. at 86. A threshold to plaintiffs' invocation of constitutional provisions protecting property in this case, therefore, is a demonstration by plaintiffs of a "significant property interest" in the 1933 Double Eagles, something plaintiffs have not – and admittedly cannot – establish.

13

is no evidence, however, of plaintiffs ever having a cognizable possessory interest in the 1933 Double Eagles.

No presumption of ownership arises from mere possession of disputed property. To prevail against a summary judgment motion, a claimant must establish a cognizable property interest in the property. Any other result would improperly benefit only those who obtain and conceal property to which they have no right – including stolen government property. In this case, despite a lengthy administrative process and litigation with extensive discovery, plaintiffs have not and cannot produce any evidence of any property interest in the 1933 Double Eagles.

### C. Plaintiffs' Reservation of Rights Letter Has No Bearing on This Case.

Plaintiffs claim to have reserved purported rights in the 1933 Double Eagles in a letter to the government dated September 21, 2004. Thus, plaintiffs argue that their "rights were no different (no less, and no more) on September 22, after the Coins were transferred, than they were on September 21, when the Coins were still in the Langbord family's possession." Pl's Resp. at 2.

Plaintiffs' unilateral effort to reserve rights was ineffective because they cannot reserve what they do not have. The parties did not discuss the nature of any purported rights claimed now by the plaintiffs to have been reserved, much less reach a meeting of the minds with respect to plaintiffs' purported rights, and it is telling that the letter itself does not specify any particular rights or interests in the 1933 Double Eagles that plaintiffs sought to reserve. At his deposition, Barry Berke refused to testify about the nature of the purportedly reserved rights and remedies on the ground of the work product doctrine. See Berke Tr. at 153-59, 301-303 (refusing to testify about meaning of terms used in reservation of rights letter); id. at 168-69 (refusing to identify the

14

"remedies" referred to in reservation of rights letter). The claim of rights based upon secret reasoning cannot create a right that never existed.

For the reasons set forth in its initial motion and above, the government respectfully requests that the Court grant the motion for judgment on plaintiffs' constitution-based claims.

Respectfully,

LAURIE MAGID
Acting United States Attorney

_____
VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division

_____
JOEL M. SWEET
Assistant United States Attorney

_____
JACQUELINE ROMERO
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476
Tel. (215) 861-8581
Fac. (215) 861-8618

*For All Defendants*

Of Counsel:

Daniel P. Shaver, Chief Counsel
Greg M. Weinman, Senior Counsel
United States Mint
801 9th Street NW
Washington, DC 20220

December 23, 2008

15