UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

ROY LANGBORD, et al.,

      Plaintiffs,

   v.

UNITED STATES DEPARTMENT OF THE
TREASURY, et al.,

      Defendants.

CIVIL ACTION

No. 2:06-cv-05315 (LDD)

---

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON
PLAINTIFFS' DUE PROCESS AND ILLEGAL SEIZURE CLAIMS**

Plaintiffs set forth the following material facts as to which no genuine issue exists:

  1. Mr. Stephen Fenton was involved in a 1933 Double Eagle case, which commenced in the mid-1990s and ended with a settlement in 2001.  (Deposition Transcript of Barry Berke ("Berke Tr.") at 17.[1])

  2. Federal agents had attempted to forfeit Mr. Fenton's single 1933 Double Eagle through a federal court judicial forfeiture proceeding commenced by the government in the Southern District of New York. (*Id.* at 16; Tirschwell Decl., Ex. P.)

  3. The government and Mr. Fenton eventually settled the matter by agreeing to auction the coin and split the proceeds – $7.59 million – between the coin's owner, Mr. Fenton, and the United States.  (*Id.* at 16; Tirschwell Decl., Ex. A; Tirschwell Decl., Ex. B.)

---

[1] Deposition transcripts of the relevant witnesses have previously been filed with the Court in connection with other motions.  *See* Docket Nos. 14 (Joan Langbord), 60 (Barry Berke), 66 (Hugh Dunleavy, Roy Langbord, Daniel P. Shaver, and Greg M. Weinman), and 76 (Joan Langbord).  So as not to unnecessarily clog the docket, in lieu of re-filing those transcripts, we will be delivering to the Court's chambers a courtesy copy of a complete bound set of all the cited deposition transcripts along with the courtesy copy of these motion papers.  Citations to deposition transcripts will be to the name of the deponent and the page number.

4. In 2003, Joan Langbord discovered ten 1933 Double Eagle gold coins (the "Coins") in a safe deposit box that had been in her family for many years, among property that had belonged to her parents. Deposition Transcript of Joan Langbord ("J. Langbord Tr.") at 112-122, 128-130, 132-33, 153-54, 215-16, 223-26, 229-233, 344-46; Deposition Transcript of Roy Langbord ("R. Langbord Tr.") at 104-05.

5. Elizabeth Switt and Israel Switt are the parents of plaintiff Joan Langbord and grandparents of plaintiffs Roy and David Langbord. (Tirschwell Decl., Ex. C; Tirschwell Decl., Ex. C at 53, 64.)

6. The safety deposit box in which the Coins were found originally belonged to Elizabeth Switt. (J. Langbord Tr. at 113-114, 118-119, 223-26; R. Langbord Tr. at 117-18.)

7. Elizabeth Switt died in 1985 and Israel Switt died in 1990. (Tirschwell Decl., Ex. C at 46; Tirschwell Decl., Ex. D at 1.)

8. The wills of Elizabeth Switt and Israel Switt name as beneficiaries only each other and plaintiffs herein – *i.e.*, Joan, Roy and David Langbord. (Tirschwell Decl., Ex. C; Tirschwell Decl., Ex. D.)

9. Documents produced by Wachovia Bank demonstrate that this safety deposit box (#442) was registered in Joan Langbord's name since at least 1996. (Tirschwell Decl., Ex. Q.)

10. These same documents explain that Wachovia's records do not go back before 1996. (*Id.*)

11. Following their discovery of the Coins, the Langbord family consulted with counsel – ultimately, Mr. Berke. (R. Langbord Tr. at 162-65; 203-05; Compl. ¶ 5.)

12. Through Mr. Berke, the Langbord family voluntarily alerted the United States Mint to the family's discovery of the Coins. (R. Langbord Tr. at 162-65; 203-05; Compl. ¶ 5.)

13. The first meeting between Mr. Berke and the U.S. Mint's Chief Counsel, Daniel Shaver, and Senior Legal Counsel, Greg Weinman, took place on August 25, 2004. (Deposition Transcript of Daniel P. Shaver ("Shaver Tr.") at 95-96; Berke Tr. at 80-81, 96-97; Deposition Transcript of Greg M. Weinman ("Weinman Tr.") at 32-35.)

14. Mr. Berke disclosed at this meeting that he had a new client with ten 1933 Double Eagles, raised the issue of whether there might be a settlement or resolution with respect to these Coins, referenced the Fenton case and all of the time and energy that had been spent before that case ultimately settled, suggested that a resolution might be easier in the current situation because there were multiple Coins, and asked whether the Mint would be interested in discussing a possible settlement or resolution. (Shaver Tr. at 95-96; Berke Tr. at 80-81, 96-97; Weinman Tr. at 32-35.)

15. Mr. Shaver answered Mr. Berke's question in the affirmative, stating that the Mint "would be willing to discuss the matter." (Shaver Tr. at 96-97; Berke Tr. at 82; Weinman Tr. at 33-35 (we communicated that we were "amenable to a discussion" of the possibility of "some type of . . . agreement").)

16. Toward the end of this first meeting, Mr. Shaver broached the subject of the government taking possession of the Coins in order to authenticate them and Mr. Berke responded that this would not be a problem, but made clear that plaintiffs would want to preserve all of their rights. (Shaver Tr. at 89-90, 97; Weinman Tr. at 42-43; Berke Tr. at 82-83.)

