IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROY LANGBORD, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| THE TREASURY, et al., | : | NO. 06-CV-05315 |
| Defendants. | : | |

Legrome D. Davis, J.                                                                October 28, 2010

## MEMORANDUM

In July 2009, this Court ordered the United States to initiate forfeiture proceedings against the ten 1933 Double Eagle coins it illegally seized from Plaintiffs Roy, Joan, and David Langbord. The Government seeks to justify the forfeiture on the grounds that the coins were obtained through criminal activity, stolen from the United States Mint more than 70 years ago. It argues that the coins, though they may have left the Government's possession, were never legally owned by anyone else. The forfeiture proceeding has thus unfolded in an atypical fashion, forcing the parties to maneuver in uncommon legal territory and resulting in the motions now before the Court.

I.     BACKGROUND

Several of this Court's previous memoranda and orders set forth the facts of this case (see, e.g., Doc. No. 108), and the Court need not repeat them in detail here. In sum, Plaintiffs transferred the Double Eagles to the United States Mint on September 22, 2004 "based on [their] understanding that the government w[ould] test the Coins for authenticity and secure the Coins while [they] discuss[ed] a possible resolution of the issues relating to the Coins." (Pls.' Mot.

Summ. J., Exhibit E, Doc. No. 77-5, at 37). In May 2005, the Mint conclusively authenticated the Double Eagles, but, despite Plaintiffs' repeated requests, refused to return the coins or initiate forfeiture proceedings.

Plaintiffs sued the United States, the Department of the Treasury, the United States Mint, and several Mint officials (collectively, "the United States" or "the Government") in December 2006, claiming violations of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Administrative Procedures Act (APA), and Fourth and Fifth Amendments. Plaintiffs also advanced common-law replevin and conversion claims. The United States denied all charges and asserted affirmative defenses, but did not submit any counterclaims. (See Doc. No. 24.) In July 2009, upon consideration of summary judgment motions from both sides, the Court dismissed Plaintiffs' CAFRA claim, held that the resolution of the common-law claims turned on genuine factual disputes, and ordered that the Government initiate forfeiture proceedings to remedy APA, Fourth Amendment, and Fifth Amendment violations. (Doc. No. 108, hereinafter often "2009 Order.")

Two months after the Court's summary judgment ruling, the United States sought leave to file a multi-count complaint. (Doc. No. 111.) The proposed complaint includes the court-ordered forfeiture count against the ten 1933 Double Eagles (Count I) and three additional claims: replevin and declaratory judgment claims against the Langbords (Counts II and III, respectively), and a declaratory judgment claim against three John Doe third-party defendants who allegedly possess other 1933 Double Eagles stolen from the Mint (Count IV). Plaintiffs protest that the addition of the proposed claims because they will allow the Government to prevail on a lesser showing—requiring only proof of proper title, rather than that the coins are the

proceeds of a crime. They accordingly oppose the motion on several grounds, including that the Government cannot now bring claims that it failed to raise when it answered Plaintiffs' 2006 Complaint, that replevin actions may only lie against parties who possess the relevant property, and that John Does are improper third-party defendants as they bear no relation to the Langbords' possession of the Double Eagles.

Although the Court has not ruled upon the United States's motion for leave to file its multi-count complaint—and, as such, the Court has yet to docket the unchallenged forfeiture complaint—the parties have behaved as if forfeiture proceedings began in September 2009. Plaintiffs filed a claim of interest in the coins (Doc. No. 117) and answered the Government's proposed complaint (Doc. No. 123). Adding a twist, the United States also filed a claim of interest, alleging rightful ownership as the victim of the coins' theft. (Doc. No. 118.) Plaintiffs move to dismiss Government's claim of interest for lack of jurisdiction, arguing that neither the forfeiture statute nor the Constitution's case-and-controversy requirement permit the United States to file a claim against itself. (Doc. No. 121.) The Government contests the motion to dismiss on the grounds that only the government may seek to strike a claim of interest in a forfeiture proceeding, and that a case or controversy indeed exists. (Doc. No. 124.)

This opinion first addresses the Government's motion for leave, then turns toward Plaintiffs' requested dismissal.