17. The second meeting between Mr. Berke and the government took place at the Secret Service's offices in Brooklyn, N.Y., on September 15, 2004. (Deposition Transcript of Hugh Dunleavy ("Dunleavy Tr.") at 19, 38-39.)

18. Messrs. Shaver and Weinman were present, along with two Secret Service agents – the case agent and squad supervisor Hugh Dunleavy. (Dunleavy Tr. at 19, 38-39.)

19. At this meeting Mr. Berke revealed the plaintiffs' identities and the location of the Coins, and the parties also discussed the logistics of transferring the Coins from the plaintiffs to the government. (Shaver Tr. at 57-59; Weinman Tr. at 49-50; Berke Tr. at 111-13.)

20. At this meeting, Mr. Berke stated that in connection with the transfer of the Coins for authentication, plaintiffs would be reserving all of their rights. (Shaver Tr. at 62-63; Berke Tr. at 112.)

21. At the second meeting, Secret Service Special Agent Dunleavy raised the issue of venue. (Dunleavy Tr. at 47-49; Weinman Tr. at 57; Berke Tr. at 112.)

22. Mr. Berke stated that his clients would be prepared to waive venue. (Shaver Tr. at 65-66.)

23. Plaintiffs' letter to the government dated September 21, 2004, was sent the day before the transfer of the Coins, and stated as follows:

> I write on behalf of the Langbord family regarding their ownership of ten 1933 Double Eagle Coins (the "Coins"). At the request of the United States Mint, Roy Langbord will make the Coins available to the government on Wednesday, September 22, 2004 based on our understanding that the government will test the Coins for authenticity and secure the Coins while we discuss a possible resolution of the issues relating to the Coins.
>
> This agreement to make available the Coins as described above is without prejudice to all of my clients' rights and remedies existing at law, in equity, or otherwise. We specifically reserve all rights and remedies with respect to the Coins.

(Tirschwell Decl., Ex. E.)

24. The government received and read the letter on September 21, 2004 (the day before the transfer) and then orally confirmed having done so when Messrs. Shaver and Weinman met

- 4 -

in person with Mr. Berke prior to the Coins' transfer on the morning of September 22, 2004. (Weinman Tr. at 70-77; Berke Tr. at 176-77.)

25. Prior to the transfer and for months thereafter, nobody from the government ever took issue with or otherwise responded in any way to Mr. Berke's reservation of rights letter, whether orally or in writing, other than acknowledging having received it. (Shaver Tr. at 44-45, 83-86; Weinman Tr. at 76-77.)

26. On September 22, 2004, after confirmation was given that the government had received the full reservation of rights letter, the Coins were transferred from the plaintiffs to the government. (Weinman Tr. at 73-79.)

27. During the period between September 2004 and May 2005, Messrs. Shaver and Weinman updated Mr. Berke about the different difficulties that were delaying the authentication process. (Shaver Tr. at 100-02; Berke Tr. at 188-91.)

28. In May 2005, the Mint ultimately determined that the Coins were in fact authentic 1933 Double Eagles. (Weinman Tr. at 80-82, 87.)

29. At a meeting in Washington, D.C. in June 2005, Messrs. Shaver and Weinman informed Mr. Berke of this determination. (Weinman Tr. at 87.)

30. At the same meeting in Washington in June 2005, Messrs. Shaver and Weinman also told Mr. Berke that the government would not offer any kind of monetary settlement to the Langbord family. (Weinman Tr. at 88-89; Berke Tr. at 208-09.)

31. On August 10, 2005, Mr. Shaver provided written notice to the plaintiffs that the Mint had determined that forfeiture proceedings were "entirely unnecessary" and advising that the Mint would retain the Coins because, the Mint asserted, the Coins "were never lawfully issued

but, instead, were taken out of the United States Mint at Philadelphia in an unlawful manner." (Tirschwell Decl., Ex. H.)

32. In response to this written notice, the Langbord family on September 9, 2005 filed a verified claim pursuant to the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983(a)(2), re-stating their ownership interest in the Coins.  (Tirschwell Decl., Ex. I.)

33. On December 5, 2005, exactly eighty-seven days later, Mr. Shaver sent a second letter to the plaintiffs advising that the government is returning plaintiffs' claim "without action." (Compl. ¶ 74; Tirschwell Decl., Ex. J.)

34. The government never commenced a judicial forfeiture action against the Coins.

35. In May 2006, as a prerequisite to bringing tort claims for replevin and conversion under the Federal Torts Claim Act, plaintiffs submitted to the government a Claim for Damage pursuant to 28 C.F.R. § 14.2.  (Tirschwell Decl., Ex. K.)

36. Following additional correspondence in June 2006, (Tirschwell Decl., Ex. L; Tirschwell Decl., Ex. M)), plaintiffs' Claim for Damage was summarily rejected.  (Tirschwell Decl., Ex. N.)

37. In December 2006, the Langbord family filed this lawsuit.

Dated:  January 27, 2009

               Barry H. Berke, Esq.
               Eric A. Tirschwell, Esq.
               KRAMER LEVIN NAFTALIS & FRANKEL LLP
               1177 Avenue of the Americas
               New York, New York  10036
               (212) 715-9100 (Telephone)
               (212) 715-8000 (Fax)