II. GOVERNMENT'S MOTION FOR LEAVE TO FILE A MULTI-COUNT COMPLAINT

A. Counts II and III

*1. Procedural Rules Governing Amendment*

As an initial matter, Plaintiffs urge the Court to deny the Government leave to file a

3

multi-count complaint because the complaint lists the Plaintiff Langbords as third-party defendants. Plaintiffs call this a "thinly-veiled attempt" to excuse the Government's failure to file compulsory counterclaims when it answered the 2006 complaint. (Pls.' Resp. in Opp'n to Defs.' Mot. for Leave, Doc. No. 113, at 13.) While it is true that the Langbords' names appear on the complaint's first page as third-party defendants, and not counterclaim defendants (see Doc. No. 111-1, Ex. A, at 1), the substance of the Government's motion for leave persuades the Court that it does, in fact, seek to bring counterclaims against the Langbords. The United States acknowledges that both the replevin and declaratory judgment claims it now wishes to pursue could "have [been] asserted as counterclaims in this action originally." (Defs.' Mot. for Leave, Doc. No. 111, at 10.) It avers that the counterclaims should be admitted anyway in an exercise of the Court's discretion. A close inspection of the Government's motion for leave further clarifies the Government's intention: though it includes third-party-practice language when it discusses the John Does, none of that language appears in its claims against the Langbords. (Id., *passim*.) Accordingly, the Court will treat the proposed addition of Counts II and III as a request to add counterclaims and inquire whether the rules governing counterclaim amendments allow their inclusion.

The procedural rules that allow for the amendment of counterclaims have changed since the parties briefed the issue. When the United States sought leave to file its multi-count complaint in September 2009, Rule 13(f) governed a party's ability to add a counterclaim. The rule permitted amendment when the initial omission resulted from "oversight, inadvertence, or excusable neglect, or if justice so requires." On December 1, 2009, a congressional amendment abrogated Rule 13(f), and now Rule 15(a)(2)'s more general standard—that a court should

"freely give leave when justice so requires"—applies to counterclaim revisions like all other pre-trial amendments. 6 Wright & Miller, Federal Practice & Procedure § 1430, 252 (2010).

Amendments to the Federal Rules of Civil Procedure apply retroactively unless "(A) the Supreme Court specifies otherwise; or (B) the court determines that applying them in a particular action would be infeasible or work an injustice." Fed. R. Civ. P. 86(a)(2). The Supreme Court has not spoken about the retroactivity of Rule 13(f)'s abrogation. Thus, the Court examines feasibility and justice factors to determine which rule governs.

Both Rule 13(f) and 15(a) allow amendment when justice requires, and it is this element that undergirds the United States's leave request. (See Defs.' Reply to Pls.' Response in Opposition, Doc. No. 116, at 5–6.) Given the amended rule's singular focus on whether justice requires granting leave, the Government's reliance on the justice exception counsels in favor of applying the amended rule here. Moreover, the abandonment of Rule 13(f) was intended to clarify, rather than change, the standard by which a court determines whether to grant leave. Describing the abandoned rule as "largely redundant and potentially misleading," the Advisory Committee explained:

> When the court's leave is required, the reasons described in Rule 13(f) for permitting amendment of a pleading to add an omitted counterclaim sound different from the general amendment standard in Rule 15(a)(2), but seem to be administered—as they should be—according to the same standard directing that leave should be freely given when justice so requires.

Advisory Committee Note to 2010 Federal Civil Rules Handbook. Before Rule 13(f)'s abrogation, courts in this district consistently interpreted the Rules 13(f) and 15(a) together, finding their standards essentially indistinguishable. See, e.g., Fort Wash. Res., Inc. v. Tannen, 153 F.R.D. 565, 566 (E.D. Pa. 1994); Fidelity Fed. Sav. & Loan Ass'n v. Felicetti, 149 F.R.D.

5

83, 85 (E.D. Pa. 1993). Accordingly, because applying the new rule requires little, if any, adjustment, neither justice nor feasibility concerns exist, and the Court will apply Rule 15(a) retroactively to assess the Government's motion for leave.

The Supreme Court has interpreted Rule 15(a) to require that, where the "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Foman prescribes that:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Id. The Third Circuit has "interpreted these factors to mean that prejudice to the non-moving party is the touchstone for the denial of an amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1413–14 (3d Cir. 1993) (internal quotation marks omitted). Where no "substantial or undue" prejudice will result from the proposed amendment, this Court can only deny leave if one of the other reasons for denying leave justifies precluding amendment. Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 526 (3d Cir. 2004). Accordingly, the Court first examines whether allowing either Count II or Count III of the Government's proposed complaint will unduly prejudice the Langbords. If no substantial prejudice exists, it will consider the other reasons for denying leave to amend.[1]

*2. Prejudice*

---

[1] To ensure that Rule 13(f)'s abrogation and the Court's decision to give the amendment retroactive effect do not prejudice either party, the Court reads their briefs liberally and addresses claims plausibly raised under Rule 15(a).

To prove prejudice, Plaintiffs must "demonstrate that [their] ability to present [their] case would be seriously impaired were amendment allowed." Dole v. Arco, 921 F.2d 484, 489 (3d Cir. 1990). Courts typically appraise "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton v. Nat'l Coll. Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). Notably, a decreased chance of ultimate success on the merits does not qualify as sufficiently prejudicial—an amendment, after all, is designed to strengthen the movant's legal position, necessarily harming the non-movant.

In an attempt to show prejudice, Plaintiffs compare the burdens of a single-count forfeiture action meant to determine only "whether the property to be forfeited constitutes the proceeds of a crime or was used to facilitate the commission of a crime," with a more-complicated case involving "matters of title, ownership, and superior right to possession." (Doc. No. 113, at 16.) "Defendants' third-party claims," Plaintiffs protest, "will introduce into this action a variety of issues that do not bear on the central question of whether the Langbords' ten 1933 Double Eagles were stolen from the United States Mint." (Id. at 18). But Plaintiffs seem to forget that they, not the Government, brought title issues into the mix when they included replevin and conversion claims in their 2006 complaint. (See Pls.' Compl., Doc No. 1, at ¶¶ 136–57.) And these claims have not yet been resolved—the parties have completed discovery with Plaintiffs' title-related claims pending, and the Court determined that both claims turned on genuine issues of material fact, precluding summary judgment. (See 2009 Order, Doc. No. 108, at 28.) Permitting the United States to now bring its desired replevin and declaratory judgment counts neither introduces new factual issues nor revives irrelevant disputes. In short, Plaintiffs will occupy no worse a position than had the Government brought this counterclaim when

7

answering the 2006 complaint. Accordingly, neither Count II nor Count III will substantially prejudice Plaintiffs.

*3. Futility*

Alleged prejudice aside, Plaintiffs challenge the Government's request to add its replevin claim as futile.² To assess futility under Rule 15(a), the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)," Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000), examining whether, when viewed in the Government's favor, the counterclaim alleges a legal violation for which relief may be granted, Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

"Replevin is an action undertaken to regain possession of goods and chattels and to recover damages for their caption and detention, by the illegal act of the defendant." Int'l Elec. Co. v. N.S.T. Metal Prods. Co., 88 A.2d 40, 42 (Pa. 1952) (emphasis added). To state a replevin claim, the Government must allege that the Langbords are "in actual or constructive possession of the property which is the subject of the action." Commonwealth v. Dean, 369 A.2d 423, 425 (Pa. Super. 1976). This requirement exists "'so that the [Langbords], if judgment be rendered against [them], may make delivery thereof to the [Government].'" Haws v. Conforti, 685 A.2d 201, 202 (Pa. Super. 1996) (quoting Winner v. Messinger, 69 A.2d 172, 174 (Pa. Super. 1949)).

No one disputes that the United States has maintained actual possession of the Double Eagles since September 2004. The Government urges the Court to proceed as if its 2009 Order requiring the United States to initiate forfeiture proceedings put the parties in "the legal position they would have been in had the government returned the gold pieces to the Langbords in 2005."

---

²Plaintiffs actually contend that the Government's replevin claim lacks merit. (See Doc. No. 113, at 19.) Under Rule 15(a), the argument is better understood as an allegation that the amendment is futile.

8

(Doc. No. 116, at 6–7.) Since the proposition that the defendant in a replevin action must either actually or constructively possess the coins "is so plain as to require little discussion," Winner, 69 A.2d at 174, and all agree that the Government actually possesses the coins, the Government's argument merits attention only if it alleges that the 2009 Order awarded the Langbords constructive possession. The Court, therefore, construes the Government's brief to so allege and examines the 2009 order's effect, if any, on the Langbords' constructive possession of the coins.

To constructively possess the Double Eagles, the Langbords must have both "the power and the intention at a given time to exercise dominion or control" over them. Smalls v. Penn. Bd. of Prob. and Parole, 823 A.2d 274, 276 (Pa. Commw. Ct. 2003). Though this lawsuit demonstrates the Langbords' intent to control the coins, whether they possess the necessary power remains unanswered. The Court's 2009 order explicitly refrained from opining on the parties' respective substantive rights to the coins. In that order, the Court adjudged only that the Langbords prevailed as a matter of law on their process-related claims, imposing a process-related remedy. Thus, the order itself belies any contention that the Court gave constructive possession of the coins to the Langbords in 2009.

The Government alone has possessed the coins since this case began. Because a property holder cannot bring a replevin claim seeking the return of property it already has, the Court finds the Government's proposed replevin claim futile and denies the United States's motion for leave to file Count II of its proposed complaint.

*4. Undue Delay*

Plaintiffs challenge the Government's proposed declaratory judgment claim on the grounds of "undue delay," which, in the Third Circuit, carries two meanings. The Court may

9

deny leave to amend both when granting leave would unduly postpone the pending litigation *and* when circumstances fail to excuse the moving party's lateness in requesting leave to amend. Compare Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000) (affirming district court's denial of "leave to amend on the grounds that amendment would cause undue delay"), with Cureton, 252 F.3d at 272–73 (reading Foman to mean that "[a] district court may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue"). The Court concludes that adding the declaratory judgment claim will not cause undue delay for the same reasons it will not cause prejudice. Whether the Government's tardiness in seeking a declaratory judgment is undue, however, presents a closer call.

According to Plaintiffs, the United States provides no compelling justification for failing to bring a declaratory judgment counterclaim nearly four years ago. But "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." Cureton, 252 at 273. Determining what qualifies as "undue" involves assessing whether allowing the amendment will place "an unwarranted burden on the court." Adams v. Gould Inc., 739 F.2d 858, 863 (3d Cir. 1984). For the same reason that adding the declaratory judgment claim will not prejudice Plaintiffs, it will not cause the Court any harm, suggesting that the Government's four-year delay in attempting to bring the count does not qualify as undue.

But the undue delay inquiry is not limited to examining whether a burden on the Court will result. The Court must also "focus on the movant's reasons for not amending sooner." Cureton, 252 F.3d at 273. The Government contends that, "[u]ntil the Court issued its order of July 28, 2009, the United States reasonably understood that the parties' competing claims of ownership of the 1933 Double Eagles would be fully resolved through resolution of plaintiffs'

10

replevin claim." (Doc. No. 111, at 13). This explanation sounds in strategic choice, giving the Court pause—strategy does not excuse a four-year delay. In Cureton, the Third Circuit endorsed the district court's decision to deny leave to amend where "the only real reason advanced by plaintiffs for the substantial lapse in time was plaintiffs' misplaced confidence in their original [legal] theory." 252 F.3d at 274. There, African American student-athletes sued the NCAA to challenge the Association's policy of using SAT and ACT scores to determine Division I athletic eligibility under a disparate impact theory. Id. at 270. Under this approach, the plaintiffs called the NCAA's motives for adopting the policy "laudable." Id. at 275. After the Third Circuit struck down their disparate impact theory, however, they sought to amend their complaint to bring an intentional discrimination claim challenging the NCAA's once "laudable" motives. Id. at 272. Ultimately, the court focused on the prejudice resulting from this about-face in legal strategy, concluding that "the proposed amendment would essentially force the NCAA to begin litigating this case again." Id. at 274 (quotation marks omitted). Thus, though Cureton and this case share one feature—considerable delay—the lack of prejudice here sufficiently distinguishes them. In light of Rule 15(a)'s indulgent pleading philosophy, the Court concludes that the Government's delay, though significant, was not undue.

 *5. Bad Faith*

 Read liberally, the Langbords' response in opposition also alleges that the United States acted in "bad faith or [with] dilatory motive." Foman, 371 U.S. at 182. The Government knew of legal mechanisms for taking possession of the coins and, "instead of following either of these paths to asserting their alleged ownership of the Coins, . . . [the Government] deliberately chose to disregard these precedents and instead to act unconstitutionally." (Pls.' Response in Opp'n,

11

Doc. No. 113, at 10.) The United States's unwillingness to pursue constitutional avenues at the outset, the argument goes, should prevent it from bringing a declaratory judgment action now.

In its 2009 Order, the Court criticized the Government's choice to seize the coins without initiating forfeiture proceedings, and it does not in any way sanction that strategy now. But the Government's actions, however violative of due process, do not demonstrate that it withheld its declaratory judgment counterclaim in bad faith. The history of this case reveals that the Government chose not to seek a declaration of rightful ownership because it pursued a misguided legal strategy, not to gain a tactical advantage. At bottom, though the Government should have brought the claim when it answered Plaintiffs' 2006 complaint, as it admits it could have, no evidence exists to suggest that bad faith motivated its decision not to.

Finding that none of the reasons for denying the Government's motion for leave to file a declaratory judgment claim against the Langbords apply, the Court grants the Government's motion for leave to file Count III of its proposed complaint.

B. Count IV

The Government also seeks to add a declaratory judgment count against three John Doe defendants who allegedly possess other stolen 1933 Double Eagles. As with Counts II and III, the Court will "freely give leave when justice so requires," Fed. R. Civ. P. 15(a), and deny the Government's motion only upon finding undue delay, bad faith, repeated failure to cure deficiencies by previous amendments, undue prejudice, or futility, Foman, 371 U.S. at 182. In addition to satisfying Rule 15(a)'s requirements, the United States must demonstrate that adding the John Does complies with the Federal Rules regulating joinder. See Massaro v. Bard Access Sys, Inc., 209 F.R.D. 363, 366 (E.D. Pa. 2002) (citing Hensgens v. Deere & Co., 833 F.2d 1179

(5th Cir. 1987)).

Akin to the proverbial two ships passing in the night, neither party mentions the Rule that the other relies upon to argue for or against adding the John Does. The Government seeks to join the additional defendants under Rule 20, which governs the permissive joinder of parties to a counterclaim. See Fed. R. Civ. P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."). Under Rule 20, a party may be joined if the movant demonstrates both that the relief requested arises "out of the same transaction, occurrence, or series of transactions or occurrences" and that a "question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(1). The Government contends that "[a]t trial, [it] will prove that no 1933 Double Eagles were issued from the United States Mint under lawful authority and that, as a matter of law . . . all 1933 Double Eagles are property belonging to the United States." (Defs.' Mot. for Leave, Doc. No. 111, at 7.) To resolve the Government's proposed case against the John Doe coin-holders, the adjudicator must determine only whether anyone can legally own a 1933 Double Eagle. The government underscores that the answer to this question will determine the outcome of both Plaintiffs' conversion and replevin claims and the Government's declaratory judgment claim against the Langbords.

Without referencing Rule 20 permissive joinder, Plaintiffs argue that Rule 14—which allows a defendant to join a party that "is or may be liable to [a defending party] for all or part of the claim against it," Fed. R. Civ. P. 14(a)—does not permit joinder here. Indeed, as interpreted by the Third Circuit, Rule 14 permits third-party claims "only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant." F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994); see also 3 James

13

Wm. Moore, et al., Moore's Federal Practice § 14.04 (Matthew Bender 3d ed. 1999) ("An impleader claim is proper only to assert that the third-party defendant is liable *to the party impleading it (usually the defendant)*." (emphasis in original)). Because the United States does not aver that the John Does *caused* the Government's potential liability to the Langbords, Plaintiffs argue, the John Does cannot be joined.

Plaintiffs' insistence that Rule 14(a) does not permit joining the John Does meets no resistance from the Government or the Court. All agree that if the Government is ultimately liable for its seizure of the Langbords' coins, the John Does deserve no blame. But whether Rule 14(a) applies bears not at all on the Government's ability to join the parties under Rule 20. Rule 20 permits joinder even when the party that the movant seeks to add bears no responsibility should the movant be found liable. See, e.g., Bathgate, 27 F.3d at 873–73 (prohibiting party from joining under Rule 14(a) because new party's liability was not derivative of defendants' liability, but allowing joinder under Rule 20).

Rule 20 vests the Court with discretion to determine the propriety of permissive joinder under the Rule. That said, the Court must "entertain[] the broadest possible scope of action consistent with fairness to the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Keeping that lenient standard in mind, the Court will join the John Does if the government establishes that: (1) the events giving rise to the Government's claim against the John Does emanate from "the same transaction, occurrence, or series of transactions or occurrences" as the claim against the Langbords; (2) "question of law or fact common to all defendants will arise in the action"; and (3) allowing the joinder comports with fairness to the parties. Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009) (citing Fed. R. Civ. P. 20; Gibbs, 383

14

U.S. at 724).

The Government fails to demonstrate that the proposed joinder satisfies the "same transaction" element. It effectively asks the Court to ignore Rule 20's first requirement because the common question—whether anyone may lawfully possess a 1933 Double Eagle—is dispositive. But the Rule's requirements are "cumulative in nature[;] that is, both the common question and the same transaction portions must be satisfied." King v. Pepsi Cola Metro. Bottling Co., 86 F.R.D. 4, 5 (E.D. Pa. 1979). Though the Rule does not require absolute identity of events giving rise to the claim, it does mandate that the events be reasonably related. Id. at 5–6. In King, for example, the court found joinder appropriate when the plaintiffs each experienced discrimination in a different way, but the same supervisor perpetrated the discriminatory acts and the plaintiffs alleged company-wide discriminatory policies. Id. at 6.

A recent case from this district also provides guidance. In Cooper v. Fitzgerald, 266 F.R.D. 86 (E.D. Pa. 2010), the court examined whether a set of plaintiffs who complained of untimely adjudication of their immigration petitions were properly joined. The initial complaint alleged that the insufficient number of officers to perform background checks prompted the adjudication delays, and the court relied upon these common delays to allow joinder under Rule 20. Id. at 89. When discovery revealed that background investigations did not, in fact, cause the delays, the court granted the defendants' motion to sever the joined plaintiffs for their failure to satisfy the "same transaction" element. Id. The plaintiffs maintained that "'[t]he basic common denominator is that all plaintiffs' cases involve an I-130, Petition for Alien Relative, filing with USCIS which USCIS refuses to adjudicate.'" Id. (quoting the plaintiff's brief). But this important common circumstance—just like the Langbords' and John Does' common ownership

15

claims to 1933 Double Eagles—does not satisfy the "same transaction" element. Cooper stands for the proposition that Rule 20 does not require mere common circumstance; it requires a common set of occurrences that gave rise to those circumstances, the way a common company policy and supervisor's conduct gave rise to discrimination against multiple plaintiffs in King, 86 F.R.D. at 6. Here, the Government's failure to allege the requisite commonality convinces the Court that Rule 20 joinder of the John Does is inappropriate.

Beyond the Government's failure to meet Rule 20's "same transaction" prong, the Court finds joinder improper because both Plaintiffs and the John Does will be significantly prejudiced if the Court allows it. In response to the Government's motion for leave, the Langbords have consistently understated the breadth of the active claims in this case, omitting the pending title-related claims. Even so, not until the Government sought to add the John Does did the possibility of adjudicating the ownership rights of all of the 1933 Double Eagles in circulation surface. To add these defendants now would trigger a new round of discovery, not to mention the delay associated with attempting to properly notify the John Doe defendants that this case will finally determine their legal rights to personal property. The Government's proposed notice mechanisms have not persuaded the Court that the John Does will have the deserved opportunity to participate. Nor can the Court encourage passing upon the property rights of individuals who might not be identified until after the case ends. Balancing this weighty prejudice against the slight inconvenience to the Government of bringing declaratory judgment, replevin, or forfeiture actions against 1933 Double Eagle possessors as they become known to the United States—the possibility of which, by virtue of being the United States, the Government will never lose—tips the scales against allowing joinder here.

Because the Court finds that the Government's claims against the John Does fail Rule 20's "same transaction" test, and that joining the John Doe defendants will likely cause prejudice, it need not consider the proposed amendment under Rule 15(a)'s framework. The Rule 20 examination alone warrants denying the Government's motion for leave to amend their forfeiture complaint to add Count IV.

III.   PLAINTIFFS' MOTION TO DISMISS GOVERNMENT'S CLAIM OF INTEREST

After initiating forfeiture proceedings against the Double Eagles, the Government filed a claim of interest in the coins as their pre-theft owner. (Doc. No. 118.) Plaintiffs move to dismiss the Government's claim, labeling it a "legally flawed maneuver [that] pits the government against itself in a faux dispute in which nothing is actually disputed." (Doc. No. 121-1, at 6.) Specifically, Plaintiffs argue that the Court lacks subject matter jurisdiction because a forfeiture claimant typically *contests* the forfeiture, while here, the claimant Government *adopts the forfeiture complaint in full*. (Id.) As such, Plaintiffs aver, the claim meets neither the Constitution's case-or-controversy mandate, nor the standing requirements of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). (Id. at 7–12.)

As an initial matter, the Government opposes the Plaintiffs' motion to dismiss because, it alleges, only the government may move to strike a claim of interest in a forfeiture proceeding. Supplemental Rule G(8)(c) provides that "the government may move to strike a claim or answer," leading the United States to conclude that the Rules preclude any other party from doing so. (Doc. 124, at 5–6.) The Court need not determine Rule G(8)(c)'s reach because, as Plaintiffs point out, they move to *dismiss* the Government's claim of interest, not to *strike* it.

17

Supplemental Rule G(8)(c) does not impede the Court's ability to consider a motion to dismiss a claim of interest. And nothing prevents this Court from resolving Plaintiffs' attack on subject matter: "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also CNA v. United States, 535 F.3d 132, 145–46 (3d Cir. 2008).

Article III of the Constitution provides that a federal court may adjudicate "only actual, ongoing cases or controversies." Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir. 2009) (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)). Though it has been "long-recognized [as a] general principle that no person may sue himself," the United States' appearance on both sides of the caption does not automatically strip the Court of subject matter jurisdiction. United States v. I.C.C., 337 U.S. 426, 430 (1949). The Court looks "behind names that symbolize the parties to determine whether a justiciable case or controversy is presented." Id. When "confronted with the anomaly that both litigants desire precisely the same result . . . , [there is] no case or controversy within the meaning of Art. III of the Constitution." Moore v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 47, 47–48 (1971).

Here, the Government's claim of interest does not contest any of the facts or legal conclusions contained within the forfeiture complaint. The United States argues that rules governing forfeiture essentially provide an exception to the case-or-controversy requirement. It highlights that the victim of a crime need not contest the version of events in a forfeiture complaint in order to file a claim to the property that he once owned. In United States v. $2,249,930 Seized from Citizens Bank Account #xxxxxx3580, No. 2:05-cv-05126 (E.D. Pa. 2008), the victims of a theft filed a claim of interest to money that was the subject of a forfeiture

18

action. The victims agreed with the government's contention that the property was the proceeds of a crime against them and was therefore subject to forfeiture.

Plaintiffs distinguish this and other similar cases by stressing that a party conceding *forfeitability* as an innocent property owner differs significantly from the party agreeing that the property should be *forfeited* to the government. The crime victim in each case disagreed with the government about the proper final disposition of the property, thereby creating the necessary case or controversy for subject matter jurisdiction. See, e.g., id. Forfeiture proceedings do not differ from all other civil cases: a claim must be justiciable for a court to hear it.

The cases the Government cites fail to convince the court that it has subject matter jurisdiction over the Government's claim of interest. Though the victim of a crime may agree with portions of the forfeiture complaint, the result that the crime victim desires—the return of the property—necessarily conflicts with the Government's interest, creating the required case or controversy. The Court can find no support for extending subject matter jurisdiction to the claims in interest of all crime victims without examining whether the parties desire the same result—indeed, Supreme Court precedent explicitly focuses the inquiry on whether the parties press for different outcomes. Moore, 402 U.S. at 47–48. This Court has examined the contents of both the Government's forfeiture complaint and its claim of interest and cannot decipher any distinguishing features. Both seek the return of the coins to the United States. Because no case or controversy exists to make the Government's claim of interest in the coins justiciable, the Court lacks subject matter jurisdiction to hear that portion of the case and grants Plaintiffs' motion to dismiss.

Finding clear support for dismissal on constitutional grounds, the Court refrains from

addressing Plaintiffs' argument that the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions bar the Government's claim.

IV. CONCLUSION

The Court appreciates the uniqueness of this case. But the unfamiliar landscape does not persuade it to abandon well-established legal principles, as the parties' briefs often suggest it should. Precedent provides the Court with more than ample guidance to resolve the motions before it, and the Court follows that precedent to ensure that the case proceeds fairly and in accordance with the law. Thus, for the reasons stated more specifically above, the Court 1) denies the Government's motion for leave to file Counts II and IV of its proposed complaint; 2) grants the Government's motion for leave to file Count III of its proposed complaint; and 3) grants Plaintiffs' motion to dismiss the Government's claim of interest in the forfeiture proceeding.

An appropriate order follows.